IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEREN KAYEMETH LEISRAEL-JEWISH NATIONAL FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> EDUCATION FOR A JUST PEACE IN THE MIDDLE EAST d/b/a US CAMPAIGN FOR PALESTINIAN RIGHTS, <br><br> Defendant. | Civil Action No. 19-cv-3425-RJL |

## MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Defendant Education for a Just Peace in the Middle East d/b/a US Campaign for Palestinian Rights moves to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. As more fully set forth in the accompanying Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiffs' Complaint, which is incorporated herein by reference, the Complaint should be dismissed in its entirety. Defendant requests oral argument on its Motion to Dismiss.

Dated: March 5, 2020

Respectfully submitted,

/s/ Maria C. LaHood
/s/ Shayana D. Kadidal
Maria C. LaHood (admitted *pro hac vice*)
Diala Shamas (admitted *pro hac vice*)
Astha Sharma Pokharel (admitted *pro hac vice*)
Shayana D. Kadidal (D.C. Bar No. 454248)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, New York, 10012
Tel.: (212) 614-6430

Fax: (212) 614-6422
mlahood@ccrjustice.org
/s/ Dawn C. Doherty
Dawn C. Doherty (D.C. Bar No. 414534)
300 Delaware Avenue, #900
Wilmington, DE  19801
(302) 658-6538
DDoherty@moodklaw.com

David P. Helwig (*pro hac vice* application pending)
707 Grant Street
Suite 2600, Gulf Tower
Pittsburgh, PA 15219

MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.


*Attorneys for Defendant US Campaign for
Palestinian Rights*

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| Keren Kayemeth LeIsrael-Jewish National Fund, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Education for a Just Peace in the Middle East d/b/a US Campaign for Palestinian Rights <br><br> Defendant. | Civil Action No. 19-cv-3425-RJL |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' COMPLAINT**

### TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS ....................................................................................2

ARGUMENT ........................................................................................................7

   I.  Summary of Argument .............................................................................7

   II.  Standard of Review..................................................................................8

   III. The Complaint Fails to State a Claim Under the Federal Anti-Terrorism Act ...............9

      A. Plaintiffs have not alleged facts sufficient to support their claims under
         Section 2333(a) that the US Campaign is directly liable for the injuries they
         allege (Second and Third Claims for Relief) ....................................................9

         1.  Plaintiffs have not alleged facts sufficient to show that they were injured
              "by reason of" the US Campaign's actions.......................................................10

         2.  Plaintiffs have not alleged facts sufficient to show that the US Campaign
              committed an "act of international terrorism." ....................................................13

             a.  Plaintiffs' Second Claim for Relief that the US Campaign violated
                  Section 2339A fails as a matter of law. ........................................................13

             b.  Plaintiffs' Third Claim for Relief that the US Campaign violated
                  Section 2339B(a)(1) fails as a matter of law. ................................................14

             c.  Plaintiffs do not satisfy any of the other definitional elements for an
                 "act of international terrorism" ....................................................................16

      B. The Complaint does not plausibly allege secondary liability under the ATA
         (Plaintiffs' First Claim for Relief) ...........................................................19

         1.  Plaintiffs have failed to allege that the US Campaign knowingly provided
              substantial assistance to acts of international terrorism which harmed them ......20

          2.  The Complaint does not plausibly allege that the US Campaign was
              "generally aware" of any role in illegal activity. ................................................22

i

3.   Plaintiffs fail to allege that any assistance was "substantial." ............................23

4.   Plaintiffs fail to allege that their injuries arose from an act "committed, planned, or authorized" by a designated FTO. ....................................................26

5.   Plaintiffs do not state a claim for conspiracy under the ATA............................26

IV. Plaintiffs' State Law Claims Should Be Dismissed on the Merits .................................28

A.   This court should retain jurisdiction to dismiss Plaintiffs' claims with prejudice...........................................................................................................29

B.   Plaintiffs fail to state claims for conspiracy to commit trespass or public nuisance (Fourth and Fifth Claims for Relief)...........................................................31

C.   Plaintiffs fail to allege facts sufficient to state claims for trespass, destruction of property or public nuisance (Fourth and Fifth Claims for Relief)........................31

D.   Plaintiffs' claim for conspiracy to "tortiously interfere" in unspecified business relationships and business operations of the JNF fails as a matter of law (Sixth Claim for Relief). ...................................................................................36

CONCLUSION...........................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta Orellana v. CropLife Int'l,*
  711 F. Supp. 2d 81 (D.D.C. 2010) .................................................................. *passim*

*Am. Chemistry Council v. Dep't of Transp.,*
  468 F.3d 810 (D.C. Cir. 2006) .........................................................................12

*Amore ex rel. Amore v. Accor,*
  529 F. Supp. 2d 85 (D.D.C. 2008) ...................................................................32

*Anza v. Ideal Steel Supply Corp.,*
  547 U.S. 451 (2006).....................................................................................10, 11

*Arias v. DynCorp,*
  Nos. 1:01cv01908 (ESH) and 1:07cv01042 (ESH), 2016 WL 6496214
  (D.D.C. Nov. 2, 2016).......................................................................................35

*Arias v. DynCorp,*
  752 F.3d 1011 (D.C. Cir. 2014) .........................................................................9

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................1, 7, 8, 9

*Blakely v. United States,* 276 F.3d 853 (6th Cir. 2002) ................................................29

*Averbach v. Cairo Amman Bank,*
  No. 19-CV-0004-GHW-KHP, 2020 WL 486860 (S.D.N.Y. Jan. 21, 2020) ...................23, 24

*B & W Mgmt., Inc. v. Tasea Inv. Co.,*
  451 A.2d 879 (D.C. 1982) ...............................................................................35

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)..................................................................................1, 8, 27

*Carnegie-Mellon Univ. v. Cohill,*
  484 U.S. 343 (1988)....................................................................................29, 30

*Ciralsky v. CIA,*
  355 F.3d 661 (D.C. Cir. 2004) ...........................................................................6

*Crow Creek Sioux Tribe v. Brownlee,*
  331 F.3d 912 (D.C. Cir. 2003) ...........................................................................9

*Daskalea v. Wash. Humane Soc'y*,
   480 F. Supp. 2d 16 (D.D.C. 2007) ...................................................................34

*E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961) ...........................................................................................37

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
   48 F.3d 1260 (D.C. Cir. 1995) ......................................................................29, 30

*Farah v. Esquire Magazine*,
   736 F.3d 528 (D.C. Cir. 2013) ...........................................................................38

*Fridman v. Bean LLC*,
   No. CV 17-2041 (RJL), 2019 WL 231751 (D.D.C. Jan. 15, 2019)......................30

*Greenpeace, Inc. v. Dow Chem. Co.*,
   97 A.3d 1053 (D.C. 2014) .............................................................................31, 33

*\*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) ...................................................................... *passim*

*In re Hall*,
   No. 12-00753, 2014 WL 2993734 (Bankr. D.D.C. July 3, 2014)..........................33

*Hensley v. Office of Architect of the Capitol*,
   806 F. Supp. 2d 86 (D.D.C. 2011) .......................................................................9

*Hurn v. Oursler*,
   289 U.S. 238 (1933)............................................................................................29

*Jiggetts v. District of Columbia*,
   319 F.R.D. 408 (D.D.C. 2017)..............................................................................6

*Kaempe v. Myers*,
   367 F.3d 958 (D.C. Cir. 2004) ..............................................................................9

*Kaplan v. Lebanese Canadian Bank, SAL*,
   405 F. Supp. 3d 525 (S.D.N.Y. 2019)..............................................17, 22, 24, 25

*Kemper v. Deutsche Bank AG*,
   911 F.3d 383 (7th Cir. 2018) ..............................................................................18

*Kowal v. MCI Commc'ns Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) ..............................................................................9

*Linde v. Arab Bank, PLC*,
   882 F.3d 314 (2d Cir. 2018)........................................................................ *passim*

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................12

*Lyles v. Hughes*,
  83 F. Supp. 3d 315 (D.D.C. 2015) .........................................................................27

*\*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982) .............................................................................25, 28, 36, 37

*O'Sullivan v. Deutsche Bank AG*,
  No. 17 CV 8709-LTS-GWG, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) .........17

*Ofisi v. BNP Paribas, S.A.*,
  278 F. Supp. 3d 84 (D.D.C. 2017) ..............................................................13, 14, 16

*Onyeoziri v. Spivok*,
  44 A.3d 279 (D.C. 2012) .........................................................................................38

*Org. for a Better Austin v. Keefe*,
  402 U.S. 415 (1971) .................................................................................................37

*Ortberg v. Goldman Sachs Grp.*,
  64 A.3d 158 (D.C. 2013) .........................................................................................35

*Owens v. Bank of Am.*,
  No. 17-2110 (ABJ), 2018 WL 4387572 (D.D.C. Sept. 14, 2018) ..........................31

*Owens v. BNP Paribas, S.A.*,
  235 F. Supp. 3d 85 (D.D.C. 2017) ....................................................................15, 16

*\*Owens v. BNP Paribas, S.A.*,
  897 F.3d 266 (D.C. Cir. 2018) ..................................................................... *passim*

*Owens v. Republic of Sudan*,
  864 F.3d 751 (D.C. Cir. 2017) .................................................................................10

*Patton Boggs, LLP v. Chevron Corp.*,
  791 F. Supp. 2d 13 (D.D.C. 2011) ..............................................................37, 38, 39

*Reese Bros., Inc. v. U.S. Postal Serv.*,
  905 F. Supp. 2d 223 (D.D.C. 2012) .........................................................................31

*Retana v. Twitter, Inc.*,
  No. 3:19-CV-0359-B, 2019 WL6619218 (N.D. Tex. Dec. 5, 2019) .......................16

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013) .................................................................................11, 12

*Scahill v. District of Columbia*,
  286 F. Supp. 3d 12 (D.D.C. 2017) ....................................................... 18

*Shatsky v. Palestine Liberation Org.*,
  No. 02-2280 (RJL), 2017 WL 2666111 (D.D.C. June 20, 2017) ...................................... 10, 19

*Shekoyan v. Sibley Int'l*,
  409 F.3d 414 (D.C. Cir. 2005) ........................................................ 29

*Siegel v. HSBC N. Am. Holdings, Inc.*,
  933 F.3d 217 (2d Cir. 2019) ........................................................... 20

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) .................................................................. 12

*Taamneh v. Twitter, Inc.*,
  343 F. Supp. 3d 904 (N.D. Cal. 2018) ................................................ 20, 22, 25

*Tucci v. District of Columbia*,
  956 A.2d 684 (D.C. 2008) ........................................................... 35, 36

*Williams v. Fed. Nat'l Mortg. Ass'n*,
  No. CIVA 05-1483 (JDB), 2006 WL 1774252 (D.D.C. June 26, 2006) ................................ 38

*Wood v. Neuman*,
  979 A.2d 64 (D.C. 2009) ............................................................. 35

*Wultz v. Islamic Republic of Iran*,
  755 F. Supp. 2d 1 (D.D.C. 2010) ..................................................... 14

**Statutes**

18 U.S.C. § 2331 ....................................................... 13, 16, 17, 18, 19

18 U.S.C. § 2333 .......................................................... *passim*

18 U.S.C. § 2339A ...................................................... 9, 13, 14, 16

18 U.S.C. § 2339B .......................................................... *passim*

28 U.S.C. § 1367 ........................................................... 29

**Other Authorities**

Federal Rule of Civil Procedure 8 ........................................... 6

Federal Rule of Civil Procedure 12(b)(6) ................................... 1, 8

1 BUS. & COM. LITIG. FED. CTS. § 1:43 (4th ed.) ............................ 29

RESTATEMENT (SECOND) OF TORTS § 158 (1965)....................................................................33, 35

## INTRODUCTION

Defendant Education for a Just Peace in the Middle East, d/b/a/ US Campaign for Palestinian Rights ("US Campaign"), is a non-profit 501(c)(3) organization that, as its name indicates, engages in public education and outreach to promote Palestinian rights and peace in the Middle East. This work often involves issuing statements critical of the Israeli military's unlawful use of force and violations of international law, Compl. ¶ 132, supporting the rights of Palestinian demonstrators, *id.,* urging supporters to contact their congressional representatives, *id.,* and participating in public advocacy campaigns in coordination with other activists and lawyers, *id.* ¶ 140, among other activities.

Plaintiffs claim that US Campaign's advocacy and its relationship with others who support Palestinian rights render it liable under the Anti-Terrorism Act ("ATA") and as a conspirator in violation of domestic tort law.  To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts that state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating a complaint, the court must disregard "labels and conclusions," "formulaic recitation of the elements of a cause of action," "legal conclusion[s] couched as . . . factual allegation[s]" and "naked assertions devoid of further factual enhancement." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Applying that standard to this case, the Complaint reduces to a few facts that are grossly insufficient to support the asserted claims for relief. Plaintiffs base their entire 62-page Complaint on completely lawful activities: that the US Campaign expressed "support" for the Great Return March ("GRM"), Compl. ¶ 132; it served for a time as "fiscal sponsor" for the Boycott National Committee ("BNC"), Compl. ¶¶ 24, 123-126; and it participated in the "Stop the JNF Campaign,"

1

Compl. ¶ 142.  Plaintiffs' Complaint is replete with suggestions of guilt by association.  No allegations link the US Campaign to burning kites and balloons, much less to rockets allegedly fired by Hamas and others.  Defendant's motion to dismiss for failure to state a claim should be granted in its entirety.

## STATEMENT OF FACTS

### 1.  Overview

Defendant US Campaign for Palestinian Rights is a public charity recognized as such under Section 501(c)(3) of the U.S. tax code. Compl. ¶ 123.  As its name indicates, the US Campaign advocates for the rights of Palestinians. The screenshot of an email from the US Campaign illustrates its advocacy: it criticized the use of brutal force against Palestinian protestors in Gaza who were asserting their "right to freedom, justice, equality, and life." Compl. ¶ 132. Plaintiffs base their ATA and state tort law claims on three factual allegations concerning the US Campaign's actions—all of which are lawful activities to achieve lawful ends.

First, Plaintiffs allege that the US Campaign has supported the BNC by serving as its fiscal sponsor as of November 2017, allowing donors in the U.S. to make tax-deductible donations to the BNC, Compl. ¶¶ 24, 120-131, as well as being its "partner." Compl. ¶ 130.  The BNC is the broadest coalition in Palestinian civil society that advocates for boycotts, divestments, and sanctions ("BDS") for Palestinian rights. Compl. ¶ 124. Second, Plaintiffs allege that US Campaign has expressed "support" for the GRM in Gaza, which has demanded recognition of Palestinians' right to return to the villages from which they were expelled in 1948. Compl. ¶¶ 132-134.  And third, the Complaint alleges that the US Campaign has promoted and participated in the Stop the JNF Campaign, a campaign to end support for Plaintiff, the Keren Kayemeth LeIsrael-Jewish National Fund ("KKL-JNF"). Compl. ¶¶ 138-142.

These three sets of allegations are the only factual allegations about the US Campaign's actions in the Complaint. To bridge the gap between these lawful, peaceful and protected acts and the damage caused by rockets and burning kites and balloons that are the ostensible subject of the Complaint, Plaintiffs rely on an elaborate web of conclusory and implausible allegations. They attempt to bolster them with inflammatory, politically charged assertions to connect the US Campaign to acts Plaintiffs allege were carried out by Hamas or other actors.

**2. Allegations Attempting to Connect the US Campaign to Terrorists or Acts of Terrorism**

Viewed in the light most favorable to Plaintiffs, the factual allegations about the US Campaign's actions are as follows: The US Campaign served as the BNC's fiscal sponsor in the United States "as of at least" November 2017, Compl. ¶¶ 123-126, and "works closely" and "partners" with the BNC. Compl. ¶¶ 128, 130. There is no allegation concerning how long that fiscal sponsorship continued and there is also no allegation that the BNC itself is a designated Foreign Terrorist Organization ("FTO").

The Complaint alleges that in 2005, more than 170 "Palestinian political parties, unions, associations, coalitions representing 'Palestinian refugees, Palestinians under occupation and Palestinian citizens of Israel'" endorsed the BDS call.  Compl. ¶ 73.  In 2008, the BNC was established as the Palestinian coordinating body for the BDS campaign. Compl. ¶ 76.  The BNC promotes boycott "as a central form of civil resistance." *Id*.

Plaintiffs attempt to develop a long and attenuated chain of associations to try to connect US Campaign to an FTO. The Complaint alleges that the Palestinian National and Islamic Forces ("PNIF") is "the first member coalition" of the BNC and "propelled the boycott strategy back in 2000." Compl. ¶ 78. Plaintiffs also allege that there is an unnamed PNIF representative on the BNC's Secretariat. *Id*. ¶ 80 (offering no additional support for this claim).  Plaintiffs do not allege

3

that the PNIF is a designated FTO.  To continue the chain, the Complaint alleges that the PNIF is "a coordinating framework" for "all the political national and Islamic factions," including five designated terrorist organizations, Compl. ¶¶ 66, 78, and a "senior Hamas figure" serves as Hamas's representative in the PNIF. Compl. ¶ 83.  The Complaint attempts to connect the BNC to Hamas through the PNIF, Compl. ¶¶ 70-85, but none of these allegations relate to any conduct by the US Campaign. Based on this attenuated chain of associations—that the BNC is a coalition of organizations, one of which is another coalition representing numerous Palestinian groups, some of which have been designated as FTOs—Plaintiffs seek to hold the US Campaign liable for supporting terrorism.

Plaintiffs attempt to further this chain in an effort to connect the US Campaign to Plaintiffs' injuries by introducing the GRM, and burning kites, balloons and rockets launched out of Gaza by known and unknown parties. The chain purports to connect the US Campaign with the BNC, then the BNC to the PNIF, and then the PNIF to Hamas, and finally alleges that Hamas and/or other (known and unknown) groups are responsible for the burning kites and balloons that were launched during the GRM, and the rockets launched from Gaza more generally. The Complaint alleges that several different parties are responsible for the balloons and kites: Hamas, the Sons of al-Zawari, unnamed terrorist organizations, and Palestinian youth. Compl. ¶¶ 52, 99, 100, 157. The Complaint spends several paragraphs describing the Sons of al-Zawari, one of the groups which claims responsibility for launching balloons and kites, without making any factual allegations connecting the group to the US Campaign. Compl. ¶¶ 100-105.

In an effort to further link the US Campaign with the GRM, Plaintiffs allege that the US Campaign has expressed support for the GRM, Compl. ¶¶ 132-134, and that some members of the BNC have also supported and attended the GRM. Compl. ¶¶ 113, 116, 117. However, the US

Campaign statements cited by Plaintiffs do not express support for rockets, or burning kites and balloons.  The content of one statement by the US Campaign cited by Plaintiffs describes the GRM as protests consisting of "sit-ins and demonstrations to demand [Palestinians'] internationally-recognized right to return to the villages they were displaced from in 1948." Compl. ¶ 132. The Complaint also states that GRM demonstrations have been met with brutal force by the Israeli army—force which Human Rights Watch labeled as unlawful. Compl. ¶ 132.

Plaintiffs also make unsupported conclusory allegations that the BNC, which is not a defendant, materially supports acts of "terror upon the people and property of Israel, including the Plaintiffs." Compl. ¶ 119.  The factual allegations against the BNC include a BNC Facebook post describing the GRM as "mass popular mobilizations" by "unarmed protestors" in Gaza, which the post describes as an "open-air prison" as a result of a "siege" imposed on the territory by Israel. Compl. ¶ 116(d). Yet another allegation states that the BNC is "entwined" with Israeli Apartheid Week and includes a graphic on which there are kites, one of which bears the colors of the Palestinian flag being held by an unarmed woman wearing traditional Palestinian clothing and a crosshairs symbol on her, stating "Stop arming colonialism," Compl. ¶ 117.  Then, the Complaint makes the circular allegation that the US Campaign supported the GRM "as part of its campaign and conspiracy" to support the BNC, which in turn supported the GRM and "other acts of international terror." Compl. ¶ 135. Based on this, the Complaint leaps to the unsupported conclusion that the US Campaign "materially supports" acts of trespass, public nuisance and terror. Compl. ¶ 137.

### 3.   Allegations Regarding the Stop the JNF Campaign

The Complaint alleges that beginning in 2009, the US Campaign, BNC and others "promoted and participated in" the Stop the JNF Campaign. Compl. ¶ 139. The Complaint alleges

that the US Campaign's "website states its intent and purpose in its campaign and conspiracy to interfere with, and destroy the business, assets and operations of Plaintiff KKL-JNF." Compl. ¶ 142. *See also* Compl. ¶ 138. However, the single cited snippet from the website states, "Stop the Jewish National Fund is an international campaign aimed at ending the role of the [KKL-JNF]." Compl. ¶ 142.

### 4.  The Complaint's Irrelevant, Extraneous Allegations

The Complaint is replete with irrelevant detail in contravention of Federal Rule of Civil Procedure 8.  *See, e.g.*, *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004) (affirming decision that 61-page complaint was prolix and burdened the court and defendants "with a bloated mass of unnecessary detail."). *See also Jiggetts v. District of Columbia*, 319 F.R.D. 408, 414-15 (D.D.C. 2017), *aff'd sub nom.*, *Cooper v. District of Columbia*, No. 17-7021, 2017 WL 5664737 (D.C. Cir. Nov. 1, 2017). Reaching back to events in 1901, the Complaint contains nine paragraphs describing KKL-JNF that are unrelated to any issue in the case. Compl. ¶¶ 144-153. The allegations include inconsistent statements. For example, in paragraph 154, plaintiffs allege that KKL-JNF's activities are carried out "for the benefit of the public as a whole and for all sectors of Israel's population, whatever their religion or ethnicity." But in other paragraphs of the Complaint, Plaintiffs stress KKL-JNF's activities "strengthening the bond between the Jewish people and Israel." Compl. ¶ 8. *See also* Compl. ¶¶ 144, 155.

Another six paragraphs present Plaintiffs' unsourced version of "the Israeli-Palestinian conflict," all unrelated to Plaintiffs' current legal claims. Compl. ¶¶ 27-33.  Sixteen paragraphs of unsourced allegations concern Hamas's history beginning with its founding in 1987. Compl. ¶¶ 34-49.  These too are unrelated to any issue raised by Plaintiffs' claims. There is no factual allegation that the US Campaign had any meeting or agreement with or communication with

Hamas, Sons of al-Zawari, or any other group allegedly involved in the launchings of kites, balloons or rockets charged in the Complaint.

### 5.  Plaintiffs' Injuries

Individual Plaintiffs allege they have suffered "severe mental anguish and extreme emotional pain and suffering" due to the "fear and terror" brought on by the "threat of and exposure to" rockets and incendiary balloons and kites.  Compl. ¶¶ 10-21.  The Vaknin Plaintiffs allege they are no longer able to enjoy a damaged KKL-JNF forest, Compl. ¶ 188, and other Plaintiffs allege generally that they along with members of the public have been denied the use and enjoyment of KKL-JNF properties. Compl. ¶¶ 9-21. The Rosenfelds alone allege physical damage from a Hamas rocket to the building in which they reside. Compl. ¶¶ 173-181.  KKL-JNF alleges damages to unidentified property it owns or holds in some other manner caused by rockets, balloons and kites. Compl. ¶¶ 157-160. No factual allegations connect these injuries to the US Campaign. In addition, the Complaint alleges unspecified harm to unspecified KKL-JNF business relationships and operations caused by the Stop the JNF Campaign in which the US Campaign participated.  Compl. ¶¶ 265-270.

## ARGUMENT

### I.    SUMMARY OF ARGUMENT

Individual Plaintiffs' first, second, and third claims for relief – all under the Anti-Terrorism Act – fail to state a claim.  Beyond the "formulaic recitation of the elements of [the] cause[s] of action," *Iqbal,* 556 U.S. at 678 (2009), Plaintiffs allege no facts to support that they suffered any injuries "by reason of" any action by the US campaign, nor any facts to support the essential elements of the claims of "terrorism" that they hurl at the US Campaign.  They allege no facts to support the claims that the US Campaign committed an act of international terrorism, or

specifically that it knowingly or intentionally provided material support for a specified crime or to a terrorist organization.  Plaintiffs' claims for vicarious liability under the ATA also fail, as they do not allege that the US Campaign knowingly provided substantial assistance to an act of international terrorism, or that it conspired with a person who committed an act of international terrorism.

Plaintiffs' Fourth, Fifth and Sixth Claims for Relief under common law also fail.  The Complaint fails to allege a conspiracy or the elements of each common law cause of action: trespass, public nuisance, or tortious interference with business relations.  Given that the claims to conspire in common law torts rest on the same inadequate facts as do the federal claims, this court should exercise its discretion to retain jurisdiction and dismiss the claims with prejudice, in the interest of judicial economy, and to protect the US Campaign's First Amendment-protected activities from the chilling effect posed by further meritless litigation. In the alternative, after dismissing the federal claims, the common law claims should be dismissed without prejudice.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, citing *Twombly,* 550 U.S. at 570. The "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id. at* 678 (internal quotation marks and citation omitted). While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id*. (internal quotation marks and citation omitted). The court "need not accept inferences drawn by plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal

conclusions cast in the form of factual allegations." *Hensley v. Office of Architect of the Capitol*, 806 F. Supp. 2d 86, 89 (D.D.C. 2011), citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The court must ignore "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements." *Iqbal*, 556 U.S. at 678 (citation omitted). When a complaint's factual allegations contradict exhibits to the complaint or matters subject to judicial notice, the court need not accept them as true. *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004). *See also Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 109 (D.D.C. 2010) ("where some allegations in the complaint contradict other allegations, the conflicting allegations become 'naked assertions devoid of further factual enhancement . . . [, which therefore] cannot be presumed true.'").

### III.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE FEDERAL ANTI-TERRORISM ACT.

Stripped of conclusory allegations, the Complaint fails to allege facts sufficient to support a claim of direct or secondary liability under the ATA. Plaintiffs provide no allegations to render plausible their claims that the US Campaign's actions were the proximate cause of Plaintiffs' injuries, that the US Campaign committed an act of international terrorism, or that it aided and abetted acts of international terrorism.

#### A.   Plaintiffs have not alleged facts sufficient to support their claims under 2333(a) that the US Campaign is directly liable for the injuries they allege (Second and Third Claims for Relief).

Plaintiffs' Second and Third Claims for Relief assert that the US Campaign is directly liable for Plaintiffs' injuries under 18 U.S.C. § 2333(a), the civil remedies provision of the Anti-Terrorism Act, because it provided "material support to terrorists" (Second Claim for Relief, citing 18 U.S.C. § 2339A) or to a foreign terrorist organization (Third Claim for Relief, citing 18 U.S.C. § 2339B).  Section 2333(a) permits suit by any U.S. national "injured in his or her person, property,

or business by reason of an act of international terrorism…." 18 U.S.C. § 2333(a).  Civil liability

under Section 2333(a) has "three essential elements":

> First, a U.S. national must have suffered an injury. Second, there must have been
> an act of international terrorism. And third, the U.S. national's injury must have
> occurred "by reason of" the act of international terrorism. That is, there must be
> some causal connection between the act of international terrorism and the US
> national's injury.

*Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 270 (D.C. Cir. 2018) (footnotes omitted).

### 1.  Plaintiffs have not alleged facts sufficient to show that they were injured "by reason of" the US Campaign's actions.

Section 2333(a) requires a showing that the injuries alleged occurred "by reason of" an act

of international terrorism that defendants committed.  *Owens v. BNP Paribas, S.A.*, 897 F.3d at

270. As this Circuit has made clear, the "by reason of" standard, which is used in multiple federal

statutes, requires a showing of proximate cause. *Id.* at 275. Therefore, Plaintiffs must plausibly

allege that US Campaign's acts were "a 'substantial factor' in the sequence of events" that led to

the injuries, and that the injuries were "reasonably foreseeable or anticipated as a natural

consequence" of their conduct. *Owens v. BNP Paribas, S.A.*, 897 F.3d at 273 (quoting *Owens v.

Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017), *cert. granted in part sub nom.*, *Opati v.

Republic of Sudan*, 139 S. Ct. 2771 (2019) (citations omitted)). *See also Shatsky v. Palestine

Liberation Org.*, No. 02-2280 (RJL), 2017 WL 2666111, at *7 (D.D.C. June 20, 2017), *appeal

filed*, No. 17-7168 (D.C. Cir. Dec. 11, 2017). Proximate cause is a rigorous standard, and, if the

defendants' actions did not lead directly to the injury, proximate cause cannot exist. *See Anza v.

Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *Shatsky*, 2017 WL 2666111, at *7 (noting that

"for well over a century" the Supreme Court has construed "by reason of" in federal statutes "as

setting forth a traditionally rigorous proximate cause requirement."). The Complaint fails to allege

proximate cause: it contains no allegations that provide a causal link between, on the one hand,

US Campaign's fiscal sponsorship or other support of the BNC and its statements in support of the rights of the GRM demonstrators, and, on the other hand, the launching of burning balloons, kites, or rockets by Hamas or other (known or unknown) third parties.

First, Plaintiffs do not allege that US Campaign's fiscal sponsorship or other support of the BNC was a "substantial factor" in the injuries Plaintiffs allege, or that US Campaign's actions "directly led" to those injuries. *Anza,* 547 U.S. at 461. In fact, they do not allege any support at all. Plaintiffs' conclusory allegations that "the financial assistance that the USCPR was providing to HAMAS was essential to its ability to carry out terrorist attacks," and that that the US Campaign "transferr[ed]" funds to an FTO (or to anyone in Gaza or even outside the United States) are not supported by any factual allegations. Compl. ¶¶ 203, 205. Plaintiffs do not allege that the US Campaign or even the BNC transferred any funds to Hamas or any other (known or unknown) actor who allegedly launched kites, balloons, or rockets. There are no allegations explaining how the US Campaign might have transferred funds, how much they transferred, or that they ever communicated with Hamas, Sons of al-Zawari, any terrorist organizations, or anyone in Gaza. Without this causal link, Plaintiffs cannot claim that any assistance to the BNC was a "substantial factor" in Plaintiffs' injuries. *See, e.g., Rothstein v. UBS AG,* 708 F.3d 82, 97 (2d Cir. 2013) (finding that the complaint failed to allege that any support that went from the bank to Iran was transferred to Hezbollah or Hamas, or that had the bank not transferred U.S. currency to Iran, attacks would not have been funded).

Plaintiffs further fail to meet the "substantial factor" element because there are not one, but multiple "independent intermediar[ies]" between the defendant and any alleged terrorism. *See Owens v. BNP Paribas, S.A.,* 897 F.3d at 276-277 (presence of an independent intermediary—Sudan—requires additional allegations to support "substantiality" of the connection between the

11

defendant and a terrorist act or organization (citing *Rothstein,* 708 F.3d at 97)). These include the BNC, the PNIF, Compl. ¶¶ 93-94, the GRM Supreme National Committee, Compl. ¶¶ 88, 94, "several terrorist organizations," Compl. ¶ 99, the Sons of al-Zawari, and finally the Hamas-controlled government with its multiple "legitimate agencies, operations and programs." *Owens v. BNP Paribas, S.A.,* 897 F.3d at 276 (citing *Rothstein,* 708 F.3d at 97). Each of these on its own would be sufficient to break any proximate causation under *Owens.* Together, they render any allegation of even remote causation implausible.

Second, there are no allegations that the US Campaign could have "reasonably anticipated" rocket fire, incendiary kites and balloons as a "natural consequence" of its fiscal sponsorship of a non-profit whose primary activity is strengthening boycotts, an inherently non-violent tactic, "as a central form of civil resistance." Compl. ¶ 76.

Finally, Plaintiffs' attempts to suggest a causal link between, on the one hand, US Campaign's statements supporting the rights of the GRM demonstrators and criticizing the Israeli military's excessive use of force and violations of international law (Compl. ¶ 132), and, on the other hand, the launching of burning kites, balloons, and rockets, must be rejected. Plaintiffs simply do not allege that the US Campaign's actions were the proximate cause of their injuries.[1]

---

[1] Not only do plaintiffs fail to show proximate cause, but they fail to even satisfy the lower standard for traceability required to show Article III standing for Counts I-V. *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912, 915 (D.C. Cir. 2003). Plaintiffs must show "a causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Where there is a gap in the causal chain connecting the alleged injury to a defendant's actions, courts should not "assume missing links." *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006). *See also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 n. 25 (1976). As described, Plaintiffs fail to show a causal link between US Campaign's fiscal sponsorship to the BNC on the one hand, and support to Hamas or any other relevant third party on the other; or between US Campaign's statements in support of the GRM on the one hand, and any kites, balloons, or rockets launched out of Gaza on the other. The chain of causation they lay out is not only attenuated, but broken. This is fatal to Article III standing. *See, e.g., Arias v. DynCorp*, 752 F.3d 1011, 1015 (D.C. Cir. 2014).

### 2. Plaintiffs have not alleged facts sufficient to show that the US Campaign committed "an act of international terrorism"

Direct liability under Section 2333(a) requires that the US Campaign commit an act of international terrorism, which is defined by Section 2331(1).  To satisfy the statutory definition of international terrorism, Plaintiffs must allege a violation of criminal law, but Plaintiffs' Second and Third Claims fail to state violations of Sections 2339A and 2339B(a)(1).  Plaintiffs must also plausibly allege that the US Campaign itself engaged in "violent acts or acts dangerous to human life," which they do not. *Owens v. BNP Paribas, S.A.,* 897 F.3d at 270 n.1 (quoting 18 U.S.C. § 2331(1)(A)); *Ofisi v. BNP Paribas, S.A.,* 278 F. Supp. 3d 84, 96 (D.D.C. 2017), *vacated in part on other grounds*, 285 F. Supp. 3d 240 (D.D.C. 2018). In addition, Plaintiffs fail to allege that the US Campaign's actions appear to have been "intended" to (i) intimidate or coerce a civilian population, (ii) influence the policy of a government by intimidation or coercion, or (iii) affect the conduct of a government by mass destruction, assassination, or kidnapping. 18 U.S.C. § 2331(1)(B)(i)-(iii)).  Finally, Plaintiffs fail to allege that the US Campaign's activities occurred "primarily outside the territorial jurisdiction" of the U.S., or "transcend national boundaries."  18 U.S.C. § 2331(1)(C).

### a. Plaintiffs' Second Claim for Relief that the US Campaign violated Section 2339A fails as a matter of law.

To state a claim under Section 2339A, Plaintiffs must show that Defendants provided material support or resources (1) "knowing or intending that they are to be used in preparation for, or in carrying out" (2) a violation of one of a long list of federal crimes. 18 U.S.C. § 2339A(a).

Plaintiffs fail on each of these elements. Plaintiffs fail on the first element because they do not allege that US Campaign knew or intended that its fiscal sponsorship, or any support of the BNC, or statements in support of the GRM protestors' rights would be used to carry out any crime.

Plaintiffs allege conclusorily that "USCPR provided its material support to the BNC… knowing or intending that HAMAS would utilize the financial assistance that USCPR provided in furtherance of their terrorist activities," (Compl. ¶ 218), but conclusory allegations are insufficient to support a claim under the statute. *Ofisi*, 278 F. Supp. 3d at 100 (finding that conclusory allegations that French bank "knew or should have known" that its transactions with government of Sudan and Al Shamal "would end up with Al Qaeda" failed to establish that BNPP had the requisite scienter under Section 2339A). *See also Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 39 (D.D.C. 2010) (the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept legal conclusions).

Plaintiffs fail on the second element because they do not specify any underlying federal crime that was violated using US Campaign's support or resources, as required. The Second Claim for Relief should be dismissed summarily for failure to allege these essential elements of a violation of section 2339A.

> **b.   Plaintiffs' Third Claim for Relief that US Campaign violated Section 2339B(a)(1) fails as a matter of law.**

The Complaint alleges no facts to support Plaintiffs' Third Claim for Relief that the US Campaign "knowingly provide[d] material support to a foreign terrorist organization," in violation of Section 2339B(a)(1). "To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization . . . or that the organization has engaged or engages in terrorist activity . . . [or] terrorism." 18 U.S.C. § 2339B(a)(1).  The Complaint alleges that the US Campaign served as the fiscal sponsor for the BNC, but the BNC is not a designated FTO. Nor have Plaintiffs alleged any facts to support a plausible claim that the BNC has engaged in terrorism, much less that the US Campaign provided assistance to the BNC knowing that it had

14

done so.

The US Campaign is alleged to have provided fiscal sponsorship to the BNC, not to "any terrorist directly." *Owens v. BNP Paribas, S.A.*, 235 F. Supp. 3d 85, 98–99 (D.D.C. 2017), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018). Section 2339B criminalizes support knowingly given to a terrorist organization, not support given to an organization that is associated with another organization, which is in turn is associated with an FTO. As the District Court held in *Owens*:

> [T]o show a violation of § 2339B, plaintiffs must sufficiently allege that defendants knew they were providing material support to a foreign terrorist organization. See § 2339B(a)(1). Here, defendants are accused of providing financial services to Sudan, not to al Qaeda or to any terrorist directly . . . . Notwithstanding repeated conclusory statements in the complaint that defendants "conspired" with Sudan to provide financial services to al Qaeda, and that defendants knew the money they processed for Sudan would end up with al Qaeda, plaintiffs have failed to satisfy these statutory requirements for intent by pleading specific, non-conclusory factual allegations.

*Owens v. BNP Paribas, S.A.*, 235 F. Supp. 3d at 98–99.

Because any assistance the US Campaign provided to the BNC cannot constitute knowing provision of material support to an FTO as required by the statute,[2] Plaintiffs instead seek to rely on conclusory statements that the US Campaign provided "financial assistance" and "material support" to Hamas, a designated FTO. Compl. ¶¶ 205, 214, 215, 217-219, 222, 230, 232. Plaintiffs arrive at this conclusion equating fiscal sponsorship of the BNC to material support for Hamas by alleging that organizations designated by the US government as FTOs, including Hamas, are members of a coalition (the PNIF), which is in turn a member of the BNC. Compl. ¶¶ 24, 66. The Complaint acknowledges, however, that the BNC is a coalition established to coordinate a broad campaign to boycott Israel, a campaign that has been endorsed by 170 Palestinian groups. Compl.

---

[2] Similarly, Plaintiffs' allegation that the US Campaign "supports and sponsors" the GRM (Compl. ¶ 136) does not satisfy the requirement, because the GRM is not an FTO, or even an organization—it is a march.

¶¶ 73, 76. Although alleging in conclusory terms that the PNIF has been a "leading member" of the BNC, Compl. ¶¶ 77, 78, the Complaint contains not a single factual allegation to support the claim that funds raised through the US Campaign's fiscal sponsorship of the BNC were provided to the PNIF, much less to Hamas or any other terrorist organization.  Plaintiffs certainly do not allege facts to support the claim that the US Campaign, by offering fiscal sponsorship to the BNC or even partnering with the BNC, was "knowingly" providing funds to a terrorist organization. Plaintiffs also allege in conclusory fashion that the US Campaign gave "substantial assistance" to Hamas "operatives and []front organizations." Compl. ¶ 203. But the Complaint fails to identify any operatives that allegedly received such assistance, and contains no factual allegations to support the claim that the BNC is an operative or front for Hamas much less that the US Campaign knew that it was. This vague and conclusory allegation is inadequate to support a claim under Section 2339B.  *See*, *e.g. Owens,* 235 F. Supp. 3d at 99; *Ofisi*, 278 F. Supp. 3d at 100; *Retana v. Twitter, Inc.*, No. 3:19-CV-0359-B, 2019 WL6619218 at *6 (N.D. Tex. Dec. 5, 2019), *appeal filed*, No. 19-11389 (5th Cir. Dec. 30, 2019).

### c.  Plaintiffs do not satisfy any of the other definitional elements for an "act of international terrorism"

Even if the Complaint's allegations were sufficient to support claims that the US Campaign had violated the provisions of either Section 2339A or Section 2339B (which they are not), the Complaint would still fail to state a claim under Section 2333(a) because Plaintiffs fail to allege that the US Campaign's actions constituted an "act of international terrorism." 18 U.S.C. § 2331(1).  In order to state a claim under Section 2333(a), a complaint must plausibly allege that the defendant's own actions "*also* involve violence or endanger human life," that these actions "appear to be intended to intimidate or coerce a civilian population or to influence or affect a government," and that they "must have occurred primarily outside the territorial jurisdiction of the

16

United States or transcend national boundaries." *Linde v. Arab Bank*, *PLC*, 882 F.3d 314, 326-27 (2d Cir. 2018) (distinguishing giving money directly to Hamas from providing routine financial services to members and associates of terrorist organizations).

First, Plaintiffs do not allege that the U.S. Campaign's activities involved "violent acts or acts dangerous to human life." 18 U.S.C. § 2331(1)(A). The only acts alleged in which the US Campaign itself engaged was to serve as a fiscal sponsor for the BNC in the U.S. for an unspecified period of time, to "partner" with the BNC, and to express "support" for the GRM. Compl. ¶¶ 130, 132-137. The Complaint conclusorily asserts that the BNC also "sponsors" the GRM, but provides no factual basis for this conclusion.  Compl. ¶¶ 132, 135. This is patently insufficient.

Although the Complaint alleges that there were burning kites, balloons and rockets that were launched into Israel, it does not clearly allege who was responsible for the launches. *Compare* Compl. ¶¶ 102-114 (alleging that Sons of al-Zawari launched balloons and kites), *with* Compl. ¶ 55 (balloons and kites are launched by "Hamas and/or others"), ¶ 118 (launched by "Hamas and other terrorist organizations"), *and* ¶ 52 ("Palestinian youths"). Crucially, Plaintiffs do not allege that the US Campaign (or the BNC) engaged in this conduct.

Fiscal sponsorship of and partnership with the BNC alone is not "dangerous to human life." Fiscal sponsorship of an organization that advocates a boycott is not "inherently violent or dangerous." *See O'Sullivan v. Deutsche Bank AG*, No. 17 CV 8709-LTS-GWG, 2019 WL 1409446 at *8 (S.D.N.Y. Mar. 28, 2019) (stating that "provision of banking services" to Iran cannot be "considered as acts dangerous to human life, particularly because the allegations delineating relationships between the [financial] services and the terrorist attacks at issue are so attenuated."). In *Kaplan v. Lebanese Canadian Bank, SAL*, the court found that "the provision of financial services does not, in itself, equate to international terrorism." 405 F. Supp. 3d 525, 532

(S.D.N.Y 2019). Nor are any other actions taken by the US Campaign, for example criticism of Israeli use of force or advocacy on behalf of injured Palestinian demonstrators, Compl. ¶¶ 132-134, "dangerous to human life."

Second, the Complaint also fails to state a claim under Section 2333(a) because it alleges no facts to support that the fiscal sponsorship of or partnership with the BNC, or expressions of support for the rights of GRM demonstrators, was intended to intimidate or coerce either civilians or a government. *See* 18 U.S.C. § 2331(1)(B)(i)-(iii). To satisfy this element, Plaintiffs need to allege facts that would lead an "objective observer" to conclude that through these actions the US Campaign "desire[d] to "intimidate or coerce" a "civilian population or government" or had "terroristic intent." *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 390 (7th Cir. 2018). The Complaint alleges that the US Campaign posted on its social media and in an e-mail its support for the GRM as a protest demanding freedom and the right of refugees to return home, and urging the Campaign's supporters to contact their Members of Congress. Compl. ¶ 132. Two individuals are quoted as supporting the GRM and opposing Israel's use of massive military force against Gaza in response to the "infinitesimal percentage" of Gazans who launched burning kites and balloons. Compl. ¶¶ 133, 134. These allegations are patently insufficient to suggest that the US Campaign intended to intimidate or coerce anyone. Moreover, with regard to fiscal sponsorship, the far more plausible conclusion is that it was intended to support BNC's lawful activities, including the promotion of a boycott—a lawful activity recognized by the Complaint itself as the BNC's central goal.  Compl. ¶ 76. "'Dismissal is required because the 'plausible alternative explanation' . . . 'is so convincing that [the] plaintiff's explanation is implausible.'" *Scahill v. District of Columbia*, 286 F. Supp. 3d 12, 23 (D.D.C. 2017), quoting *Arpaio v. Obama*, 797 F.3d 11, 25 (D.C. Cir. 2015).  Plaintiffs' assertion, based solely on conclusory allegations, that the US

Campaign's fiscal sponsorship and support for the GRM was intended to support terrorist activities by Hamas is simply implausible.

Finally, the complaint fails to allege that the conduct that the US Campaign engaged in—fiscal sponsorship—occurred "primarily outside the territorial jurisdiction of the United States, or transcend[s] national boundaries."  18 U.S.C. § 2331(1)(c).  Plaintiffs fail to allege, in non-conclusory terms, that the US Campaign ever transferred money or resources outside the United States. Thus, they fail to "meet the territorial requirements set forth in Section 2331(1)(C)." *Shatsky*, 2017 WL 2666111, at *4 (quoting *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 200 (D.D.C. 2014)).

Plaintiffs' Complaint fails to state a claim because it lacks factual allegations plausibly suggesting that the US Campaign's own actions met any of Section 2331(1)'s definitional elements of an "act of international terrorism."  *See Linde*, 882 F.3d at 326 (stating that provision of military support to designated terrorist organization does not, by itself, constitute act of international terrorism required by § 2333(a)).

### B.  The Complaint Does Not Plausibly Allege Secondary Liability Under the ATA (Plaintiffs' First Claim for Relief).

Plaintiffs' allegations of aiding and abetting liability under Section 2333(d) of the ATA (Plaintiffs' First Claim for Relief) also fail to state a claim. The same fundamental flaw in all Plaintiffs' allegations—the absence of factual allegations connecting the US Campaign to the actions or actors that Plaintiffs allege caused their harms—defeats these claims.

Section 2333(d) imposes liability if a defendant "aids and abets, by knowingly providing substantial assistance," or if a defendant "conspires with the person who committed an act of international terrorism," that was "committed, planned or authorized" by an FTO. 18 U.S.C § 2333(d).  When Congress amended the ATA in 2016 to include secondary liability, it adopted

the *Halberstam* test for aiding and abetting. 18 U.S.C. § 2333 Statutory Note (Findings and Purpose § 5). To be found liable for aiding and abetting, (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation. *Halberstam v. Welch,* 705 F.2d 472, 477 (D.C. Cir. 1983). *See also Owens v. BNP Paribas, S.A.*, 897 F.3d at 277 (Congress recognized *Halberstam* as the "leading case" for civil aiding and abetting and conspiracy liability when it amended the ATA); *Siegel v. HSBC N. Am. Holdings, Inc*., 933 F.3d 217, 223 (2d Cir. 2019) (recognizing the incorporation of the *Halberstam* test under 18 U.S.C. § 2333(d) and affirming dismissal of claims).

> **1.** **Plaintiffs have failed to allege that the US Campaign knowingly provided substantial assistance to acts of international terrorism which harmed them.**

Aiding and abetting liability under the ATA requires that a defendant "knowingly" provided "substantial assistance" to an "act of international terrorism" that caused Plaintiffs' injuries. *Owens v. BNP Paribas, S.A.*, 897 F.3d at 277; *see also Linde*, 882 F.3d at 329 ("aiding and abetting an *act* of international terrorism requires more than the provision of material support to a designated terrorist *organization*."); *Taamneh v. Twitter, Inc.,* 343 F. Supp. 3d 904, 916 (N.D. Cal. 2018), *appeal filed*, No. 18-17192 (9th Cir. Nov. 13, 2018) ("JASTA does not refer to assisting a foreign terrorist organization generally or such an organization's general course of conduct."). Alleging that the defendant "generally provided aid to a third party, who in turn purportedly engaged in tortious activity, is not enough; rather, the plaintiffs are required to plead a link between the aid rendered and the principal violation (or violations) alleged." *Acosta Orellana*, 711 F. Supp.

2d at 110. Here, Plaintiffs do not plausibly allege that US Campaign provided material support to an *act* of international terrorism which injured them.

There are no factual allegations connecting the US Campaign to any of the alleged acts of international terrorism - namely, incendiary kites, balloons, or rockets. Plaintiffs identify several parties who they allege launched kites and balloons including Hamas, the Sons of al-Zawari, unnamed terrorist organizations, and "Palestinian youths." Compl. ¶¶ 50, 52, 99, 100. But they allege no facts sufficient to establish that the US Campaign provided assistance, much less substantial assistance, to the launching of balloons, kites or rockets (or to the groups allegedly launching them). Generalized allegations that, in addition to serving as a fiscal sponsor for the BNC, the US Campaign supported the boycott movement, and Palestinian demonstrators' rights (all of which are legal activities), are insufficient to plausibly allege that the US Campaign knowingly provided substantial assistance to any of those who launched rockets, kites and balloons.

Even if the Complaint plausibly alleged that the US Campaign's assistance to the BNC ended up in the hands of Hamas (which it does not), that would be insufficient to support a claim under Section 2333(d) because Plaintiffs have failed to allege that any such assistance supported an act of international terrorism committed by Hamas or any terrorist act that caused Plaintiffs' alleged injuries. *Linde,* 882 F.3d at 329. Conclusory allegations that "Defendant USCPR and its agents, employees and representatives knew that during the GRM, incendiary terror balloons and kites were being used and launched into Israel… and encouraged and supported the [GRM]" are insufficient to support the claim that US Campaign provided substantial assistance to those acts of international terrorism. Compl. ¶ 119. *See also* Compl. ¶ 86 (alleging that many believed the GRM is peaceful). *See also Acosta Orellana*, 711 F. Supp. 2d at 109 ("where some allegations in the

complaint contradict other allegations, the conflicting allegations become 'naked assertions devoid of further factual enhancement . . . [, which therefore] cannot be presumed true.'").

### 2.   The Complaint does not plausibly allege that the US Campaign was "generally aware" of any role in illegal activity.

Aiding and abetting liability requires that a defendant be "generally aware" of its role as part of an overall illegal or tortious activity at the time that it provides the assistance. *Halberstam,* 705 F.2d at 477. Plaintiffs' allegations fail to meet this requirement. The Second Circuit in *Linde* explained that while plaintiffs need not show that the defendant knew of the specific attack at issue, they have to show more than just a defendant's knowledge of the foreign terrorist organization's connection to terrorism. *Linde,* 882 F. 3d at 329-30.  The plaintiff must show that the defendant intended to further the organization's terrorist activities or at least was "generally aware" that, through its actions, the defendant was "playing a 'role' in [the organization's] violent or life-endangering activities." *Id*. at 329 (quoting *Halberstam*, 705 F.2d at 487). *See also Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d at 534 (finding that plaintiffs did not offer any non-conclusory allegations that the defendant was aware that, by providing financial services to the particular customers, who were described as "integral constituent parts" and leaders of Hezbollah, it was playing a role in violent or life-threatening acts intended to intimate or coerce civilians or affect a government); *Taamneh*, 343 F. Supp. 3d at 917 (plaintiffs did not adequately allege that Twitter knew it was assuming a "role" in ISIS' terrorist activities when, for example, there were no allegations that it knew that ISIS members had previously used the platform to communicate specific plans).

Here, there is no factual allegation that the US Campaign had any knowledge that any support to the BNC through its fiscal sponsorship or otherwise would assist *any* violent or terrorist activities, including the launching of kites and balloons or rockets (or that it in fact did).

Although the Complaint includes conclusory statements that the US Campaign "knew" that support to the BNC financially supported Hamas and that "promoting" the GRM aided and abetted and provided material support for an FTO, Compl. ¶ 137, no factual allegations support these conclusory and vague assertions.

Indeed, Plaintiffs' allegations that the BNC has engaged in nonviolent activities like the promotion of a boycott and other advocacy work defeats any inference that the US Campaign had general knowledge that by fiscally sponsoring or otherwise supporting them, it was assuming a role in Hamas's or others' terrorist activities. *See Averbach v. Cairo Amman Bank*, No. 19-CV-0004-GHW-KHP, 2020 WL 486860, at \*14 (S.D.N.Y. Jan. 21, 2020) (plaintiff's concession that charity account holders take part in actual charitable activities and provide actual social services undermine any inference that [bank] had general knowledge that … it was assuming a role in Hamas' terrorist activities).

### 3.  Plaintiffs fail to allege that any assistance was "substantial."

Under 18 U.S.C. § 2333(d), "liability may be asserted as to any person who aids and abets, by *knowingly* providing *substantial* assistance" to an act of international terrorism by an FTO. 18 U.S.C. § 2333(d)(2) (emphasis added). Again, the relevant inquiry concerns the relationship between the act of international terrorism and the US Campaign's conduct. *Linde*, 882 F.3d at 330-31.  Plaintiffs have failed to allege that the US Campaign provided any assistance, much less *knowingly* provided *substantial* assistance, to any acts of international terrorism, let alone the launchings of rockets, kites and balloons.

As a threshold matter, there cannot be "substantial assistance" because there are no nonconclusory allegations of any assistance at all: the Complaint makes no factual allegations that the US Campaign provided financial or other support to Hamas or other entities involved in the

launchings. Plaintiffs' only allegations for financial support are the "transfer [of] presently unknown sums of money" to Hamas, and their "enabling HAMAS to convert funds nominally intended to support humanitarian causes." Compl. ¶ 203. They present no facts to support this, beyond their general allegations regarding the US Campaign's fiscal sponsorship of the BNC. Thus, there are no non-conclusory allegations from which the Court can infer that any group responsible for the launchings actually received funds through the US Campaign's fiscal sponsorship. *See Averbach*, 2020 WL 486860, at *16 (stating that no non-conclusory allegations show that Hamas actually received any of the funds transferred to defendant's accounts). *See generally Kaplan v Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d at 536 (finding that plaintiffs failed to allege substantial assistance because they did not plausibly allege that Hezbollah received any of the funds transferred through its customers' accounts or that the defendant knew or intended that Hezbollah would receive the funds even where two of the Bank's customers were alleged to be Hezbollah's "unofficial treasury"). There are no allegations as to what the funds raised through the fiscal sponsorship mechanism are for, beyond a donation to a "coalition in Palestinian civil society." Compl. ¶ 124. Needless to say, Plaintiffs do not allege that US Campaign's expressions of support for the rights of protestors at the GRM cannot amount to any kind of assistance.

In determining how much assistance is substantial enough, *Halberstam* set out six relevant factors: "(1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance." 705 F.2d at 478. Elaborating on the second factor, the D.C. Circuit indicated that the assistance given by the defendant should play a "major part in prompting the tort" or be "integral" to the tort to be considered substantial assistance. *Id.* at 484. With regard to the fourth factor, the *Halberstam* court

indicated that a close relationship or a relationship where the defendant had a position of authority could weigh in favor of substantial assistance. *Id.* As to the fifth factor, the defendant's state of mind, the *Halberstam* court indicated that the fact that a defendant "showed he was one in spirit" with the principal wrongdoer could weigh in favor of substantial assistance. *Id.* In examining the application of this *Halberstam* factor to the ATA, "it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *Taamneh,* 343 F. Supp. 3d at 918 (quoting *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 920 (1982)).

Plaintiffs fail to satisfy these *Halberstam* factors. First, the Complaint contains no allegations regarding the amount in question and certainly none to support that the BNC's fiscal sponsorship played a "major part in prompting" rockets and balloons launched by a multitude of actors, none of which include the BNC. *Halberstam*, 705 F.2d at at 484. Second, Plaintiffs do not allege that the US Campaign was present at the time of the launchings, or anywhere in Gaza for that matter. Third, there are no allegations that the US Campaign has any authority over or even a relationship with the launchers of the kites, balloons and rockets – Hamas, Sons of al-Zawari, or the other (known and unknown) groups. The only other allegation of a relationship is to the BNC, Compl. ¶ 130, which is irrelevant for purposes of this analysis. Finally, Plaintiffs do not allege that the US Campaign had advance knowledge of the launchings, intended terrorist organizations to carry out the launchings, or otherwise manifested a culpable state of mind. *See, e.g.*, *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d at 536 (finding that plaintiffs did not make any plausible or non-conclusory allegations that defendants supported Hezbollah in perpetrating rocket attacks when they failed to allege that Hezbollah received any of the funds or that defendant knew or intended that Hezbollah would receive funds, or that the bank's customers were even members

of Hezbollah). Plaintiffs do not state a claim for aiding and abetting because they fail to allege that the US Campaign knowingly provided substantial assistance to an act of international terrorism.

### 4. Plaintiffs fail to allege that their injuries arose from an act "committed, planned, or authorized" by a designated FTO.

Plaintiffs' aiding and abetting claim also fails because they do not allege facts to show that their injuries arose from an act "committed, planned or authorized" by a designated FTO. The Complaint alleges that various groups launched rockets, kites and balloons, including groups that are not alleged to be designated FTOs. *See* Compl. ¶¶ 100, 102-114 (alleging that Sons of al-Zawari launched balloons and kites), ¶¶ 9-21, 51, 52, 55, 157 (rockets, balloons and kites launched by Hamas and "others"), ¶¶ 118 (launched by "HAMAS, and other terrorist organizations"), ¶ 52 ("Palestinian youths"). These allegations are insufficient to plausibly allege that Plaintiffs' injuries arose from acts "committed, planned or authorized" by an FTO, as several groups are alleged to have launched kites and balloons, only one of which is a designated FTO (Hamas).

### 5. Plaintiffs do not state a claim for conspiracy under the ATA.

Plaintiffs do not allege that the US Campaign conspired with a person who committed an act of international terrorism.  Their First Claim for Relief asserts aiding and abetting liability under the ATA and does not mention a conspiracy.  Compl. pp. 50-52.  Their Second and Third Claims for relief are brought under 18 U.S.C. § 2333(a) for direct liability, not under 18 U.S.C. § 2333(d) for vicarious liability.  Compl. pp. 52-54. *See Owens v. BNP Paribas, S.A.,* 897 F.3d at 276-80 and 279 n.12 (a claim for conspiracy under the ATA must be brought under § 2333(d)). Although Plaintiffs' Second Claim for Relief contains a passing, conclusory and unsubstantiated allegation that the US Campaign engaged in a "joint plan and conspiracy" with Hamas, Compl. ¶ 220, Plaintiffs do not allege any facts to support the necessary elements of a conspiracy.

The elements of a conspiracy are: "(1) an agreement between two or more persons; (2) to

participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam*, 705 F.2d at 477. "[A]n essential element of a conspiracy claim is an allegation that the parties to the conspiracy come to an agreement or meeting of the minds." *Lyles v. Hughes*, 83 F. Supp. 3d 315, 323 (D.D.C. 2015) (internal quotation marks and citations omitted). A plaintiff must provide more than conclusory allegations of an agreement. *See Twombly*, 550 U.S. at 556-57 (explaining that "stating a [conspiracy] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and noting that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). Plaintiffs fail to allege any relevant agreement that supports their claim of conspiracy, or facts from which this Court could plausibly infer such an agreement.

The Complaint contains no nonconclusory allegation about any meeting of the minds between US Campaign and Hamas or any other actor who allegedly committed an act of international terrorism, nor about the scope of conspiracy referenced in Compl. ¶ 220. Plaintiffs' conclusory allegation that US Campaign "agree[d] to support, promote, and sponsor" the GRM, Compl. ¶ 243, is inadequate to support an allegation of an agreement, much less an agreement to commit an unlawful act. *See Twombly*, 550 U.S. at 556-57. None of the Plaintiffs' factual allegations describe an alleged "agreement." Instead, the allegations merely describe First Amendment protected expression advocating for the right of residents of Gaza to march safely for freedom and their internationally recognized right to return. Compl. ¶ 132 ("USCPR has been actively promoting and sponsoring the Great Return Marches on its Facebook page, on Twitter, in emails, and otherwise," including a screenshot of an email and tweets); ¶ 133 (describing a speaker

at the US Campaign's conference "lauding" the GRM); ¶ 134 (including a screenshot of a tweet expressing "opposition to Israel's use of force").   These emails, tweets, and statements are precisely the type of expression on a matter of public concern that "has always rested on the highest rung of the hierarchy of First Amendment values." *Claiborne*, 458 U.S. at 913 (quoting *Carey v. Brown,* 446 U.S. 455, 467 (1980)).[3]

The only relevant "agreement" supported by factual allegations in the Complaint is the US Campaign's agreement to serve as the fiscal sponsor of the BNC.  The US Campaign's fiscal sponsorship of the BNC is not an agreement that individuals with highly attenuated associations with the BNC should commit acts of international terrorism by launching incendiary kites, balloons and rockets into Gaza.  Indeed, there are no allegations in the Complaint that the US Campaign has ever even communicated with, let alone agreed to do anything with, Hamas, Sons of al-Zawari, or any other individuals or groups that are alleged to be behind the launchings which are the foundation of Plaintiffs' claims.  Plaintiffs' Complaint simply does not plausibly allege that the US Campaign and the parties allegedly involved in tortious acts came to an agreement to participate in unlawful acts or lawful acts committed in an unlawful manner.

### IV.   PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED ON THE MERITS

Plaintiffs' common law claims should be dismissed with prejudice because they fail to allege facts sufficient to support the claimed conspiracy or the elements of the underlying torts.

---

[3] While the Court in *Claiborne* outlined three instances where speech could form the basis of tort liability for unlawful acts by third parties, none of these statements fit within those exceptions. The US Campaign is not alleged to have "authorized, directed, or ratified" tortious or violent activity; the statements made at great geographic and temporal distance from the GRM were not "likely to incite lawless action" nor are there allegations that alleged torts "in fact followed within a reasonable period" of the statements; and the tweets, emails, and statements were certainly not "evidence . . . [of] specific instructions to carry out violent acts or threats." 458 U.S. at 927.

### A. This court should retain jurisdiction to dismiss Plaintiffs' claims with prejudice.

If Plaintiffs' federal claims are dismissed, their state claims should also be dismissed.  A district court has supplemental jurisdiction over state claims "that are so related" to federal claims "that they form part of the same case or controversy," 28 U.S.C. § 1367(a), but it may decline to exercise supplemental jurisdiction when, inter alia, it has dismissed all federal claims. 28 U.S.C. § 1367(c)(3).  "Whether to retain jurisdiction over pendent state and common law claims after the dismissal of the federal claims is 'a matter left to the sound discretion of the district court'" that is reviewed "for abuse of discretion only." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423–24 (D.C. Cir. 2005), quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n,* 48 F.3d 1260, 1265–66 (D.C. Cir. 1995).

In deciding whether to retain jurisdiction over state law claims, a court should consider and weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Edmondson*, 48 F.3d at 1266 (same).  If this Court dismisses Plaintiffs' federal claims for failure to state a claim, it should also dismiss the state claims on the merits with prejudice, because Plaintiffs' state claims depend upon the same set of allegations as their federal claims. *Hurn v. Oursler*, 289 U.S. 238, 247-48 (1933) (state unfair competition claim should have been dismissed on the merits, and not for want of jurisdiction, because it depended on the same allegations as the dismissed federal copyright infringement claim).[4]  *See also Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002) (district court did not err in retaining jurisdiction over and dismissing state law claims against defendant with

---

[4] The doctrines of pendent and ancillary jurisdiction "have been largely superseded by the adoption of 28 U.S.C.A. §1367, the supplemental jurisdiction statute, but the opinions that apply pendent and ancillary jurisdiction remain integral to the interpretation and application of Section 1367." § 1:43. Overview, 1 BUS. & COM. LITIG. FED. CTS. § 1:43 (4th ed.).

prejudice after dismissing all federal claims, which were only brought against co-defendants, because the state and federal claims formed part of the same case or controversy, "the parties had already argued the merits of the claims to the district court," and "it would make little sense to require defendant to expend additional resources making the same arguments in state court."). Here, judicial economy dictates that Plaintiffs' state law claims, which are based on the same allegations as their federal claims, be dismissed with prejudice, to avoid the possibility that another court would have to separately address and dispose of them as well, especially given Plaintiffs' lengthy and convoluted Complaint.  In addition to the same set of attenuated allegations, the analysis for the federal and state law claims is similar, as they all fail on similar grounds, including lack of causation.  Both sets of claims (federal and state) require vicarious liability and are governed by *Halberstam*; when the Court decides the federal claims it will necessarily be considering the fundamental issues in the state claims.  Finally, dismissal with prejudice of Plaintiffs' inflammatory accusations against US Campaign would be in the interest of judicial economy, fairness to the litigants, and convenience, as the case would be resolved more quickly. *See, e.g., Edmondson*, 48 F.3d at 1267 (other concerns include "convenience to the parties and a faster resolution of the case").[5]

---

[5] If this Court dismisses Plaintiffs' federal claims for failure to state a claim, but is not inclined to dismiss their state law claims with prejudice, it should decline to exercise jurisdiction and dismiss them without prejudice, given early dismissal of the federal claims at the motion to dismiss stage. *See, e.g., Cohill*, 484 U.S. at 350. It would not be in the interest of judicial economy, comity, convenience, or fairness for the court to retain jurisdiction to permit the state law claims to proceed in federal court. One reason is that D.C.'s Anti-SLAPP Act, which arguably applies to Plaintiffs' claims, is available to Defendant in D.C. Superior Court, but has been found not to apply in federal court in D.C. *See, e.g., Fridman v. Bean LLC*, No. CV 17-2041 (RJL), 2019 WL 231751, at *2–3 (D.D.C. Jan. 15, 2019).

**B.  Plaintiffs fail to state claims for conspiracy to commit trespass or public nuisance (Fourth and Fifth Claims for Relief).**

Plaintiffs claim that the US Campaign should be held liable for conspiring to commit trespass and public nuisance allegedly caused by third parties who launched kites, balloons, and rockets into Israel. The analysis of conspiracy liability set out in *Halberstam* is applicable to the pendant claims just as they are to the ATA claims. *See, e.g.*, *Owens v. Bank of Am.*, No. 17-2110 (ABJ), 2018 WL 4387572, at *5 (D.D.C. Sept. 14, 2018).  Therefore, Plaintiffs fail to state claims of conspiracy to commit state torts for the same reasons they fail to state a claim for conspiracy under the ATA, *supra* at Section III(B)(5).  The Complaint fails to allege the essential elements of conspiracy: there is no nonconclusory allegation that the US Campaign entered into an agreement with Hamas or any other entity to commit these torts. Moreover, the allegations of conspiracy rely on First Amendment protected activity to draw a connection between US Campaign and other parties who allegedly launched kites, balloons or rockets: the US Campaign's statements in support of the GRM is First Amendment protected speech, as discussed above at Section III(B)(5), and its agreement to accept donations on behalf of the BNC is also protected by the First Amendment. *See, e.g.*, *Reese Bros., Inc. v. U.S. Postal Serv.*, 905 F. Supp. 2d 223, 249 (D.D.C. 2012) ("It is well-established that solicitation of charitable donations is 'speech protected by the First Amendment'" (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985)).

**C.  Plaintiffs fail to allege facts sufficient to state claims for trespass, destruction of property or public nuisance (Fourth and Fifth Claims for Relief).**

Plaintiffs' Complaint also alleges no facts to support the elements of the underlying torts under the laws of the District of Columbia.

1.  <u>Trespass</u>: A trespass is "an unauthorized entry onto property that results in

interference with the property owner's possessory interest therein." *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1060 (D.C. 2014). *See also Acosta Orellana*, 711 F. Supp. 2d at 93.

Plaintiffs' allegations of who is responsible for the intrusions are vague and untraceable to any particular party, much less to the US Campaign. *See* Compl. ¶ 9 (alleging that "forests held and land owned by KKL-JNF have been subjected to extensive damage as a result of the rockets, incendiary terror balloons and kites launched from HAMAS controlled Gaza by HAMAS *and/or others*," and failing to allege exactly by whom or where) (emphasis added). *See also* Compl. ¶¶ 55, 110, 157 (same). Plaintiffs variously allege that they were harmed by balloons and kites launched by the Sons of al-Zawari, Compl. ¶ 103; elsewhere, a document they include describes "Palestinian youths" as responsible, Compl. ¶ 52; and still elsewhere, they allege that all were launched by Hamas. Compl. ¶ 239. The allegation that there is evidence that the Sons of al-Zawari are part of Hamas is insufficient to account for these seeming inconsistencies. Compl. ¶ 103. *Amore ex rel. Amore v. Accor*, 529 F. Supp. 2d 85, 94 (D.D.C. 2008) ("the court does not accept as true self-contradictory factual allegations"). *See also Acosta Orellana*, 711 F. Supp. 2d at 109 ("where some allegations in the complaint contradict other allegations, the conflicting allegations become 'naked assertions devoid of further factual enhancement ... [, which therefore] cannot be presumed true.'").

To the extent that Plaintiffs are attempting to hold the US Campaign liable for intrusions by third parties, Plaintiffs' claim fails. Trespass is not a "strict-liability formulation," and it is not enough "that the defendant intentionally does some act that ultimately results in harm to property." *Acosta Orellana*, 711 F. Supp. 2d at 93. Instead, a defendant "must *intend* the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the *immediate or inevitable consequence* of what [the defendant] willfully does." *Id.* (emphasis added). When a plaintiff claims

that a third party committed the trespass, as in this case, then the plaintiff must allege that the defendant "intentionally cause[d] a third person to enter land," for example by "command[ing] or "request[ing]" the third party to do so. RESTATEMENT (SECOND) OF TORTS § 158 (1965); *In re Hall*, No. 12-00753, 2014 WL 2993734, at *2 (Bankr. D.D.C. July 3, 2014) (citing the Restatement).

Here, there are no factual allegations to support a claim that the US Campaign intended to intrude on Plaintiffs' property, that any such intrusion was the "immediate or inevitable consequence" of the US Campaign's intentional acts, or that the US Campaign "command[ed]" or "request[ed]" that the intruders enter Plaintiffs' land, or that the US Campaign intentionally caused Hamas or others to trespass. Allegations that the US Campaign expressed support for the GRM, Compl. ¶¶ 25, 132-143, and served as the fiscal sponsor of the BNC, Compl. ¶¶ 77, 81-83, 239-40, 243, are clearly inadequate to meet this standard. *See Acosta Orellana,* 711 F. Supp. 2d at 94 (dismissing trespass claims based on the actions of third parties where the defendant engaged only in lawful promotion and lobbying). In addition, all these allegations constitute First Amendment protected expression or association and are perfectly lawful. *See, supra,* at Sections III(B)(5), IV(B).

Moreover, the Complaint contains no allegations of any physical intrusion onto the property of the Vaknin Plaintiffs.[6] The Complaint states that the Vaknin Plaintiffs have lived "in fear of rockets," Compl. ¶ 186, that they are "on the lookout for incendiary balloons and kites," *id.*, and that their home is "13km from forests which have been burned as a result of… balloons and kites," Compl. ¶ 185.  Because the Vaknins fail to allege any physical intrusions by rockets, kites, or balloons on their own property or the air above it, they do not have standing to bring a claim for trespass.

---

[6] This claim is not brought on behalf of the Goodman Plaintiffs.

Finally, the Complaint does not allege any intrusion into any identifiable property over which KKL-JNF has a possessory interest. *Greenpeace*, 97 A.3d at 1060 ("a recognized possessory interest is the 'key requirement' for a successful claim of trespass."). The Complaint states only that, since April 2018, there have been "hundreds of fires resulting in damage to more than 9,550 dunam (approximately 2,400 acres) of KKL-JNF property" caused by the rockets, incendiary balloons and kites. Compl. ¶ 9. KKL-JNF allegedly owns "625,000 acres of land," and also "owns trees in the forests," Compl. ¶ 156, and *holds* other land, Compl. ¶¶ 9, 55. It is impossible to discern from the Complaint where and when the intrusions from the rockets, kites, or balloons allegedly occurred, and whether they occurred on land that KKL-JNF actually owns, or merely on land that it "held" or where it only owned trees and therefore does not have a possessory interest.

        2.  <u>Destruction or damage to property</u>. Plaintiffs claim damages for the tort of "destruction of property." This tort does not exist under D.C. law, which does, however, recognize the tort of "damage to personal property." *Daskalea v. Wash. Humane Soc'y*, 480 F. Supp. 2d 16, 36 (D.D.C. 2007).  Plaintiffs have failed to plead that any personal property they own was destroyed or damaged.

        3.  <u>Public nuisance</u>: Plaintiffs' claim of "conspiracy to commit public nuisance" rests on allegations that Hamas intentionally launched rockets, balloons and kites that caused fires that "cause significant large damage including loss of infrastructure and ecosystems as well as significant health and safety dangers to the Plaintiffs and members of the public at large, because of the inhalation of smoke." Compl. ¶¶ 253-255. As detailed above at Section IV(C)(1), the claim fails because Plaintiffs have not provided factual allegations to support US Campaign's liability for the conduct attributed to Hamas, Sons of al-Zawari or any of the other unnamed groups allegedly involved in launching rockets, kites and balloons, and the Complaint contains

inconsistent allegations about the sources of the balloons and kites.

Significantly, the Complaint also fails to allege the basic elements of a public nuisance tort. "A public nuisance is an unreasonable interference with a right common to the general public." *B & W Mgmt., Inc. v. Tasea Inv. Co.,* 451 A.2d 879, 881 (D.C. 1982) (quoting RESTATEMENT (SECOND) OF TORTS § 821B (1) (1979)). *See also Acosta Orellana,* 711 F. Supp. 2d at 101 (citing *Nat'l Tel. Co-op. Ass'n v. Exxon Corp.*, 38 F. Supp. 2d 1, 13 (D.D.C. 1998)). "To be actionable as a nuisance, the offending thing *must be marked by 'some degree of permanence'* such that the 'continuousness or recurrence of the things, facts, or acts which constitute the nuisance,' give rise to an 'unreasonable use.'" *Wood v. Neuman,* 979 A.2d 64, 78 (D.C. 2009) (emphasis added). Plaintiffs fail to allege a permanent or continuing "nuisance" that "give[s] rise to an unreasonable use." *Arias v. DynCorp.*, Nos. 1:01cv01908 (ESH) and 1:07cv01042 (ESH), 2016 WL 6496214, at *11 (D.D.C. Nov. 2, 2016) (quoting *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158,168 (D.C. 2013)). An actionable public nuisance requires an ongoing "physical presence . . . or the constructive equivalent of such presence." *Acosta Orellana,* 711 F. Supp. 2d at 102.  Plaintiffs' allegations of sporadic rocket fire and balloons and kites do not rise to the level of a permanent physical presence.

Moreover, "[a]bsent statutory authorization, only governmental authorities or other representatives of the general public have standing to attack a public nuisance in court unless a private party can allege and prove special damage, distinct from that common to the public." *Tucci v. District of Columbia,* 956 A.2d 684, 696 (D.C. 2008) (quoting *B & W Mgmt, Inc.*, 451 A.2d at 882 (quotations omitted).  The injuries suffered by KKL-JNF are not different in kind than what is alleged to have been suffered by the general public and on that basis KKL-JNF has no special standing, and since KKL-JNF is not alleged to be a governmental authority, it does not have

standing to bring a public nuisance claim because it has not sufficiently alleged that it represents the general public. *Tucci*, 956 A.2d at 696. The Complaint itself indicates it does not represent the interests of the general public by alleging that since its founding the purpose of KKL-JNF has been to "strengthen[]the bond between the Jewish people and Israel" and "rebuild[] Jewish communities." Compl. ¶¶ 8, 144. Although the Complaint also alleges that its "extensive activities are carried out for the benefit of the public as a whole and for all sectors of Israel's population, whatever their religion or ethnicity, Compl. ¶ 154, the factual allegations of paragraphs 8 and 144 are inconsistent with the assertion that it represents the "public," which includes non-Jewish people. Finally, individual plaintiffs also lack standing to bring a private action for their public nuisance claim because the complaint contains no allegations that they suffered a "special damage, distinct from that common to the public." *Tucci,* 956 A.2d at 696.

### D. Plaintiffs' claim for conspiracy to "tortiously interfere" in unspecified business relationships and business operations of the JNF fails as a matter of law (Sixth Claim for Relief).

The Complaint alleges that the US Campaign's involvement in the Stop the JNF Campaign constitutes a conspiracy to "tortiously interfere" in KKL-JNF's business relations.[7] The Complaint contains no allegations to support the elements of a conspiracy claim: no facts indicating an agreement "to participate in an unlawful act, or a lawful act in an unlawful manner," because there is nothing unlawful about the Stop the JNF Campaign. *Halberstam,* 705 F.2d at 477. Longstanding Supreme Court doctrine makes clear that a claim of tortious interference cannot be based on participation in a lawful campaign for political and social change. *Claiborne*, 458 U.S. at 914. Moreover, the Complaint fails to identify the business relations affected or to allege resulting

---

[7] Plaintiffs also allege that the US Campaign has interfered in KKL-JNF's "business operations," but does not identify a source for such a cause of action in the District of Columbia or in any other jurisdiction.

36

damages. "Because [Plaintiff's] underlying claim of tortious interference fails to state plausible claims for relief, its conspiracy claim likewise falls short." *Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 2d 13, 21 (D.D.C. 2011), *aff'd*, 683 F.3d 397 (D.C. Cir. 2012).

First, the US Campaign's participation in the Stop the JNF Campaign is protected by the First Amendment. The Complaint does not directly list the activities in which the Stop the JNF Campaign engages. However, in paragraphs 139, 140 and 142, the Complaint reproduces parts of websites about those activities. Beyond the excerpts included by Plaintiffs, that same referenced website describes activities to be undertaken in support of the campaign.[8] It urges readers to engage in peaceful activities such as challenging the charitable status of the JNF, educating others on the JNF, and planting trees in Palestine. The Stop the JNF Campaign is precisely the type of expression on a matter of public concern that "has always rested on the highest rung of the hierarchy of First Amendment values." *Claiborne*, 458 U.S. at 913.

In *Claiborne*, the Supreme Court held that the First Amendment shielded defendants from liability for malicious interference in the business relations of white business owners when the defendants engaged in and advocated a political boycott of white businesses as part of a campaign for racial equality. *Id. See also Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) (community organization could not be held liable for distribution of informational literature exposing broker's racially discriminatory real estate practices, even if that literature were intended to exercise a coercive impact on broker); *E. R. R. Presidents Conference v. Noerr Motor Freight,*

---

[8] Help stop the human rights and environmental violations of the JNF:
      revoke the charity status of the JNF in your state or country
      break all ties with the JNF
      educate others on the JNF
      sign the Stop the JNF call-to-action
      organize the Stop the JNF campaign in your city or region
*About*, STOP THE JNF, http://www.stopthejnf.org/about/ (last visited Mar. 5, 2020).

*Inc.*, 365 U.S. 127, 135-41 (1961) (publicity campaign waged by railroads against truckers was First Amendment protected petitioning activity and could not form the basis of liability under the Sherman Act even though it may have had an anti-competitive purpose); *Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013) (blog post was entitled to First Amendment protection and could not form the basis of a tortious interference claim). This case is indistinguishable from cited precedent. US Campaign's participation in a campaign that uses education, written and oral materials related to a matter of public concern is undeniably First Amendment protected advocacy and cannot constitutionally form the basis of any tort liability.

Second, even aside from the First Amendment protections, the Complaint fails to state a claim of tortious interference with a business relation, which requires "(1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages*." Onyeoziri v. Spivok*, 44 A.3d 279, 286 (D.C. 2012). "To state a cognizable claim for relief, a complaint must present 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,'" which Plaintiffs fail to do. *Patton Boggs, LLP*, 791 F. Supp. 2d at 32. The Complaint alleges that US Campaign "knew that KKL-JNF had business relationships that relies [sic] on fundraising, reforestation of Israel, preservation of maintenance of land, tress [sic], forests, ecological and environmental structures, as well its [sic] scenic trails, recreation areas and public amenities . . . ." Compl. ¶ 268. Plaintiffs' allegations conspicuously fail to identify any party with whom KKL-JNF had a relationship, much less one that US Campaign knew about. *See Williams v. Fed. Nat'l Mortg. Ass'n*, No. CIVA 05-1483 (JDB), 2006 WL 1774252, at *8 (D.D.C. June 26, 2006) (allegation that defendants "interfered with other unspecified relationships between plaintiff and 'various lenders and customers of Fannie Mae' and 'Fannie Mae consultants, brokers, lenders

and customers and their representatives,'" without specifically naming those parties, was insufficient to establish a claim of tortious interference against those parties). The Complaint also fails to allege monetary damages: it alleges that it "has been damaged in its business relationships, reputation, and business operations," Compl. ¶ 271, but "[does] not explain how, or identify any resulting pecuniary harm." *Patton Boggs, LLP*, 791 F. Supp. 2d at 32.[9]  Because KKL-JNF cannot establish tort liability based on the factual allegations of the Stop the JNF Campaign, there can be no liability for its participation in the campaign.

## CONCLUSION

For the foregoing reasons the Complaint should be dismissed in its entirety.

Dated: March 5, 2020                        Respectfully submitted,

                                            /s/ Maria C. LaHood
                                            /s/ Shayana D. Kadidal
                                            Maria C. LaHood (admitted *pro hac vice*)
                                            Diala Shamas (admitted *pro hac vice*)
                                            Astha Sharma Pokharel (admitted *pro hac vice*)
                                            Shayana D. Kadidal (D.C. Bar No. 454248)
                                            Center for Constitutional Rights
                                            666 Broadway, 7th Floor
                                            New York, New York, 10012
                                            Tel.: (212) 614-6430
                                            Fax: (212) 614-6422
                                            mlahood@ccrjustice.org


                                            /s/ Dawn C. Doherty
                                            Dawn C. Doherty (D.C. Bar No. 414534)
                                            300 Delaware Avenue, #900
                                            Wilmington, DE  19801

---

[9] Plaintiffs also allege that the Stop the JNF Campaign was planned by the US Campaign "knowing" about the GRM and the incendiary kites and balloons launched by individuals participating in the GRM. Compl. ¶ 143(a) and (b). This is temporally impossible: the Stop the JNF Campaign allegedly began in 2009, Compl. ¶ 139, whereas the GRM allegedly began in 2018. Compl. ¶ 87.  In any case, Plaintiffs do not factually allege any way in which the Stop the JNF Campaign is connected to incendiary balloons and kites, nor do they allege any specific business relationship that suffered as a result of the GRM's actions.

(302) 658-6538
DDoherty@moodklaw.com

David P. Helwig (*pro hac vice* application pending)
707 Grant Street
Suite 2600, Gulf Tower
Pittsburgh, PA 15219

MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.

*Attorneys for Defendant US Campaign for
Palestinian Rights*