## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| Keren Kayemeth LeIsrael-<br>Jewish National Fund, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:19-cv-03425 |
| Education for a Just Peace in the Middle East<br>d/b/a US Campaign for Palestinian Rights | ) ) ) | |
| Defendant. | ) ) ) | |

---

## PLAINTIFFS' MEMORANDUM OF LAW WITH POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Dated:  May 19, 2020

Respectfully Submitted,

HEIDEMAN NUDELMAN & KALIK P.C.
1146 19th Street, 5th Floor
Washington, DC  20036
Telephone:  202-463-1818
Telefax:  202-463-2999

By:  */s/ Richard D. Heideman*
    */s/ Tracy Reichman Kalik*
    Richard D. Heideman (No. 377462)
    Noel J. Nudelman  (No. 449969)
    Tracy Reichman Kalik (No. 462055)

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………..1

STATEMENT OF FACTS……………………………………………………………..2

    1.  USCPR WAS AWARE OF BNC'S UNLAWFUL AIMS AND OBJECTIVES…......3

    2.  HAMAS' TERROR APPARATUS WAS DIRECTLY RESPONSIBLE FOR
        PLAINTIFFS' INJURIES…………………………………………………………5

    3.  THE ACTS OF TERRORISM THAT HAMAS ENGAGED IN DURING THE
        GRMS AND AT OTHER TIMES WERE WELL KNOWN AND FORSEEABLE…6

ARGUMENT…………………………………………………………………………...8

    I.     SUMMARY OF ARGUMENT…………………………………………………...8

    II.    STANDARD OF REVIEW……………………………………………………9

    III.   THE COMPLAINT STATES A CLAIM FOR BOTH PRIMARY AND
         SECONDARY LIABILITY UNDER THE ATA………………………………..10

        A.  PRIMARY LIABILTY DOES NOT REQUIRE BUT FOR/BY REASON
           OF CAUSATION………………………………………………………………10

           1.  USCPR'S FISCAL SPONSORSHIP WAS A SUBSTANTIAL
               FACTOR IN CAUSING PLAINTIFFS' INJURIES………………...12
           2.  THE DEFENDANT HAS VIOLATED §2333 BY COMMITTING
               THE CRIMINAL ACT OF INTERNATIONAL TERRORISM…….14

        B.  DEFENDANT ALSO HAS SECONDARY LIABILITY UNDER THE ATA
           FOR THE PLAINTIFFS INJURIES………………………………………...19

           1.  USCPR APPLIES THE WRONG LEGAL STANDARD FOR
               "GENERAL AWARENESS"………………………………………..20
           2.  AIDING AND ABETTING LIABILITY DOES NOT REQUIRE
               BUT- FOR CAUSATION BY THE AIDER AND ABETTOR……..22
           3.  THE ASSISTANCE USCPR PROVIDED WAS
               SUBSTANTIAL…..23

    IV. THE PLAINTIFFS HAVE SET FORTH JUSTICIABLE AND COMPENSABLE
   PENDANT STATE LAW CLAIMS……………………………………………….24

        A.  THE FIRST AMENDMENT IS NOT A DEFENSE TO COMMITTING
           TORTS……………………………………………………………………….24

B.  DEFENDANT IS VICARIOUSLY LIABLE FOR THE UNDERLYING TORTS COMMITTED BY IT CO-CONSPIRATORS……………………..26

1.  DEFENDANT HAS COMMITTED THE TORT OF CONSPIRACY TO COMMIT TRESPASS………………………...27
2.  DEFENDANT HAS COMMITTED THE TORT OF CONSPIRACY TO CREATE PUBLIC NUISANCE……………………………29
3.  DEFENDANT HAS COMMITTED THE TORT OF CONSPIRACY TO TORTIOUSLY INTERFERE WITH THE BUSINESS OF PLAINTIFF, KKL-JNF……………………………………………31

CONCLUSION……………………………………………………………………………..32

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................................................ 9

*Bell v. Ivory*,
   966 F. Supp. 23 (D.D.C. 1997) ...................................................................................... 31

*Benedict v. Allen,* No. 00–1023(CKK),
   2001 U.S. Dist. LEXIS 26293 (D.D.C. June 13, 2001) ............................................. 31

*Boim v. Holy Land Found. for Relief & Dev.*,
   549 F.3d 685 (7th Cir. 2008)................................................................. 10, 11, 16, 20

*Boyd v. Farrin*,
   958 F. Supp. 2d 232 (D.D.C. 2013) ................................................................................ 9

*Briscoe v. Costco Wholesale Corp.*,
   61 F. Supp. 3d 78 (D.D.C. 2014) .................................................................................... 9

*Burrage v. United States*,
   571 U.S. 204, 134 S. Ct. 881, 187 L. Ed. 2d 715 (2014) ............................................. 19

*Campbell v. D.C.*,
   972 F. Supp. 2d 38 (D.D.C. 2013) .................................................................................. 9

*Chen v. Bell-Smith*,
   768 F. Supp. 2d 121 (D.D.C. 2011) .............................................................................. 26

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
   793 F. Supp. 2d 311 (D.D.C. 2011) .............................................................................. 27

*D.C. v. Air Fla., Inc.*,
   750 F.2d 1077 (D.C. Cir. 1984) ...................................................................................... 9

*Democracy Partners v. Project Veritas Action Fund*,
   285 F. Supp. 3d 109 (D.D.C. 2018) .............................................................................. 29

*DT Boring, Inc. v. Chicago Pub. Bldg. Comm'n*, No. 15 C,
   11222, 2016 WL 3580756 (N.D. Ill. June 28, 2016) .................................................... 21

*Estate of Klieman v. Palestinian Auth.*,
   424 F. Supp. 2d 153 (D.D.C. 2006) .............................................................................. 28

*Freeman v. HSBC Holdings PLC*,
   413 F.Supp3d 67 (E.D.N.Y. Sept 16, 2019).................................................................. 11

*Garay v. Liriano*,
   943 F. Supp. 2d 1 (D.D.C. 2013) .................................................................................. 27

*Gill v. Arab Bank, PLC*,
   893 F. Supp. 2d 474 (E.D.N.Y. 2012)........................................................................... 11

*Greggs v. Autism Speaks, Inc.*,
   987 F. Supp. 2d 51 (D.D.C. 2014) .................................................................................. 9

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) ....................................................... 19, 20, 21, 22, 23

*Healy v. James*,
    408 U.S. 169, 92 S. Ct. 2338, 33 L. Ed. 2d 266 (1972) ...................................... 26
*Holder v. Humanitarian Law Project*,
    561 U.S. 1, 130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010) .................................... 16, 17
*Lannan Found. v. Gingold*,
    300 F. Supp. 3d 1 (D.D.C. 2017) .................................................................. 26, 27
*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003) ................................................................................ 11
*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018) ................................................................... 19, 22, 23
*Miller v. Arab Bank, PLC*,
    372 F. Supp. 3d 33 (E.D.N.Y. 2019) ................................................ 13, 14, 19, 20
*Mullendore v. Sohio Petroleum Co.*,
    438 F.2d 1099 (10th Cir. 1971) .......................................................................... 30
*N. A. A. C. P. v. Claiborne Hardware Co.*,
    458 U.S. 886, 102 S. Ct. 3409, 73 L. Ed. 2d 1215 (1982) ................................. 25
*Nanko Shipping, USA v. Alcoa, Inc.*,
    107 F. Supp. 3d 174 (D.D.C. 2015) ................................................................... 31
*Nat'l Tel. Co-op. Ass'n v. Exxon Corp.*,
    38 F. Supp. 2d 1 (D.D.C. 1998) .............................................................. 28, 29, 30
*Paroline v. United States*,
    572 U.S. 434, 134 S. Ct. 1710, 188 L. Ed. 2d 714 (2014) ............................. 12, 18
*R.A.V. v. City of St. Paul, Minn.*,
    505 U.S. 377, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992) ................................. 25
*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) ................................................................................. 11
*Samuels v. Mackell*,
    401 U.S. 66, 91 S. Ct. 764, 27 L. Ed. 2d 688 (1971) ........................................ 25
*Scales v. United States*,
    367 U.S. 203, 81 S. Ct. 1469, 6 L. Ed. 2d 782 (1961) ...................................... 25
*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ........................................ 9
*Tucci v. D.C.*,
    956 A.2d 684 (D.C. 2008) ................................................................................. 30
*Virginia v. Black*,
    538 U.S. 343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) ................................. 25
*Weiss v. Nat'l Westminster Bank PLC*,
    278 F. Supp. 3d 636 (E.D.N.Y. 2017) ............................................................... 21

## **Statutes**

18 U.S.C. § 956(a)(1) ..................................................................................... 15
18 U.S.C. § 2331(1) .................................................................................... 15, 16
18 U.S.C. § 2333 ..................................................................................... 10, 11,14
18 U.S.C. § 2339A .................................................................................... passim
18 U.S.C. § 2339B .................................................................................... passim
28 U.S.C. § 1367 ............................................................................................ 24

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................8, 9

**Other Authorities**

Restatement (Second) of Torts § 158 (1965)...........................................................29

## INTRODUCTION

The Plaintiffs' Complaint ("Complaint") sets forth more than sufficient facts which, on its face, and which when proven at trial before a jury, demonstrate the Defendant, Education for Just Peace in the Middle East d/b/a/ US Campaign for Palestinian Rights ("USCPR"), engaged in acts of terrorism in violation of the Anti-Terrorism Act ("ATA"), as amended by the AEDPA (18 U.S.C. § 2339A and 2339B).  Specifically, the Plaintiffs have averred, *inter alia*, that USCPR served as the "fiscal sponsor" and financial supporter for a foreign entity, the Boycott National Committee ("BNC"), which includes designated Foreign Terror Organizations ("FTOs"), including, but not limited to, the Islamic Resistance Movement a/k/a Harakat al-Muqaawama al-Islamiya ("Hamas"), which actively targets, sponsors, encourages and facilitates terrorist attacks on United States citizens. In addition, the Complaint details how USCPR accepted tax-deductible contributions from US taxpayers which were provided directly to the BNC consisting of Hamas and other FTOs and used to support acts of international terrorism and   provide financial benefits, services and material support to: (a) terrorists who killed or injured civilians and/or damaged property or attempted to do so; and (b) FTOs to facilitate, encourage and/or provide material support for acts of international terrorism.  USCPR aided, abetted and conspired to support these acts of international terrorism, resulting in the destruction of property of and/or causing injury to each of the named Plaintiffs.

In addition, USCPR is liable for the pendant common law claims of conspiring to commit trespass, public nuisance, and tortious interference with the business activities of certain of the Individual Plaintiffs and/or of Plaintiff KKL-JNF. USCPR caused damage to Plaintiffs' property and to the general public in Israel by providing support to, encouragement of and engaging in a

planned campaign and conspiracy to support terrorist attacks designed to cause damage to the persons, property, public health, safety and peace of individuals residing in the Gaza region in the State of Israel.

### STATEMENT OF FACTS

The acts of international terrorism which injured Plaintiffs' persons and property which were planned, authorized and/or perpetrated by Hamas were the foreseeable, and indeed inevitable result of USCPR's material support and sponsorship.  USCPR provided material support to the BNC by, *inter alia*, collecting money in the United States from US taxpayers for and on behalf of, and with the specific purpose and intent of supporting, the BNC.  Compl. ¶24. The BNC is comprised of five U.S. designated FTOs: Hamas, the Popular Front for the Liberation of Palestine ("PFLP"), the Popular Front-General Command, Palestinian Islamic Jihad ("PIJ") and the Palestinian Liberation Front.  *Id.*  Each of these FTOs have been determined by the US to have committed acts of international terror.  USPCR clearly raises money in the United States on its website and states thereon that the contribution is for the BNC; and it directly transmits contributions raised in the United States to the BNC, which directly and indirectly benefits Hamas and other FTOs in violation of applicable U.S. law, 18 U.S.C. § 2339A and §2339B.  Compl. ¶¶24, 120-131.

On October 8, 1997 Hamas was designated as an FTO.  Compl. ¶62.  After the September 11, 2001 terror attacks on the United States, Hamas was further designated as a Specially Designated Global Terrorist ("SDGT").  Compl. ¶¶63-64.

Since 2018, USCPR has conspired to support, promote and encourage the Great Return March(es) ("GRM" or "GRMs"), which have been held in Hamas controlled Gaza.  Compl. ¶¶25,86.  The GRM is led, sponsored, supported and directed by Hamas. Compl. ¶¶25, 88-107. Since the start of the GRM, USCPR has been actively promoting and sponsoring the GRMs.

2

Compl. ¶¶25, 132-137.  During the GRMs, Hamas, through its operatives in Gaza, launches,

and/or permits, authorizes, supports and/or promotes the launching by other FTOs and others, of

incendiary terror balloons, kites, and rockets to attack the lands, trees, forests, recreational areas,

bicycle trails and other KKL-JNF provided public amenities of Israel and of the individuals

residing in the Gaza region of Israel, including the Plaintiffs.  Compl. ¶¶25,109-111.  USCPR

participates in supporting the GRM by fundraising for and promoting the GRMs,

notwithstanding the fact that they constitute acts of international terror. Compl. ¶¶25, 132-137.

   1.  <u>USCPR was aware of BNC's Unlawful Aims and Objectives.</u>

USCPR knew that the BNC is comprised of designated FTOs, including Hamas; and that

it was accordingly conspiring and acting in concert with Hamas and the other FTOs.  Compl.

¶¶135.  Hamas routes significant sums that it nominally collects for alleged charitable purposes

to terrorist and operational uses.  Compl. ¶57.  Defendant USCPR knew that by transferring

funds for BNC's so called "legitimate" operations, it was actively supporting unlawful channels

as well, money being fungible.  Compl. ¶¶120-143.  The only conceivable reason to collect

monies in the United States for the benefit of the BNC, as USCPR disclosed to contributors on

its website, was to transfer funds to the BNC to support its activities and thereby concealing the

transfer of funding for the illegitimate purposes of the BNC and its constituent organizations; *to

wit*, the funding of terrorism.  Compl. ¶123.  The BNC was accordingly collecting and using

these funds to finance FTOs such as Hamas and PIJ which were actively supporting terror

attacks including, but not limited to, the launching of missiles, rockets and incendiary terror

devices intended to harm and do damage to the Plaintiffs.  Comp. ¶123-125,136-137.  This

deceptive conduct was done to hide its outward involvement in these prohibited terrorist

activities and incidents.  *Id*.  Thus, USCPR sponsored, served as the fiscal sponsor for, joined,

and supported the BNC by knowing, or consciously avoiding knowing, that it was intending to successfully transfer funds to the foreign entity, the BNC, and therefore to Hamas and the terrorists it supported in Gaza. *Id.*

On its website, USCPR actively promoted its support. Compl. ¶132. It promoted the GRM and actively solicited people to donate to USCPR so it could fund the GRM. *Id.* All the while it knew that during the GRMs, Hamas terrorists were using the GRMs to initiate violent terror attacks against innocent citizens in the Gaza region, burning their houses and property and doing significant damage to the forests and public land spaces and property of KKL-JNF. Compl. ¶¶35-136.

Not only did USCPR fiscally support the FTOs that were launching, and/or permitting, authorizing, supporting and/or promoting the launching by other FTOs and others, of incendiary devices to damage the property, forests and land owned by the Individual Plaintiffs and KKL-JNF including its lands, trees, forests, ecological and environmental infrastructure, scenic trails, recreation areas and public amenities (Compl. ¶157), but it also damaged the business operations and activities of KKL-JNF. Compl. ¶¶138-142. Since 2009 and continuing until today, USCPR has promoted, participated and conspired with others to target KKL-JNF through the "Stop the JNF Campaign". Compl. ¶139. The Stop the JNF Campaign is led nationally in the United States by USCPR. Compl. ¶141. USCPR's website states that the intent and purpose of the Stop the JNF Campaign is to interfere with, and destroy the business assets and operations of KKL-JNF ("Stop the Jewish National Fund is an international campaign aimed at ending the role of the Jewish National Fund (Keren Kayemet LeIsrael/JNF-KKL"). Compl. ¶142. These activities of USCPR have been conducted with the intent, design and scheme to support the terror campaign against and to damage and destroy the Plaintiff, KKL-JNF and its lands, forests, trees, properties,

4

recreational areas, bicycle trails and other amenities maintained for the use and enjoyment of the public in Israel. *Id.*

   2.  Hamas' terror apparatus was directly responsible for Plaintiffs' injuries.

   Hamas was directly responsible for the Plaintiffs' injuries and Hamas, in turn, was supported by the BNC and its funders and supporters, including, but not limited to, USCPR. Comp. ¶¶158-159, 162-164; 170-173; 186-190.  As alleged in the Complaint, it is believed that not only did Hamas provide funding and support to the operatives who launched the kites, balloons, rockets and other incendiary devices, but also provided the logistics and materials for carrying out these terrorist acts.  Compl. ¶¶81-107.  By funding, supporting, sponsoring and serving as the "fiscal sponsor" in the United States for the BNC, the Defendant substantially assisted this terror apparatus.  Compl. ¶123.  And it was this terror apparatus that was responsible for the acts of terrorism that injured the Individual Plaintiffs and KKL-JNF, their persons, property, lands, forests, trees and public amenities.  Specifically, the Goodman Family, Rosenfeld Family and Vankin Family ("Individual Plaintiffs") have all experienced injuries as a result of the incendiary balloons, kits and rocket attacks.  Compl. ¶¶162,165, 170, 173, 186, 188, 191,193-195.  Each of the Individual Plaintiffs have suffered from and experienced extreme anxiety and emotional distress and fear.  *Id.*  In addition, the Rosenfeld's home was badly damaged by a Hamas launched rocket attack.  Compl. ¶¶173-178. In addition, the public lands, trees, forests, public amenities and ecological infrastructure that Plaintiff KKL-JNF supports and maintains have been badly damaged by the terror incendiary balloons, kites and rockets launched by Hamas from Hamas-controlled Gaza.  Compl. ¶156. The damage not only has prevented the public from enjoying, using and traversing Plaintiff KKL-JNF's properties in the Gaza region inside Israel due to the dangerous conditions caused by the terror launchings, but they have also

devastated the forests, lands and ecological infrastructure of and interfered with the business operations of Plaintiff KKL-JNF. Compl. ¶¶157-159.

3. The Acts of Terrorism that Hamas engaged in during the GRMs and at other times were well known and foreseeable.

In 1997 the United States designated Hamas as a Foreign Terrorist Organization. Compl. ¶59. This designation was publicly known and available. Compl. ¶¶63-64. During the acts complained of in the Complaint, Hamas was in control of the Gaza region. Compl. ¶¶40-48. Therefore, anything that was occurring in and launched from Gaza was known by Hamas and/or committed by and/or controlled by Hamas. Compl. ¶¶43-46. The Complaint cites numerous occasions in which Hamas and others were publishing on Facebook and other social media outlets the launching of terror attacks such as incendiary terror balloons and kites in the Gaza region. Compl. ¶¶52, 101-102, 105. Hamas also participated with other designated FTOs based in Gaza in various acts of terror in concert with the Palestinian National and Islamic Forces ("PNIF"), which also consists of the same designated FTOs which oversee and direct the activities of the GRMs and the BNC. Compl. ¶¶ 65-67.

On November 30, 2018 the United States put forward a resolution at the United Nations General Assembly condemning Hamas' actions in Gaza for repeatedly firing rockets into Israel and carrying out other violent activities such as launching incendiary balloons. Compl. ¶53. Accordingly, the terrorist activities that were going on in Gaza, sponsored and carried out by Hamas and its agents, PNIF and other FTOs operating in concert with or from the areas controlled by Hamas were well known to the Defendant and could not have been carried out without the express support, permission, consent and control of Hamas. Compl. ¶¶ 67, 107.

The BNC itself was integrally involved in the GRM. Compl. ¶112. In late November 2018, at approximately the same time as the US advanced its resolution at the United Nations,

the BNC asked its sponsors, specifically including Defendant USCPR, to support its GRM campaign, which USCPR agreed to do and became a US partner and public face for the GRMs. Compl. ¶¶114, 135.  BNC members such as Abdulrahman Abu Nahel, Haider Eid, Omar Barghouti all supported and even attended GRMs.  Compl. ¶116.  USCPR supported and worked closely with the BNC representative in North America.  Compl. ¶128.  Personal connections existed between the intertwined activities of USCPR, the US charity, and the BNC, the foreign entity, perhaps best seen through the fact that Omar Barghouti, co-founder of the BNC, and Nasser Barghouti, treasurer of USCPR, are brothers.  Compl. ¶128.  Moreover, the terrorist incendiary attacks that were being launched into Israel from Gaza by Hamas and other FTOs and causing damage and devastation to Plaintiff KKL-JNF and the Individual Plaintiffs, and others similarly situated in the Gaza region within Israel, was well publicized and well known to all including the Defendant which actually and actively supported the BNC, the FTOs and the GRMs.

Since the start of the GRM, the Defendant actively promoted and sponsored the GRM on its Facebook page, on Twitter, in emails and otherwise.  Compl. ¶¶132-134. The Defendant knew that the incendiary terror balloons and kites were and are being launched by Hamas and other FTOs during and from the GRMs, and therefore, by promoting and supporting the GRMs, the Defendant also materially supports and sponsors these conspiratorial acts of trespass, public nuisance and terror upon the people and property of Israel, including the properties and persons of the Plaintiffs and interference with the business activities of Plaintiff KKL-JNF, all to its and their damage in such amounts as shall be established at the trial before a jury to be held in the within action.

# ARGUMENT

## I.     SUMMARY OF ARGUMENT

USCPR has engaged in acts of international terrorism in violation of the ATA.  USCPR, serving as the fiscal sponsor for the BNC and publicly serving as the U.S. charity accepting monies for the BNC, was supporting, aiding and abetting and providing material support to the designated FTOs which made up the BNC, including, but not limited to, Hamas, a SDGT. USCPR aided, abetted and conspired to support the acts of international terrorism, resulting in the destruction of property of the Individual Plaintiffs, causing injury and damage to each of the Individual Plaintiffs.

In addition, USCPR is vicariously liable for the damage that the Plaintiffs incurred as a result of USCPR having conspired with the BNC and Hamas, which intentionally trespassed and intruded on the property of the Plaintiffs, interfering with both the Individual Plaintiffs and KKL-JNF's possessory interests their property.  The launching of these dangerous incendiary terrorist devices created a public nuisance and the resultant fires caused damage and devastation to the trees, forests, recreation areas, bicycle trails and public amenities owned and maintained by Plaintiff KKL-JNF and damaged the property and persons of the Individual Plaintiffs.   The intrusion of these terror devices were a risk to human health, particularly the residents of the region, including, but not limited to, the Individual Plaintiffs.

USCPR tries to hide from liability for its aiding and abetting and conspiratorial participation in these acts of international terrorism by claiming that it was merely exercising its, and those of its members, First Amendment rights.  But the First Amendment does not protect violence whether one is committing the violence itself or advocating for it to occur. Accordingly, as argued below, this Court should find that Plaintiffs have put forth allegations, when accepted in the light most favorable to the Plaintiffs, which would allow a jury to find that the Defendant is

liable for the damages suffered and sustained by the Plaintiffs, in such amounts as will be determined by a jury at the trial of the within action.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for only one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).   A motion to dismiss under Fed. R. Civ. P. 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated claim. *See Greggs v. Autism Speaks, Inc*., 987 F. Supp. 2d 51, 55 (D.D.C. 2014).

In deciding a 12(b)(6) motion, it is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint. *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 84 (D.D.C. 2014).  *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511-14, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).  The court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See Campbell v. D.C.*, 972 F. Supp. 2d 38, 44 (D.D.C. 2013).   Therefore, a complaint should not be dismissed unless the court determines that the allegations do not support relief on any legal theory.  *Boyd v. Farrin*, 958 F. Supp. 2d 232, 237 (D.D.C. 2013).   Nonetheless, the complaint must set forth sufficient information to suggest that there is some recognized legal theory upon which relief may be granted.  *Id. citing D.C. v. Air Fla., Inc*., 750 F.2d 1077, 1078 (D.C. Cir. 1984).  Here, the Plaintiffs have set forth sufficient information and alleged facts, beyond labels and conclusions, both as to cognizable legal theories and more than sufficient facts under cognizable legal theories, and in each instance, more than required sufficiently to demonstrate that the Plaintiffs are entitled to the relief sought in the Complaint.

### III.    THE COMPLAINT STATES A CLAIM FOR BOTH PRIMARY AND SECONDARY LIABILITY UNDER THE ATA

A. Primary Liability Does Not Require But For/By Reason Of Causation.

The Defendant asks the Court to ignore its liability under the material support statutes of

the ATA, and argues that primary liability cannot be found through its material support.  Def. Br.

at 9.  In essence, USCPR argues that direct liability under 18 U.S.C. § 2333(a) is not available to

find liability, because it claims that USCPR's direct actions were not the cause of Plaintiffs'

injuries.  *Id.*  The Defendant is misguided as §2333(a) does not have such a requirement.  18

U.S.C. § 2333(a) incorporates the provisions of §§2339A and 2339B, by creating primary

liability with "character of secondary liability".  *Boim v. Holy Land Found. for Relief & Dev.*,

549 F.3d 685, 691 (7th Cir. 2008)(*en banc*)(*Boim III*).  While *Boim III* may not have been clear

as to whether secondary liability could be found (because of the statutory silence on the subject

of common law secondary liability), that does not mean that there is not the existence of

secondary liability as applicable to the facts alleged in the instant action. And indeed, as

discussed below, Congress' passage of JASTA now makes it clear that secondary liability can be

found.  JASTA §4(a).  But *Boim III* also held that through a chain of statutory incorporation by

reference (in that case from §2333(a) to §2331(1) to §2339(A)) Congress enacted a form of

*primary liability*.  As Judge Posner artfully said, "there is no impropriety in discussing them (the

rubrics of "conspiracy" and "aiding and abetting") in reference to the liability of donors to

terrorism under § 2333 just because that liability is primary.  *Primary liability in the form of*

*material support to terrorism has the character of secondary liability.  Through a chain of*

*incorporations by reference, Congress has expressly imposed liability on a class of aiders and*

*abettors*."  *Id.* (emphasis added).  The *Boim III* plaintiffs rested their claims on aiding and

abetting, but Judge Posner's opinion did not differentiate between aiding and abetting and conspiracy.  *Id.*

The Defendant argues that the Plaintiffs must show that the Plaintiffs' injuries were by "reason of" or "but for" the Defendant's activities.  Def. Br. 10.  However, recent decisions have explicitly rejected USCPR's position.  *See e.g. Freeman v. HSBC Holdings PLC*, 413 F.Supp3d 67, 99 n.24 (E.D.N.Y. Sept 16, 2019) (Importantly, proximate cause does not require a plaintiff to allege that the defendant's conduct was a "but for" cause of his injuries."); *see also Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474, 507–08 (E.D.N.Y. 2012) ("'But for' cause cannot be required in the section 2333(a) context.").

For primary liability, therefore, the question is not whether the funds USCPR transferred to provide financial support as the fiscal sponsor of the BNC were necessarily used to specifically cause the acts of international terrorism alleged in the Complaint, including the launching of incendiary terror devices including burning kites, balloons and rockets into Israel, but whether it was a "substantial factor in the sequence of responsible causation" and whether the injuries the Plaintiffs sustained were a "natural consequence" therefrom.  *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) *citing Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003). Allegations that a defendant provided money to designated FTOs or other terrorist organizations, or transferred money that was given to designated FTOs or other terrorist organizations, strengthens the inference that Plaintiffs' injuries were proximately caused by a defendant's conduct under the ATA.  *Rothstein*, 708 F.3d at 92 (internal quotation mark and italics omitted).  Here, clearly they were.  As alleged, USCPR knew that it was acting as the financial fiduciary, the "fiscal sponsor" of the BNC, constituting multiple designated FTOs, one of which was Hamas, and accordingly that it was necessarily conspiring and acting in concert

with Hamas.  Compl. ¶135.  They knew that by accepting supposed charitable contributions for the explicit purpose of transferring those funds to accounts of the BNC, even if for BNC's so called "legitimate" operations, they were actively providing material support to FTOs, and that the transferred money would necessarily serve unlawful channels as well.  Compl. ¶¶120-143. The only conceivable reason to do so was to transfer funds so that it could raise funds in the name of USCPR in the US, allowing the FTO controlled BNC to use USCPR, and thereby conceal the transfer of funding for the various purposes of the BNC, including but not limited to the illegitimate funding of terrorism.  Compl. ¶123.  The BNC was using these funds to finance FTOs such as Hamas and PIJ which were actively supporting the launching of incendiary terror devices intended to harm and do damage to the Plaintiffs.  Comp. ¶¶123-125,136-137.

1. <u>USCPR's Fiscal Sponsorship Was A Substantial Factor In Causing Plaintiffs' Injuries</u>.

USCPR tries to hide behind the fact that its fiscal sponsorship, according to its argument, was not a substantial factor in causing the Plaintiffs' injuries because there were intermediaries between the funds it collected and those that were ultimately used to support Hamas and the GRM, arguing that there is no "but for" causation and wrongly asserting that they cannot be held liable.  Def. Br. 11.  But the presence of intermediaries neither shields the USCPR from its liability for its improper conduct in raising charitable funds in the US which were transmitted directly or indirectly to FTOs and clearly does not defeat the Plaintiffs' claims. *See Paroline v. United States*, 572 U.S. 434, 452, 134 S. Ct. 1710, 188 L. Ed. 2d 714 (2014) ("[I]t would be anomalous to turn away a person harmed by the combined acts of many wrongdoers simply because none of those wrongdoers alone caused the harm ...").  Allegations that a defendant provided money to terrorist organizations, or transferred money that was ultimately given to terrorist organizations, strengthens the inference that plaintiffs' injuries were proximately caused

by a defendant's conduct under the ATA. *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 46 (E.D.N.Y. 2019). After all, requiring a showing of but-for causation would eviscerate the ATA because money is fungible. *Id.* Moreover, a US non-profit organization operating under the umbrella of IRS 501(c)3 charitable or educational status, encouraging US taxpayers to donate to the USCPR for the explicit use and benefit of the FTOs which comprised the BNC, and stating in its tax receipt to the contributor to the effect that contributing to the USCPR is the same as contributing to the BNC, makes the USCPR, which intentionally decided, elected and opted to act as the fiscal sponsor for the BNC, liable for the foreseeable consequences of having raised that money. Compl. ¶¶124-125.

Here, the Individual Plaintiffs have all sufficiently alleged that USCPR's conduct was the proximate cause of their injuries. The support USCPR provided included, but was not limited to, monetary transfers directly from the Defendant to the BNC (Compl. ¶123), sponsoring the BNC representative in North America (Compl. ¶128), being the "BNC's most important strategic ally and partner in the U.S. (Compl. ¶130), promoting and sponsoring the GRMs (Compl. ¶¶132-134), and leading in the United States the "Stop the Jewish National Fund" Campaign which specifically targeted Plaintiff KKL-JNF in a public campaign designed to disrupt the business operations and activities of the Plaintiff (Compl. ¶141). The funds that USCPR raised and administered were sent to the BNC to further the goals and activities of the BNC and its members, including FTOs such as Hamas' terror activities. Compl. ¶135. They knew that by transferring funds to the BNC, whether for BNC's so called "legitimate" operations or otherwise, they were actively supporting FTOs' unlawful channels as well. Compl. ¶¶57,120-143. The only conceivable reason to do so was to transfer funds in a manner designed to conceal the transfer of funding for the illegitimate purposes of the BNC and its members; *to wit*, the active

funding of acts of international terrorism. Compl. ¶123. The BNC was using these funds to finance FTOs such as Hamas and PIJ which were actively supporting the launching of incendiary devices intended to harm and do damage to the Plaintiffs. Compl. ¶¶57,123-125,136-137. Plaintiffs further allege that Hamas, and other FTOs, once in receipt of money used its funds to support the well-documented and well-known terrorist activities in Gaza which ultimately were the cause of Plaintiffs' injuries. Compl. ¶¶162,165, 170, 173, 186, 188, 191,193-195. Therefore, Plaintiffs have demonstrated that the acts of fiscal sponsorship undertaken by USCPR in its own name and for the specific purpose of supporting the foreign entity BNC, and the FTOs that comprised it, were a substantial factor in causing their respective personal and property injuries and therefore, primary liability under the ATA has been established.

2. The Defendant Has Violated §2333 By Committing The Criminal Act Of International Terrorism.

The Defendant further argues that this Court should deny finding primary liability under the ATA, asserting the acts alleged by the Plaintiffs do not amount to an act of "international terrorism". Def. Br. 13. To satisfy the definition of international terrorism, the Defendant argues that Plaintiffs must allege a violation of criminal law, and the Defendant argues that the Plaintiffs have failed to do so. *Id.* The Defendants misunderstand the applicable law. Plaintiffs' claims for primary liability rests on the statutory incorporation by reference, via §2333(a) and §2331(1) of the criminal provisions of §2339A and §2339B. Each of these provisions expressly delineates conspiracy as alternative element of each crime. Plaintiffs have alleged violations of §§2339A and 2339B, and the Defendant's participation in the conspiracy to commit these acts of international terrorism holds it culpable.

18 U.S.C. § 2339A(a) provides, that "whoever provides material support or resources or conceals or disguises the nature, location, source or ownership of material support or resources

knowing or intending that they are to be used in preparation for, or in carrying out, a

violation….or **attempts or conspires** to such act, shall be fined under this title, imprisoned not

more than 15 years, or both, and if the death of any person results, shall be imprisoned for any

term of years for life."[1] (Emphasis Added).

 18 U.S.C. § 2339B(a)(1) provides that whoever "knowingly provides material support or

resources to a foreign terrorist organization, or **attempts or conspires** to do so, shall be fined

under this title or imprisoned not more than 15 years, or both, and if the death of any person

results, shall be imprisoned for any term of years or for life.  To violate this paragraph, a person

must have knowledge that the organization is a designated terrorist organization."  (Emphasis

Added).

 Each of these sections expressly proscribes that conspiracy is an alternative element of

the crime.  Therefore, these violations of §§2339A and 2339B satisfy the definitional

requirements of 18 U.S.C. § 2331(1)'s requirement of showing that USCPR "appear to be

intended… to intimidate or coerce a civilian population" as an act of international terrorism.

After all, as the *Boim III* Court found a donor would know, in making its donation that it would

ultimately be received by Hamas and that the donation would "augment[] Hamas's resources,

would enable Hamas to kill or wound, or try to kill or conspire to kill more people in Israel.  And

given such foreseeable consequences, such donations would 'appear to be intended…to

intimidate or coerce a civilian population'… as required by section 2331(1) in or to distinguish

terrorist acts from other violent crimes, though it is not a state-of-mind requirement; it is a matter

---

[1] Many of the predicate acts set forth in 18 U.S.C. § 2339A also expressly incorporate conspiracy into their acts.  See 18 U.S.C. § 956(a)(1)(conspiracy kill, kidnap, maim, or injure persons or damage property in a foreign country);§2332(a)(1)(conspiracy to use a weapon of mass destruction against a U.S. national);

of external appearance rather than subjective intent, which is internal to the intender." *Boim III* 549 F.3d at 693-94. Therefore, when USCPR knowingly conspired with the BNC to provide funds and support to its FTO members and to fiscally sponsor their activities including those in the Gaza region, it knew that these funds would ultimately be used, in violation of the material support statutes, to fund groups that were specifically targeting the civilian population and property located in Southern Israel.  Given such imminently foreseeable consequences, this fiscal sponsorship would inherently "appear to be intended…to intimidate coerce a civilian population" as required by § 2331(1).

USCPR is essentially suggesting to the Court that it should ignore its fiscal sponsorship of a non-US entity or organization or association made up of FTOs because that was not its subjective intent when it recruited donations and support for the BNC and the GRMs.  The argument of the USCPR essentially concedes the allegation that they raised money from U.S. taxpayers for the BNC, a foreign entity.  Whatever the external appearance which USCPR asserts to the Court of a supposedly legitimate purpose, is not the question.  The facts, as alleged in the Complaint, make it clear that the USCPR impermissibly routes donations to the BNC, a foreign entity made up of FTOs, which commit criminal acts of international terror.  Violating §§2339A and 2339B by knowingly providing material support for terrorism "appears to be intended" to intimidate, even if the Defendant was motivated by other claimed "subjective intents". On its face, the Defendant is not entitled to dismissal of the instant action. In *Holder v. Humantarian Law Project,* the Supreme Court spoke to whether legitimate activities could be used to avoid liability. "Whether foreign terrorist organizations meaningfully segregate support of their legitimate activities from support of terrorism is an empirical question." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 29, 130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010).   The Court then

16

answered that question and said it could not.  *Id.* at 30–31.  "When Congress enacted §2339B it made specific findings regarding the serious threat posed by international terrorism."  *Id.*  Congress found that "*any contribution to such an organization* [an FTO] facilitates [its criminal] conduct" and could be considered material support. *Id.* (emphasis in original) *citing* 18 U.S.C. § 2339B note.  This is true even if the material support is meant to promote peaceable, lawful conduct, as such conduct can further terrorism by FTOs in multiple ways.  The Court also considered the Executive's view in considering whether such support could be segregated.  Citing an expert report from the State Department which found, "'given the purposes, organizational structure, and clandestine nature of foreign terrorist organizations it is highly likely that any material support to these organizations will ultimately inure to the benefit of their criminal, terrorist functions – regardless of whether such support was ostensibly intended to support non-violent, non-terrorist activities'" the Court concluded that the Executive Branch also deemed that material support could not be segregated.  *Id.* at 33.

 If the Court were to question whether USCPR's activities constituted acts of providing support for "international terrorism" as defined by the ATA, this would be a disputed question of fact and therefore bound for submission to a jury.  Disputed facts are not matters that can be determined as a matter of law, but rather require consideration of multiple factors that allow a trier of fact to weigh and consider multiple factors.  *Linde,* at 330.

In a final attempt to deter the Court from focusing on the wrongdoings of USCPR, USCPR defends itself by claiming that other entities may have played a role in the attacks, ("support given to an organization that is associated with another organization which is in turn associated with an FTO", is not a criminal offense (Def Br. 15)), but this defense also backfires. Merely because other entities were involved in the chain of moving to or through other

organizations the contributions solicited by USCPR from US taxpayers for the specific purpose of supporting the activities of the BNC does not immunize USCPR for the role it played in the criminal conduct.  To do so, "would be anomalous to turn away a person harmed by the combined acts of many wrongdoers simply because none of those wrongdoers alone caused the harm. And it would be nonsensical to adopt a rule whereby individuals hurt by the combined wrongful acts of many…would have no redress, whereas the individuals hurt by the acts of one person alone would have a remedy."  *Paroline*, 572 U.S. at 452. ("[I]t would be anomalous to turn away a person harmed by the combined acts of many wrongdoers simply because none of those wrongdoers alone caused the harm ...").  USCPR's role in encouraging donations and support to terrorists was a key cog in supporting the terrorist mission of the incendiary kite, balloon and rocket launchings. USCPR and its funders are impermissibly attempting to use the guise of the Defendant's non-profit status to (i) avoid detection and provide alleged "legitimate" cover for their illegitimate terrorist support (ii) attempt to hide behind its claimed boycott advocacy efforts of the BNC in the United States and elsewhere under the guise of free protected speech in support of advocating for a boycott of Israel through the Boycott, Divestment and Sanctions campaign, when the Complaint clearly alleges that as the BNC consists of FTOs, support for the boycott equals support for terror.  Compl. ¶¶131, 135.

Therefore, the participation of others in the chain of those involved in perpetrating the international terrorist acts that harmed the Plaintiffs does not provide a defense to USCPR, whose liability for its own conduct stands on its own two feet inexcusable by any claim of lack of bad intent and therefore this Court should not dismiss Plaintiffs' Complaint on these grounds.

B.  Defendant Also Has Secondary Liability Under The ATA For The Plaintiffs' Injuries.

Secondary liability, by definition, makes a secondary actor liable for injuries proximately caused by a primary actors conduct.[2]  *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (defining causation as whether "the party whom the defendant aids…perform[s] a wrongful act that causes an "injury").  A plaintiff does not have to prove the defendant "knew of the specific attacks at issue", but rather whether a secondary actor "assisted the principal violation".  *Miller*, 372 F. Supp. 3d at 47.   "Causation focuses on the relationship between an alleged act of international terrorism and a plaintiff's injury…By contrast, aiding and abetting focuses on the relationship between the act of international terrorism and the secondary actor's alleged supportive conduct."  *Linde v. Arab Bank, PLC*, 882 F.3d 314, 330–31 (2d Cir. 2018).  In its motion, USCPR again mistakenly argues that it cannot be held secondarily liable because its activities were not acts of "international terrorism", and because USCPR did not launch the incendiary kites, balloons and rockets into Israel and was not directly engaged in the conduct of the campaign of terror.  Def. Br. 17.  Notably, the defendant did not argue that the BNC, or the FTOs which make up the BNC, did not launch the incendiary terror devices which have injured the persons and/or properties of the Individual Plaintiffs.  It is uncontested that the BNC consists of FTOs and uncontested that one or more of those FTOs committed the acts of international terrorism as alleged in the Complaint.  And it is uncontested that the Defendant supported the BNC, and knew that the BNC was comprised of FTOs or turned a blind eye, or was deliberately indifferent, thereto.   Plaintiffs have demonstrated that the Defendant's activities accordingly

---

[2] "Proximate cause" is sometimes used as a shorthand for both factual (actual) cause and legal cause, and sometimes just to mean the latter: that the tortious injury was a foreseeable consequence of the tort.  *See Burrage v. United States*, 571 U.S. 204, 210, 134 S. Ct. 881, 187 L. Ed. 2d 715 (2014) (distinguishing "actual cause" and "legal cause").

amount to acts of "international terrorism" as they were intended to intimidate and coerce the civilian population.  *See supra* §III(B).

The Defendant suggests that it did not know about the incendiary terror attacks and therefore could not be connected to the acts of international terrorism that the Plaintiffs identified.  Def. Br. 21.  Even if one were to accept the Defendant's deniability of culpability by its allegation that that they did not know that it was supporting violent acts of international terrorism (which the Plaintiffs have alleged to the contrary), that does not excuse the conduct of the Defendant as described in the Complaint.  The Court should fully reject the Defendant's request for dismissal and permit this case to proceed with discovery and trial by jury. "Even if one does not know the organization [it is supporting] engages in terrorism, liability is appropriate when one "is deliberately indifferent to whether it does or not, meaning that one knows there is a substantial probability that the organization engages in terrorism but one does not care." *Miller*, 372 F. Supp. 3d at 45 *quoting Boim*, 549 F.3d at 693.  Here, therefore, the Defendant's deliberate indifference to the terrorist organizations which made up the BNC and the attacks it was supporting does not immunize USCPR, and whether they were aware or not, or whether they chose to close their eyes to the activities and makeup of the BNC, secondary liability for its actions attaches.

    1.   USCPR Applies The Wrong Legal Standard For "General Awareness".

Under the framework for aiding and abetting set forth in *Halberstam,* there is no requirement to show that the secondary defendant was generally aware of its role in the principal tort, only that it was aware of its role in overall "tortious activity" from which the principal tort ("violence or killing") was a foreseeable risk.  *Halberstam*, 705 F.2d at 88.  There is no need for Plaintiffs to establish USCPR to be "generally aware" of its role in the "violent acts" of Hamas and the other perpetrators of the incendiary terror attacks for it to be liable for aiding and acts

that result in violence.  In *Halberstam*, Linda Hamilton, was found to have aiding and abetting

liability, even though she was "neutral" and non-violent, and not even aware of any role she had

in her boyfriend's burglaries, let alone Dr. Halberstam's murder.  *Id.*  Nevertheless, Hamilton

was still liable as an aider and abettor of the murder because violence was a foreseeable risk of

"personal property crimes at night." *Id.*  As an aider and abettor, the secondary liability actor

does not need to participate actively in or benefit from the wrongful action in order to be found

liable. *Id.* at 481.  *See also DT Boring, Inc. v. Chicago Pub. Bldg. Comm'n*, No. 15 C 11222,

2016 WL 3580756, at *13 (N.D. Ill. June 28, 2016) (predicate acts may serve as the proximate

cause of plaintiff's injuries).

  USCPR argues that its activities were not acts of "international terrorism", because it was

not generally aware that the BNC was assisting illegal activity of Hamas.  Notably, it does not

argue and accordingly concedes that the BNC consists of FTOs.  Acts of international terrorism

are not limited to the principal tortfeasor's violent activities, here Hamas and its agents, (*see e.g.*

Compl. ¶¶54-56, 102-114,118), and that is precisely what *Halberstam* did **not** require.  Rather, it

is a triable issue of fact as to whether USCPR's knowing fiscal sponsorship of the BNC, which

was not otherwise eligible to raise tax-deductible charitable funds in the United States as it did

not qualify to do so, provided material support to Hamas and other FTOs and whether the

Plaintiffs injuries were reasonably foreseeable as a natural consequence of the acts of USCPR in

raising funds in the United States for FTOs, whether in their name or the name of their cover

organization, the BNC, and for the use, benefit and support of its terrorist members.  *Weiss v.*

*Nat'l Westminster Bank PLC*, 278 F. Supp. 3d 636, 643 (E.D.N.Y. 2017).  There is a triable issue

of fact concerning USCPR's role in terror financing because terrorist violence is a foreseeable

risk of such support.  Based on the facts alleged in the Complaint, a reasonable jury, instructed in

the elements of aiding and abetting, could find that by knowingly and repeatedly transferring

funds to the BNC, USCPR could reasonably foresee, and must be held to the standard of being

responsible for knowing or having turned a blind eye or having demonstrable deliberate

indifference to the uncontroverted facts, that some of the funds it was facilitating would be used

to support Hamas's and other FTOs acts of international terrorism.

2.   Aiding And Abetting Liability Does Not Require But-For Causation By The
        Aider And Abettor.

Under aiding and abetting theory of ATA liability, Plaintiffs do not have to prove that

USCPR's own acts constitute international terrorism satisfying the definitional requirements of

§2331(1).  *Linde*, 882 F.3d at 328.  And as *Halberstam* illustrates, there is no requirement that

USCPR be generally aware of its role in "violent acts" for it to be liable for the aiding and

abetting acts that result in violence.  *Halberstam*, 705 F.2d at 488.  But-for causation is not

required.  *Id.*

USCPR cannot differentiate its conduct from the conduct described in *Halberstam*, 705

F.2d 472. USCPR wrongly argues that the allegations in Plaintiffs' Complaint that USCPR was

"offering fiscal sponsorship to the BNC or even partnering with the BNC", an uncontroverted

fact, is not enough to establish that USCPR was providing funds to a FTO.  Def. Br. 16.  It also

argues that even if it did provide this financial support, it is not enough "substantial assistance"

for this Court to find the Defendant liable.  Def. Br. 23.  But USCPR's liability does not rest on

whether the Defendant knew or did not know how the funds it was supplying to the BNC were

going to be used, even if they were for non-violent activities.  The amount of funding which

USCPR transmitted to the BNC and the FTO's which comprise the BNC is a matter to be

determined through discovery.  Hamilton's liability in *Halberstam* for aiding and abetting rested

on her awareness that from her boyfriend's non-violent activity, violence was a foreseeable risk.

So too is USCPR's aiding and abetting liability the result of a foreseeable risk associated with funding and supporting the BNC, which it knew, or turned and turned a blinds eye to was made up of FTO.  Clearly when a U.S. charity acts to accept contributions under the guise of being a fiscal sponsor for such an organization with known connections to Hamas and other FTOs the US charity accepts the foreseeable risk that those funds are being and/or will be used to support Hamas terrorist violence in the form of launchings of rockets, missiles and incendiary terror devices intended to harm, maim, kill or destroy as a result of such launchings during the USCPR-supported GRMs and at other times.

### 3.   The Assistance USCPR Provided Was "Substantial".

As noted in the Defendant's Motion, *Halberstam* identified six factors for courts to consider when questioning "how much encouragement or assistance is substantial enough: (1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance. *Linde*, 882 F.3d at 329 *citing Halberstam*, 705 F.2d at 483–84.  No one factor controls, and when there are disputed facts pertinent to these factors, the weight to assign such facts are not matters that can be determined as a matter of law. *Id.*  A defendant's responsibility for the amount of assistance increases with the blameworthiness of the tortious act or the seriousness of the foreseeable consequence.  *Halberstam*, 705 F.2d at 484 n.13.

Here, the Plaintiffs have alleged that not only was USCPR serving as the partner and face of the BNC in the United States, and doing so over an extended period of time, it was  actively promoting and supporting the GRM and the terror launchings emanating therefrom, for which it has liability. The support the terrorists received enabled and encouraged the attacks to continue.

23

The family relationship of the Barghouti brothers involvement as leadership within the BNC, with whom USCPR had a direct relationship, and with Hamas, its affiliates, and other terrorist organizations further demonstrates the Defendant's close relationship with the perpetrators. Compl. ¶¶116, 128. In addition, using the *Halberstam* factors, the underlying harm and the heinous nature of these terror attacks on innocent civilians give added weight to this Court assessing and finding substantial assistance.  USCPR cannot, and does not, claim it did not know that incendiary terror devices were being launched from the GRMs which USCPR supported. Even if USCPR did not know about the specific attacks at issue when it provided its fiscal sponsorship, it was aware of the terror attacks in the form of missiles and the launchings of incendiary devices into Israel from Gaza emanating from the GRMs and otherwise; it knew that the BNC was based in Gaza;  it knew that the BNC was made up of designated FTO's; it knew Hamas and the other FTOs were based in Gaza; and it knew that those FTOs were launching acts of international terror from Gaza into Israel.  It cannot hide its knowledge or its role; and for that knowledge which it may deny during discovery or trial, it cannot be permitted to hide from its own blind eye or deliberate indifference.  Moreover, if further details are required beyond the *prima facie* allegations contained in the Complaint, the Court should permit the Plaintiffs to engage in meaningful discovery to further develop the facts which demonstrate the substantial assistance the Defendant provided such that a reasonable jury, sitting as fact-finder, could weigh and determine USCPR's secondary liability for participation in these terrorist attacks.

## IV.   THE PLAINTIFFS HAVE SET FORTH JUSTICIABLE AND COMPENSABLE PENDANT STATE LAW CLAIMS[3]

### A.   The First Amendment Is Not A Defense To Committing Torts.

---

[3] The Court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear and determine the liability of the Defendant for each of the common law causes of action alleged in the Complaint.

It is fundamental principle that the First Amendment does not protect violence. *N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 916, 102 S. Ct. 3409, 3427, 73 L. Ed. 2d 1215 (1982). "Certainly violence has no sanctuary in the First Amendment, and the use of weapons, gunpowder, and gasoline may not constitutionally masquerade under the guise of 'advocacy.' " *Samuels v. Mackell*, 401 U.S. 66, 75, 91 S. Ct. 764, 769, 27 L. Ed. 2d 688 (1971) (Douglas, J., concurring). This is true whether one is committing the violence itself or advocating for it to occur. *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992) (threats of violence are outside the First Amendment); See also *Virginia v. Black*, 538 U.S. 343, 359–59, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003). Here, there is no question that terrorist acts of violence occurred, and as a result the Plaintiffs suffered damages. Compl. ¶¶162, 165, 170, 173, 186, 188, 191, 193-195. Moreover, there is no federal law (or state law) that restricts a court from imposing tort liability for business losses that are caused by violence and by threats of violence. *N. A. A. C. P.*, 458 U.S. at 916.

The Defendant argues that the Court cannot impose liability if their association with the BNC, PNIF and Hamas is only nonviolent and therefore constitutes protected activity. Def. Br.37. In doing so, the Defendant ignores the undisputed facts that the BNC and PNIF are each made up of designated FTOs and that Hamas, itself, is a SDGT. Moreover, the Defendant attempts to couch its participation in the violence as being limited to their promotion of the "Stop the JNF" Campaign, for which the Defendant serves as the US partner and public face. *Id.* The Defendant's participation in the conspiracy with the foreign entities BNC and Hamas is actually much more sinister. And, as alleged in the Complaint, the Defendant's conduct was intended to "'accomplish [the aims of the organization] by resorting to violence.'" *Scales v. United States*,

367 U.S. 203, 229, 81 S. Ct. 1469, 1486, 6 L. Ed. 2d 782 (1961) (internal citations omitted); Compl. ¶135.

Here, the Plaintiffs have set forth *prima facie* allegations of direct conspiratorial conduct of the Defendant with the BNC and Hamas.  This is not a matter of simply asking this Court to impose liability based on guilt by association.  This is a matter of the Defendant actively raising funds in the US for an entity consisting of designated FTOs and participating in, serving as the US partner and face of and supporting activities, such as the Stop the JNF Campaign and the GRMs, from which the terrorist launchings took place.  See e.g. *Healy v. James*, 408 U.S. 169, 92 S. Ct. 2338, 33 L. Ed. 2d 266 (1972) (holding that a student group could not be denied recognition at a state-supported college merely because of its affiliation with a national organization associated with disruptive and violent campus activity).  Plaintiffs' Complaint alleges in a very straightforward manner that USCPR knowingly affiliated itself with the BNC and Hamas, all of which possess unlawful aims and goals; and that the Defendant should be tried based upon the litany of facts and acts commingled with its specific intent to serve as the U.S. partner and face of, to raise money in the US for the BNC and to further the illegal aims of the BNC and its cohorts, PNIF, Hamas, PIJ and other designated FTOs.  Compl. ¶135.

> B. Defendant Is Vicariously Liable For The Underlying Torts Committed By Its Co-Conspirators.

Moreover, as an aider and abettor, the Defendant is vicariously liable for all of the underlying torts committed, including (i) conspiracy to commit trespass, (ii) conspiracy to commit a public nuisance and (iii) conspiracy to tortiously interfere specifically with the business operations and lawful activities of Plaintiff KKL-JNF.  In the District of Columbia, aiders and abettors are liable for underlying torts when certain criteria are met.  *Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 29–30 (D.D.C. 2017) *citing Chen v. Bell-Smith*, 768 F. Supp. 2d

121, 140–141 (D.D.C. 2011).  "These actors are liable when: (1) they assist 'the primary violator in performing a wrongful act that cause an injury', (2) they are 'generally aware of [their] role as part of an overall illegal or tortious activity at the time [they] provide the assistance', and (3) they 'knowingly and substantially assist[] in the principal violation'. *Id.*

Here, as described above, because USCPR provided assistance to its co-conspirators in performing the acts that caused and resulted in the Plaintiffs' suffering of injuries, being the specific accts of launching incendiary terror balloons, kites and rockets into Israel for the explicit purpose of setting fire to the trees, forests and lands of Plaintiff KKL-JNF and causing the Plaintiffs and general population of the southern region of Israel to suffer damage.  It is uncontroverted that the USCPR knew or turned a blinds eye that the BNC consisted of designated FTOs.  Moreover, that by providing the funding and material support to the BNC which was supporting Hamas to carry out these terrorist attacks, as well as promoting and participating in GRMs, USCPR was knowingly and substantially assisting in and conspiring to commit the torts as alleged in the Complaint.

### 1.  Defendant Has Committed The Tort Of Conspiracy to Trespass.

Under applicable DC law, the tort of trespass is committed when one intentionally intrudes on a person or thing that disrupts the owner's possession of their property.  *Garay v. Liriano*, 943 F. Supp. 2d 1, 25 (D.D.C. 2013).  Trespass will occur when there is "(i) an unauthorized entry (ii) onto the plaintiff's property (iii) that interferes with the plaintiff's possessory interest."  *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 344 (D.D.C. 2011).  The Defendant argues that the Plaintiffs must plead facts that the Defendant intended to intrude on Plaintiffs' property.  Def. Br. 33.  But the District of Columbia does not require that for the tort of trespass there must be a specific intent to do so, as the Defendant wrongly suggests.  Plaintiffs do not need to allege a specific intent to invade the

property, but only that the trespasser must be conscious that the act will cause entry onto someone else's property.  *Nat'l Tel. Co-op. Ass'n v. Exxon Corp.*, 38 F. Supp. 2d 1, 12 (D.D.C. 1998). It is axiomatic that the act of launching missiles, rockets, incendiary balloons or kites from Gaza into Israel will cause entry onto someone else's property. Moreover, to the extent that this Court were to determine that specific intent is required, it is premature at the motion to dismiss stage to determine if the Plaintiffs have pled facts with specific intent required as it involves disputed questions of material fact.  *See e.g. Estate of Klieman v. Palestinian Auth.*, 424 F. Supp. 2d 153, 167 (D.D.C. 2006) (declining to resolve question of intent at the motion to dismiss stage because it involved "disputed questions of material fact"). Here the Plaintiffs have pled that the Defendant, by acting in concert with and through its co-conspirators, had the intent to invade and damage the property of Plaintiff KKL-JNF and the Individual Plaintiffs.  Compl. ¶¶54, 136, 143, 247.   These allegations, when accepted by the Court in the light most favorable to the Plaintiffs, establish that the intent of the Defendant was pled as a *prima facie* allegation. However, if the Court were to find that the Defendant's intent was insufficiently stated in the Complaint, then the Court should permit additional discovery to be conducted to examine and/or the filing of an Amended Complaint that would further allege whether the Defendant knew that its participation with the BNC and support of the GRM would in fact cause an unlawful entry onto the Plaintiffs' property, as this is a disputed material fact,  regarding whether the Defendant had the specific intent to trespass.

Plaintiffs maintain that they have pled the threshold requirements for alleging the tort of trespass.  They have shown that the offending terror incendiary flaming kites, balloons and rockets were unauthorized when they rained down on and destroyed the Plaintiffs' homes, trees, forests, recreation areas, bicycle trails and ecological infrastructure.  Compl. ¶¶157, 162, 170,

171, 173, 186. Moreover, once the incendiary terror devices entered the Plaintiffs' property their possessory interests were affected.  Even a mere momentary invasion onto plaintiff's property can have a bearing on plaintiffs' possessory interest and establish on its face this required element of a trespass claim under applicable DC law.  Restatement (Second) of Torts § 158 (1965) cmt h. (1965); *See also Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 120 (D.D.C. 2018).  Therefore, all of the material elements of trespass have been sufficiently pled and the Court should find that the Plaintiffs have adequately alleged the elements of a cognizable trespass claim.

2. <u>Defendant Has Committed The Tort Of Conspiracy To Create Public Nuisance.</u>

In addition to the tort of trespass, the Plaintiffs have also sufficiently pled facts to hold the Defendant liable for conspiring to commit the tort of public nuisance.  §821B of the Restatement (Torts) defines public nuisance as follows:

(1) A public nuisance is an unreasonable interference with a right common to the general public.

(2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:

(a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or

(b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or

(c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

In keeping with the Restatement, the District of Columbia also defines a public nuisance as "an unreasonable interference with a right common to the general public."  *National Telephone Co-op. Ass'n*, 38 F. Supp. 2d at 13 *quoting B&W Mgmt, Inc. v. Tasea Inv. Co.,*

451A.2d 879, 881 (D.C.1982).    A plaintiff bringing such an action must, at a minimum, identify

a violation of some common public right, such as, "damage to property, damage to human

health.  *Id.  See also Tucci v. D.C.*, 956 A.2d 684, 696 n.11 (D.C. 2008) (noting some examples

of public nuisance including storing explosives in public, maintaining a pond where malarial

mosquitos are breeding).

Here, the Plaintiffs have alleged that rights common to the general public have been

harmed.  These circumstances demonstrate that the Defendant, with its co-conspirators, have

significantly interfered with the public health, the public safety, the public peace, the public

comfort and/or the public convenience by deliberately setting fires to the lands, forests, treas and

areas under the control of, or frequented by, the Plaintiffs and that such fires were launched for

the specific purpose of intending to cause injury.  The fires had the sole or primary intent of

causing harm to persons and property.  *Mullendore v. Sohio Petroleum Co.*, 438 F.2d 1099, 1102

(10th Cir. 1971). Specifically, the Complaint states that since 2018 "the terror incendiary

balloons and kites launched from HAMAS controlled Gaza…result[ed] in damage to the…lands,

trees, forests, ecological and environmental infrastructure" (Compl. ¶157) and that "[t]he rockets,

incendiary terror balloons and kites…have interfered with the public's health, safety and peace"

(Compl. ¶159).  The Complaint also alleges that the "arson fires that are a result of this terrorist

activity have cause[d] significant large damage including loss of infrastructure and ecosystems.

They have posed significant health and safety dangers to the Plaintiffs and members of the public

at large, because of the inhalation of smoke."  Compl. ¶254.  By participating in the conspiracy

to create such a public nuisance, the Defendant is liable for all damages that resulted therefrom.

The fires and damage to the public and private lands caused by the burning terrorist

incendiary launchings are the very definition of a public nuisance under applicable DC law and

accordingly this Court should deny Defendant's Motion to Dismiss Plaintiff's public nuisance count.

### 3.   Defendant Has Committed The Tort Of Conspiracy To Tortiously Interfere With The Business Of Plaintiff, KKL-JNF.

The Plaintiffs have also plead sufficient facts to hold USCPR directly or vicariously liable for tortiously interfering with the business relations of Plaintiff KKL-JNF.  In order to hold a defendant liable a must plaintiff plead and make a strong showing of the Defendant's "intent to disrupt ongoing business relationship[s]," *Bell v. Ivory*, 966 F. Supp. 23, 31 (D.D.C. 1997).  There must allegations of "affirmative, intentional acts of interference," *Nanko Shipping, USA v. Alcoa, Inc.*, 107 F. Supp. 3d 174, 183 (D.D.C. 2015) *citing Benedict v. Allen,* No. 00–1023(CKK), 2001 U.S. Dist. LEXIS 26293, at * 21–23 (D.D.C. June 13, 2001).  In *Nanko*, the Court held that the plaintiff had not sufficiently plead a cause of action for conspiracy to interfere in the business relations of the plaintiff, because the action complained of was that the defendant, Alcoa, refused to provide Nanko with the shipping contract controls and awards as per certain shipping conventions. *Id.*  The Court held that allegations of inaction do not satisfy the requirement that a plaintiff plead affirmative, intentional acts of interference.  Conversely, here, Plaintiff KKL-JNF has directly pled that the Defendant actively set out to affirmatively interfere with the business operations of KKL-JNF and stop it from doing business in the United States, in Israel and elsewhere.  Compl. ¶¶139-142.  The Complaint meticulously sets out that the Defendant served as the US partner-sponsor and participated in the "Stop the JNF" campaign with the intent, as the very "campaign" is named, to stop or disrupt the business activities of Plaintiff KKL-JNF.  *Id.*  It is uncontroverted that Defendant USCPR hosted on its website, and otherwise held itself out to be the US partner, sponsor, promoter and supporter of the "Stop the JNF Campaign."  In addition, as set forth in the other allegations in the Complaint relating to the

Defendant's fiscal sponsorship of the BNC and support, participation in and promotion of the GRM, from which there occurred the launching of the incendiary terror devices, which caused damage to the KKL-JNF land and business operations and interest, clearly interfered with the business activities of Plaintiff KKL-JNF. More need not be said at this stage of the proceedings. The Plaintiffs have met the standard of setting forth allegations which, when taken on their face, demonstrate that the USCPR has tortiously interfered in and with the business operations of KKL-JNF for which USCPR can be held directly and/or vicariously liable for the damages resulting therefrom for such conduct and in such amounts as a jury shall determine at the trial of the within action.

## CONCLUSION

WHEREFORE, for the reasons set forth above, this Court should find that Plaintiffs' Complaint sets forth on its face facts which, when proven at trial, demonstrate that the Defendant, USCPR, (i) engaged in acts of international terrorism in violation of the ATA; that USCPR, (ii) in publicly serving as the US charity accepting monies for and as the "fiscal sponsor" for the BNC, was supporting, aiding and abetting and providing material support to the designated foreign terror organizations which made up the BNC,  including but not limited to Hamas, a SDGT; and that USCPR (iii) aided, abetted and conspired to support the acts of international terrorism as alleged in the Complaint, resulting in the destruction of property and/or causing injury to each of the Individual Plaintiffs, for which each of the named Plaintiffs are entitled to recover in such amounts as shall be proven before a jury empaneled to hear the allegations of the within action.

In addition, the Court should find that, when proven at trial, the facts as alleged show that USCPR should stand trial for a jury to determine its liability for the pendent common law claims of (a) conspiring to commit trespass, (b) conspiring to commit public nuisance, and (c) conspiring

to commit tortious interference with the business activities of Plaintiff KKL-JNF, all as alleged in the Complaint. USCPR caused damage to Plaintiffs' property, including the devastation caused by the incendiary terror devices launched from Gaza into Israel and destroying trees, forests, recreation areas, bicycle trails and public amenities and causing damage to the general public in Israel, and causing damage and injury to the Individual Plaintiffs and KKL-JNF, by engaging in a planned campaign, scheme, design and conspiracy to support and to aid and abet the committing of acts of international terror designed to cause damage to the people, property, public health, safety and peace of individuals residing in the Gaza region in the State of Israel.

Dated:  May 19, 2020                    Respectfully Submitted,

                                         HEIDEMAN NUDELMAN & KALIK P.C.
                                         1146 19th Street, 5th Floor
                                         Washington, DC  20036
                                         Telephone:  202-463-1818
                                         Telefax:  202-463-2999

                                         By:___*/s/ Richard D. Heideman*_____
                                             */s/ Tracy Reichman Kalik*_____
                                             Richard D. Heideman (No. 377462)
                                             Noel J. Nudelman (No. 449969)
                                             Tracy Reichman Kalik (No. 462055)