IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Keren Kayemeth LeIsrael-Jewish National Fund, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Education for a Just Peace in the Middle East d/b/a US Campaign for Palestinian Rights <br><br> Defendant. | Civil Action No. 19-cv-3425-RJL |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...............................................................................................................1

STATEMENT OF FACTS ...................................................................................................2

ARGUMENT .......................................................................................................................5

   I.   PLEADING STANDARD ON A RULE 12(B)(6) MOTION TO DISMISS................5

   II.  PLAINTIFFS' ANTI-TERRORISM ACT CLAIMS FAIL ...........................................7

      A.  Plaintiffs' Direct Liability Arguments Fail...............................................................7

         1.  Plaintiffs have not plausibly alleged that they were injured "by reason of" the US Campaign's actions...............................................................7

         2.  Plaintiffs have not plausibly alleged that the US Campaign committed "an act of international terrorism."...............................................................9

      B.  The Facts Alleged in the Complaint Do Not Support Plaintiffs' Aiding and Abetting Claim.......................................................................................................13

         1.  Plaintiffs mischaracterize their allegations in an attempt to meet *Halberstam*'s "substantial assistance" prong........................................14

         2.  The Complaint does not allege facts to support a finding of "general awareness."...................................................................................14

   III. PLAINTIFFS' STATE LAW CLAIMS FAIL ...........................................................17

      A.  Plaintiffs Rely on Mischaracterizations of Their Allegations Related to the Tort Conspiracy Claims, Which Are Based Entirely on First Amendment Protected Activity .................................................................................................17

      B.  Plaintiffs Fail to Plausibly Allege That the US Campaign Is Liable for Trespass...............................................................................................................20

      C.  Plaintiffs Fail to Plausibly Allege That the US Campaign Is Liable for Public Nuisance...............................................................................................................23

      D.  Plaintiffs Fail to Plausibly Allege That the US Campaign Is Liable for Tortious Interference.........................................................................................24

CONCLUSION..................................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta Orellana v. CropLife Int'l*,
  711 F. Supp. 2d 81 (D.D.C. 2010) ...................................................................17, 21

*Arpaio v. Cottle*,
  404 F. Supp. 3d 80 (D.D.C. 2019) ...........................................................................6

*\*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................1, 5, 6, 15, 21, 22

*Bell v. Ivory*,
  966 F. Supp. 23 (D.D.C. 1997) ...............................................................................24

*\*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................5, 6, 21, 22

*Beins, Axelrod, PC v. Analytics, LLC*,
  No. 19-3794 (JEB), 2020 WL 1952799 (D.D.C. Apr. 23, 2020) ...........................19

*Boim v. Holy Land Found. for Relief & Dev.*,
  549 F.3d 685 (7th Cir. 2008) (en banc) ..............................................................9, 11

*Briscoe v. Costco Wholesale Corp.*,
  61 F. Supp. 3d 78 (D.D.C. 2014) .............................................................................6

*Busby v. Capital One, N.A.*,
  772 F. Supp. 2d 268 (D.D.C. 2011) ........................................................................19

*Davis v. Dist. of Columbia*,
  158 F.3d 1342 (D.C. Cir. 1998) ...............................................................................7

*DT Boring, Inc. v. Chicago Pub. Bldg. Comm'n*,
  No. 15 C 11222, 2016 WL 3580756 (N.D. Ill. June 28, 2016) .............................16

*E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961).................................................................................................18

*Estate of Klieman v. Palestinian Auth.*,
  424 F. Supp. 2d 153 (D.D.C. 2006).........................................................................22

*Fields v. Twitter, Inc.*,
  881 F.3d 739 (9th Cir. 2018) ....................................................................................8

*Firestone v. Firestone*,
  76 F.3d 1205 (D.C. Cir. 1996) ..................................................................................7

*Halberstam v. Welch,
   705 F.2d 472 (D.C. Cir. 1983) ...................................................................13, 14, 15, 16, 17

Holder v. Humanitarian Law Project,
   561 U.S. 1 (2010) ..........................................................................................................12

Kemper v. Deutsche Bank AG,
   911 F.3d 383 (7th Cir. 2018) ...................................................................................8, 9, 11

Linde v. Arab Bank, PLC,
   882 F.3d 314 (2d Cir. 2018)............................................................................................13

Mattiaccio v. DHA Grp., Inc.,
   20 F. Supp. 3d 220 (D.D.C. 2014) .................................................................................19

Miller v. Arab Bank, PLC,
   372 F. Supp. 3d 33 (E.D.N.Y. 2019) ........................................................................16, 17

Mullendore v. Sohio Petroleum Co.,
   438 F.2d 1099 (10th Cir. 1971) ......................................................................................23

*NAACP v. Claiborne Hardware Co.,
   458 U.S. 886 (1982)........................................................................................18, 20, 25

Nanko Shipping, USA v. Alcoa, Inc.,
   107 F. Supp. 3d 174 (D.D.C. 2015) ..............................................................................24

Nat'l Council of Resistance of Iran v. Dep't of State,
   373 F.3d 152 (D.C. Cir. 2004) ......................................................................................12

Nat'l Tel. Coop. Ass'n v. Exxon Corp.,
   38 F. Supp. 2d 1 (D.D.C. 1998) ................................................................................21, 23

Ofisi v. BNP Paribas, S.A.,
   278 F. Supp. 3d 84 (D.D.C. 2017) .................................................................................10

Org. for a Better Austin v. Keefe,
   402 U.S. 415 (1971)........................................................................................................18

Owens v. BNP Paribas, S.A.,
   235 F. Supp. 3d 85 (D.D.C. 2017) .................................................................................10

*Owens v. BNP Paribas, S.A.,
   897 F.3d 266 (D.C. Cir. 2018)...................................................................................7, 8, 9

Owens v. Republic of Sudan,
   864 F.3d 751 (D.C. Cir. 2017) .......................................................................................10

*Papasan v. Allain*,
    478 U.S. 265 (1986) ..........................................................................................5

*Paroline v. United States*,
    572 U.S. 434 (2014) ........................................................................................11

*Patton Boggs, LLP v. Chevron Corp.*,
    791 F. Supp. 2d 13 (D.D.C. 2011) ..................................................................24

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) ................................................................................8

*Scales v. United States*,
    367 U.S. 203 (1961) ........................................................................................20

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ..........................................................................................6

*Trudeau v. Fed. Trade Comm'n*,
    456 F.3d 178 (D.C. Cir. 2006) ..........................................................................5

*Tucci v. Dist. of Columbia*,
    956 A.2d 684 (D.C. 2008) ...............................................................................23

*Weiss v. Nat'l Westminster Bank PLC*,
    278 F. Supp. 3d 636 (E.D.N.Y. 2017) ........................................................12, 13

*White v. Wash. Intern Student Hous.*,
    No. 18-2021 (CKK), 2019 WL 3413412 (D.D.C. July 29, 2019) .........................19

## Statutes

18 U.S.C. § 2331 .......................................................................................................10, 11

18 U.S.C. § 2333 ................................................................................7, 9, 10, 13, 17

18 U.S.C. § 2339A .........................................................................................................10

18 U.S.C. § 2339B .....................................................................................................11, 12

## Other Authorities

Federal Rule of Civil Procedure 8 .....................................................................................1, 6

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................5

RESTATEMENT (SECOND) OF TORTS § 158 (1965) ........................................................21

## INTRODUCTION

In the Motion to Dismiss for failure to state a claim, Defendant US Campaign for Palestinian Rights ("US Campaign") argued that the Complaint alleged only a handful of actual facts, surrounded by conclusory allegations and irrelevant background information, in a futile attempt to link Plaintiffs' alleged injuries to any acts by the US Campaign.

Plaintiffs' Opposition to the Motion to Dismiss ("Opp'n") only compounds their pleading errors by asserting a multitude of "facts" that are totally unsupported by any allegations—conclusory or not—in the Complaint. Many of these are stated for the first time in the Opposition, without citation to the Complaint; where Complaint paragraphs are cited, they often do not support the assertions. These unsupported assertions must be ignored in evaluating the US Campaign's Motion to Dismiss ("Mot."), along with the many conclusory statements in the Complaint.

Plaintiffs' legal arguments are similarly lacking. They ignore or distort the governing statutes and binding precedent interpreting those statutes. They ignore almost all of the US Campaign's legal arguments: the Opposition cites only 5 of the 56 cases cited in the Motion to Dismiss. Plaintiffs also brazenly ignore the standard of review at this procedural stage of the case, when the well-pleaded, non-conclusory factual allegations of the Complaint must be taken as true only for the purposes of the Motion, but are not "conceded" or "undisputed." *See* Opp'n at 16, 21, 25. Plaintiffs' repeated assertion that they should be allowed to seek support for their claims through discovery, Opp'n at 20, 24, 28, disregards the law: a plaintiff has no right to discovery to cure the deficiencies of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery."). Plaintiffs cannot cure their Complaint's deficiencies by making new factual assertions in their brief or by misstating the law governing their claims. The Motion to Dismiss should be granted with prejudice.

## STATEMENT OF FACTS

For this Motion to Dismiss for failure to state a claim, Plaintiffs have the benefit of an assumption, for this Motion alone, that the well-pleaded allegations of their Complaint are true. But Plaintiffs are limited to those allegations. The multiple new "allegations" included in their Opposition are not properly before the Court, including both those asserted without citation and those with citations to paragraphs of the Complaint that do not support the assertions.

In sum, the Complaint makes the following well-pleaded factual allegations concerning the US Campaign: the US Campaign has served for an undisclosed amount of time as fiscal sponsor for the Boycott National Committee ("BNC"), "collecting money in the United States for and on behalf of the BNC," Compl. ¶¶ 24, 123-126, and working "closely with the BNC representative in North America," Compl. ¶ 128; the US Campaign made statements expressing support for the Great Return March ("GRM") including by condemning Israel's use of brutal force against GRM protestors asserting their rights, Compl. ¶¶ 25, 132-142, *see also* Compl. ¶¶ 244, 257 (summarizing the US Campaign's alleged support); and, as part of its advocacy for Palestinian rights, the US Campaign participated in the Stop the JNF Campaign, Compl. ¶¶ 138-42.

The Complaint also alleges that the BNC "leads the global BDS [boycott, divestment and sanctions] movement for Palestinian rights," Compl. ¶ 124; that the call for BDS was supported by 170 groups representing Palestinians from multiple sectors, Compl. ¶ 73; that one of the BNC's members is the Palestinian National and Islamic Forces ("PNIF"), Compl. ¶¶ 77, 78; and that the PNIF itself is a coalition of "all the political national and Islamic factions," five of which are designated Foreign Terrorist Organizations (FTOs), including Hamas. Compl. ¶¶ 78, 66.

As previously discussed, the Complaint also contains a long list of suppositions, presented as facts, about the relationship between the US Campaign, the BNC, and the BNC's members. *See*

Mot. at 3-5. In Plaintiffs' Opposition, however, these suppositions have morphed even further, now claiming that "the Complaint clearly alleges that as the BNC consists of FTOs, support for the boycott equals support for terror." Opp'n at 18, citing Compl. ¶¶ 131, 135. Neither cited paragraph supports that sweeping, revealing assertion.

Unfounded assertions abound in the Opposition. For example:

- The Complaint contains no factual allegation to support the Opposition's repeated assertions that the US Campaign provided financial support to the PNIF, much less Hamas or any other designated FTO, or provided financial support for acts of international terrorism through the BNC or through any other channel. *See, e.g.*, Opp'n at 4 (the US Campaign fiscally supported FTOs); 13 (US Campaign raised money "for the explicit use and benefit of" FTOs); 22 (it is "uncontroverted" that funds raised through the fiscal sponsorship of the BNC were used to support "acts of international terrorism" by Hamas and other FTOs). *See also* Opp'n at 12 (asserting that the BNC used funds raised by the US Campaign "to finance FTOs such as Hamas" (wrongly citing Compl. ¶¶ 123-125, 136-137 (alleging only that the US Campaign was the fiscal sponsor for the BNC in the U.S. and supports and promotes the GRM)). The Complaint does not even allege that any money donated to the BNC through the US Campaign ever left the United States, much less that it financed any other organization.

- The Complaint contains no factual allegations to support multiple conclusory assertions: that the US Campaign "knew" that funds raised for the BNC "would necessarily serve unlawful channels," Opp'n at 12 (wrongly citing Compl. ¶¶ 120-43); that the US Campaign "knowingly conspired with the BNC to provide funds and support to its FTO members and to fiscally sponsor their activities including those in the Gaza region," *id*. at 16; that its fiscal sponsorship of the BNC "was a key cog in supporting the terrorist mission," *id*. at 18 (citing Compl.

¶¶ 131, 135); or that "support for the boycott equals support for terror." *Id.*

- The claim that the "only conceivable reason" for raising funds for the BNC was to "conceal" the "illegitimate funding of terrorism," Opp'n at 12, citing Compl. ¶ 123 (BNC is a "foreign entity consisting of US designated [FTOs]"), is contradicted by the Complaint's recognition that the BNC is the "broadest coalition in Palestinian civil society," ¶ 124, and was established as the Palestinian coordinating body for the BDS campaign, ¶ 76. The Opposition wrongly asserts that the Complaint alleges facts to support the claim that the BNC's purpose was "the active funding of acts of international terrorism," Opp'n at 13-14 (Compl. ¶ 123), and that "once in receipt of money," the BNC used it "to further . . . Hamas' terror activities." Opp'n at 13-14 (wrongly citing Compl. ¶¶ 135, 162, 165, 170, 173, 186, 188, 191, 193-95).

- The Opposition states, without any support in the Complaint, that the BNC "specifically" asked US Campaign "to support its GRM campaign, which USCPR agreed to do and became a US partner and public face for the GRMs." Opp'n at 7, citing Compl. ¶¶ 114, 135.

- Contrary to Plaintiffs' assertion, the Complaint makes no factual allegations to support its conclusory assertions that the US Campaign raised money for or funded the GRM, Opp'n at 3-4, 16; *see* Compl. ¶¶ 25, 132-37.  And the Complaint at no point alleges that the BNC is based in Gaza, Opp'n at 24, or that the BNC launched incendiary devices. Opp'n at 19.

- Although asserting that Hamas and other FTOs "oversee and direct the activities of the GRMs and the BNC," Opp'n at 6 (citing Compl. ¶¶ 65-67), there is no mention in any of the cited paragraphs of either the GRM or the BNC.

Moreover, the Complaint contains no factual allegations connecting any of Plaintiffs' injuries to the US Campaign.  Nowhere do Plaintiffs allege that the US Campaign "had the intent to invade and damage" Plaintiffs' property. Opp'n at 28, citing Compl. ¶¶ 54, 136, 143, 247. The

Complaint alleges that the US Campaign *knew* that balloons and kites were launched during the GRM, not that it *intended* them to be launched much less played any role in their launching. Compl. ¶ 143(b). The Complaint makes no factual allegation that the US Campaign promoted "terror" launchings. Opp'n at 23. And Plaintiffs' allegations simply fail to support their assertion that the launchings that led to their injuries were the "foreseeable, and indeed inevitable result" of the US Campaign's actions. Opp'n at 2. Whether Plaintiffs' misstatements of their own allegations are clumsy or in bad faith, they deprive the Opposition of both factual support and credibility.

## ARGUMENT

## I.    PLEADING STANDARD ON A RULE 12(B)(6) MOTION TO DISMISS.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations omitted). Although Plaintiffs recognize that a case must be dismissed for pleading "insufficient facts under a cognizable legal theory," Opp'n at 9 (citing *Twombly,* 550 U.S. at 555), they repeatedly resort to conclusory allegations and "facts" not in the Complaint to support their argument that they have pled sufficient facts. The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts in the Complaint. *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

Perhaps recognizing the absence of the requisite factual allegations, Plaintiffs argue that they are not required to plead all the elements of a "prima facie case" to defeat a motion to dismiss. Opp'n at 9. However, the two cases they cite for this proposition address the burden-shifting

framework for certain employment discrimination claims, not pleading standards, which, as the Supreme Court noted in *Twombly*, 550 U.S. at 570, are distinct. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[t]he prima facie case" requirement "is an evidentiary standard, not a pleading requirement," at 510, and does not "apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss," at 511); *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 84-85 (D.D.C. 2014) (citing *Swierkiewicz*, 534 U.S. at 511-14, to establish standard of review for employment discrimination claim).[1] Where a state of mind is a necessary element of the claim, a pleading "which offers no more than 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action,' does not satisfy Rule 8." *Arpaio v. Cottle*, 404 F. Supp. 3d 80, 84 (D.D.C. 2019) (quoting *Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555) (dismissing claim requiring showing of actual malice where complaint merely repeated, over and over, that defendant acted with "malice" and "knew" that statements were false).

Plaintiffs err in arguing that, if their pleadings are inadequate, the Court should permit them to engage in discovery. Opp'n at 24, 28. Plaintiffs are not entitled to discovery to enable them to plead the elements of their claims. *Iqbal,* 556 U.S. at 686. In fact, in *Twombly,* the Supreme Court reversed the Second Circuit's finding that "the prospect of unearthing direct evidence of conspiracy [was] sufficient to preclude dismissal, even though the complaint does not set forth a single fact in a context that suggests an agreement." 550 U.S. at 561-62.

Despite Plaintiffs' attempts to augment their Complaint by briefing "facts" that they did not allege, such additions would not cure their deficient Complaint, so amendment would be futile.

---

[1] Although *Briscoe* states that a plaintiff need not plead "all elements of his prima facie case in the complaint," 61 F. Supp. 3d at 84, both cases it cites for this proposition address Title VII claims, as does *Briscoe*. Moreover, the *Briscoe* court itself dismissed one of the plaintiff's claims for failure to allege facts to support a "prima facie element[]" of his Title VII claim. *Id.* at 85.

*See Davis v. Dist. of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (affirming dismissal of complaint with prejudice *sua sponte* where plaintiff could not state a claim for relief even if permitted to add proposed facts); *see also Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (dismissal with prejudice appropriate where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.") (internal quotation marks omitted). Because Plaintiffs have failed to allege facts that could plausibly state a claim against the US Campaign and amendment would be futile, their Complaint should be dismissed with prejudice.

## II.     PLAINTIFFS' ANTI-TERRORISM ACT CLAIMS FAIL.

### A.  Plaintiffs' Direct Liability Arguments Fail.

Plaintiffs' direct liability federal claims rely on 18 U.S.C. § 2333(a), the Anti-Terrorism Act (ATA) section that creates a private right of action for injuries that occur "by reason of an act of international terrorism." This Circuit stated the "three essential elements" of a Section 2333(a) claim in *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 270 (D.C. Cir. 2018), a case that Plaintiffs do not even cite, much less apply, in their Opposition:

> First, a U.S. national must have suffered an injury. Second, there must have been an act of international terrorism. And third, the U.S. national's injury must have occurred "by reason of" the act of international terrorism. That is, there must be some causal connection between the act of international terrorism and the U.S. national's injury.

*Id.* (footnotes omitted). As explained in the US Campaign's Motion to Dismiss, the Complaint does not allege facts sufficient to support the second or third elements of Plaintiffs' direct liability claims, which require plausible, factual allegations that the US Campaign committed an act of international terrorism and that Plaintiffs' injuries occurred "by reason of" that act. Mot. at 9-19.

#### 1.   Plaintiffs have not plausibly alleged that they were injured "by reason of" the US Campaign's actions.

Plaintiffs' discussion of the required standard of causation begins by saying, inexplicably,

that direct liability under the ATA does not require either "but for" or "by reason of" causation. Opp'n at 10, 11-13. The reference to "but for" causation is a red herring: US Campaign's Motion to Dismiss does not propose, or even mention, a "but for" standard, but relies on the "by reason of" standard of causation, as that standard is in the statute and mandated by this Circuit. *See Owens*, 897 F.3d at 273. Plaintiffs' assertion that the "by reason of" requirement has been rejected is not supported by the cases they cite, which address only "but for" causation. Opp'n at 11.

*Owens* also made clear that the statutory "by reason of" standard "demands a showing of proximate causation."[2] 897 F.3d at 273. The opinion then detailed the allegations necessary to support a showing of proximate cause:

> To survive a motion to dismiss for failure to state a claim, Plaintiffs must therefore plausibly allege (1) that [the defendant's] acts were a substantial factor in the sequence of events that led to their injuries and (2) that those injuries must have been reasonably foreseeable or anticipated as a natural consequence of [the defendant's] conduct.

*Id.* (internal quotations and citations omitted).

Plaintiffs appear to accept that the Complaint must allege facts sufficient to show proximate cause, including the "substantial factor" and foreseeability requirements. Opp'n at 11. They claim to have met that standard, however, only through a gross mischaracterization of the facts alleged in the Complaint, replete with unfounded, scurrilous accusations. *See* Facts, *supra* pp. 2-5. Stripped of conclusory and unfounded assertions, the Opposition would be forced to confront the issue actually before this Court: that the allegation that the US Campaign served as a fiscal sponsor of

---

[2] *Accord Kemper v. Deutsche Bank AG*, 911 F.3d 383, 391-92 (7th Cir. 2018), *reh'g en banc denied* (2019); *Fields v. Twitter, Inc*., 881 F.3d 739, 744–45 (9th Cir. 2018); *Rothstein v. UBS AG*, 708 F.3d 82, 95–96 (2d Cir. 2013). This interpretation of "by reason of" draws upon long settled Supreme Court doctrine: "[T]he Supreme Court has repeatedly and explicitly held that when Congress uses the phrase 'by reason of' in a statute, it intends to require a showing of proximate cause." *Kemper*, 911 F.3d at 391 (citations omitted).

the BNC and made statements in support of the protestors at the Great Return March are insufficient to state a plausible claim that the US Campaign's acts "were a 'substantial factor'"— or any factor at all—"in the sequence of events" that led to Plaintiffs' injuries, or that those injuries were "reasonably foreseeable or anticipated as a natural consequence" of the fiscal sponsorship. *See* discussion, Mot. at 10-12. Plaintiffs have not even alleged the amount of funds raised, much less an amount that was a "substantial factor" in the events that injured Plaintiffs. Once again, Plaintiffs err in suggesting that they can rely on discovery to fill this void.

To support a more attenuated standard of liability, Plaintiffs rely on *Boim v. Holy Land Foundation for Relief & Development*, 549 F.3d 685 (7th Cir. 2008) (en banc). However, the Seventh Circuit has repudiated language in *Boim* "that might be read to suggest that something less than proximate cause might suffice to prove ATA liability." *Kemper*, 911 F.3d at 391. *Kemper* clarified that the Seventh Circuit interpretation of the ATA liability standard is consistent with that adopted by this Circuit and by the Second and Ninth Circuits "in holding that proximate cause is necessary for ATA liability." *Id.* at 392; *see* cases cited *supra* note 2.

Plaintiffs also rely on *Boim* to argue that allegations of *secondary liability*—aiding and abetting or conspiracy—are sufficient to support *direct liability* under Section 2333(a), based on the interaction of the various sections of the ATA; what *Boim* called "a chain of . . . statutory incorporations by reference." Opp'n at 10 (citing *Boim*, 549 F.3d at 690). This Circuit, however, held otherwise in *Owens*, finding that a civil claim for aiding and abetting can only be based on the explicit secondary liability provisions in 18 U.S.C. § 2333(d)(2) (addressed *infra*), and not on Section 2333(a). *Owens*, 897 F.3d at 277-78.

### 2. Plaintiffs have not plausibly alleged that the US Campaign committed "an act of international terrorism."

Plaintiffs also fail to allege facts to support an additional element of a claim under Section

2333(a): that the US Campaign's conduct constituted an "act of international terrorism." Such acts must be "a violation of the criminal laws of the United States or of any State . . . ." 18 U.S.C. § 2331(1)(A). Plaintiffs' Second Cause of Action relies on 18 U.S.C. § 2339A(a) to define the purported violation of criminal law. That section criminalizes the provision of material support or resources to carry out any one of a long list of U.S. criminal code violations. But Plaintiffs fail to identify what criminal code provision they rely on. They insist that it is sufficient to allege, in general terms, a conspiracy to commit acts of international terrorism. Opp'n at 14-15. It is not. The explicit language of the statute requires that Plaintiffs assert the commission of one of the enumerated crimes as a predicate offense.

Section 2339A(a) also requires that Plaintiffs allege facts sufficient to plausibly suggest that the US Campaign provided financial services "knowing or intending" that the services "are to be used in preparation for, or in carrying out" a terrorist attack.[3] *Ofisi*, 278 F. Supp. 3d at 97 (D.D.C. 2017) (quoting 18 U.S.C. § 2339A(a)). They do not do so. At most, the Complaint alleges that some unidentified amount of money was raised by the US Campaign for the BNC. No facts support the allegations of knowledge or intent. *Ofisi* also rejected "repeated conclusory allegations" that the defendant "conspired" with other actors and "knew or should have known" that resources "would end up with al Qaeda," holding them insufficient in the absence of "detailed factual allegations" to support the claim of knowledge. *Id.* at 100-01. Here, Plaintiffs allege no facts to support their repeated, conclusory allegations of knowledge or intent.

Plaintiffs also fail to allege activities that are either "violent acts or acts dangerous to human

---

[3]"[W]hile section 2333 itself requires at least reckless conduct, plaintiffs will also have to show varying levels of scienter depending on the underlying criminal violation alleged as constituting the requisite 'act of international terrorism.'" *Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 96 (D.D.C. 2017), *vacated in part*, 285 F. Supp. 3d 240 (D.D.C. 2018) (quoting *Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 90–91 (D.D.C. 2017), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018)).

life," or appear to be intended to "intimidate or coerce," as required by 18 U.S.C. § 2331(1)(A), (B). Serving as the BNC's fiscal sponsor or making statements in support of protestors in Gaza and critical of Israel's excessive use of force are not acts "dangerous to human life," nor does the Complaint allege facts to support a claim that the fiscal sponsorship appears to be intended to intimidate or coerce anyone. Once again, Plaintiffs rely on *Boim*. Opp'n at 15-16. But, as *Kemper* explained, *Boim* held only that "*direct donations* to a *known terrorist organization*" constituted an "act of international terrorism" under Section 2331(1) because "giving fungible dollars to a terrorist organization may be 'dangerous to human life.'" *Kemper*, 911 F.3d at 389-90 (emphasis added). *Kemper* concluded that "doing business with companies and countries that have significant legitimate operations is not necessarily" an act of international terrorism because it is neither "dangerous to human life" nor motivated "by a desire to 'intimidate or coerce.'" *Id.* at 390. Here, the Complaint alleges nothing to suggest that providing a fiscal service to the BNC, an organization with the legitimate goal of promoting a boycott, was either dangerous or appeared to be intended to be coercive or intimidating.[4]

Plaintiffs misplace reliance on *Paroline v. United States*, which recognized that where multiple parties have committed a wrongful act but it is not possible to determine which of those parties actually caused an injury, each of the wrongful actors can be held liable. 572 U.S. 434, 451-52 (2014). Here, the Complaint contains no factual allegations suggesting that the US Campaign has committed *any* wrongful act, much less one that has caused harm to Plaintiffs.

Finally, Plaintiffs' claimed violation of 18 U.S.C. § 2339B fails because they have not alleged that the BNC is a designated FTO, or that any funds raised through the US Campaign's

---

[4] Plaintiffs' argument about "subjective intent" and "legitimate purpose," Opp'n at 16, is irrelevant, given the absence of any factual allegations suggesting that the US Campaign's actions "appear[ed] to be intended" to intimidate anyone.

fiscal sponsorship actually provided "material support or resources," directly or indirectly, to a designated FTO or any organization that engages in terrorist activity. As the Supreme Court has made clear, "§ 2339B only applies to designated foreign terrorist organizations," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35 (2010), and "reaches only material support coordinated with or under the direction of a designated foreign terrorist organization." *Id.* at 31.

Plaintiffs' claims are based on an unsupported, vastly overbroad theory that any provider of any resources or support to any organization which included a "terrorist organization" as a participant (or a participant of a participant) would be actionable under the ATA. But providing support—whether fiscal or otherwise—to an organization in which a "terrorist organization" participates does not constitute "provid[ing] material support or resources" to the "terrorist organization." The ATA does not extend liability to such distant levels of removal from a terrorist organization. The theory of liability Plaintiffs propose is so broad that any organization that provides a service to any group that is connected to an FTO could be held liable for any injury inflicted by that FTO, without any showing of any connection to the service provided.[5]

Plaintiffs fail to allege any factual information to support their repeated conclusory assertion that the BNC is a "cover" for an FTO, Opp'n at 21, "controlled" by an FTO, *id.* at 12, Compl. ¶ 246, or an FTO's "operative[]" or "front organization[]," Compl. ¶ 203. The only case Plaintiffs cite for this is *Weiss v. National Westminster Bank PLC*, 278 F. Supp. 3d 636 (E.D.N.Y. 2017). Opp'n at 21. But *Weiss* relied on *National Council of Resistance of Iran v. Department of*

---

[5] For example, under this theory, any organization providing any service to UNESCO, the United Nations Educational, Scientific and Cultural Organization, could be liable for all injuries inflicted by Hamas, given the accusation that UNESCO provided support to a university that is closely connected to Hamas. *See Israel Furious at UNESCO Decision to Back Science Chair at Islamic University of Gaza*, HAARETZ (July 12, 2012), https://www.haaretz.com/israel-unesco-ties-fray-over-hamas-u-1.5265938 (asserting that the university trains Hamas engineers and bomb makers).

*State*, 373 F.3d 152, 158 (D.C. Cir. 2004)*, which held that such a claim would require showing that "one organization so dominates and controls another that the latter can no longer be considered meaningfully independent from the former." Moreover, in examining whether one organization was an "alter ego" of the other, *Weiss* considered "whether the organizations share leadership, whether they commingle finances, publications, offices, and personnel, and whether one operates as a division of the other." *Weiss,* 278 F. Supp. at 644 (internal citations omitted). Here, the most that Plaintiffs can muster are allegations that the BNC is a coalition of organizations, one of which is another coalition representing numerous groups, some of which are FTOs. Mot. at 4, 15.

### B. The Facts Alleged in the Complaint Do Not Support Plaintiffs' Aiding and Abetting Claim.

Plaintiffs' Opposition fails to address the most salient arguments as to aiding and abetting liability raised in the Motion to Dismiss,[6] and fails to cite, let alone analyze, the aiding-and-abetting cases, aside from *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), and a passing citation to *Linde v. Arab Bank, PLC,* 882 F.3d 314 (2d. Cir. 2018). Plaintiffs recognize that *Halberstam* governs their aiding and abetting claim, but they misconstrue each of *Halberstam*'s three prongs and the clear language of 18 U.S.C. § 2333(d), all of which require dismissal of Plaintiffs' aiding and abetting claim. *See* Mot. at 19-26.

---

[6] Although Plaintiffs mention "conspiracy" to commit terror attacks throughout their brief, *see e.g.*, Opp'n at 11-12 ("conspiring and acting in concert with Hamas"), they do not allege facts to support an ATA conspiracy claim in the Complaint, *see* Mot. at 26, and do not address an ATA conspiracy claim in their Opposition, confirming that they do not rely on a conspiracy theory under the ATA. *See id.* Plaintiffs also fail to address Defendant's argument that they have not alleged that their injuries arose from an act that was "committed, planned, or authorized" by a designated FTO as they allege that various groups are responsible for the launchings. *See id.* Moreover, Plaintiffs incorrectly claim that the US Campaign argues that it cannot be held secondarily liable because it did not commit an act of international terrorism. Opp'n at 19, citing Mot. at 17 (direct liability).

### 1. Plaintiffs mischaracterize their allegations in an attempt to meet *Halberstam*'s "substantial assistance" prong.

Plaintiffs egregiously misrepresent the allegations of the Complaint in an effort to conceal their inability to satisfy the *Halberstam* "substantial assistance" factors. For instance, Plaintiffs state that the US Campaign "promot[ed] . . . the terror launchings," Opp'n at 23, but the only facts connecting the US Campaign to the GRM cited in the Complaint are three tweets and an e-mail that protest the Israeli military's use of force against protestors in Gaza and that support the marchers' call to recognize refugees' right to return home. Compl. ¶¶ 132-134. Plaintiffs recast the Complaint's allegation that one figure in the US Campaign was the brother of a founder of the BNC, Compl. ¶ 129, to assert a "family relationship" linking the US Campaign, the BNC and "Hamas, its affiliates, and other terrorist organizations." Opp'n. at 24. To support this they cite to Complaint ¶¶ 116 and 128, which do not even mention Hamas or other FTOs. The Opposition also asserts, for the first time and without any factual support, that the BNC was "based in Gaza," Opp'n at 24, and that the support "enabled and encouraged" the attacks to continue. *Id.* at 23.

Plaintiffs cannot claim substantial assistance because they do not meet any of the *Halberstam* factors, starting with the fact that they haven't alleged any assistance whatsoever, let alone "knowing" substantial assistance. *See* Mot. at 23. They do not point to a single case where allegations as thin as theirs were found to satisfy the "substantial assistance" test for purposes of ATA liability. *See* Mot. at 23-26 and cases cited (all applying *Halberstam* in the ATA context).

### 2. The Complaint does not allege facts to support a finding of "general awareness."

Plaintiffs' conclusory assertions that the US Campaign knew, or "turned a blinds [sic] eye to" or demonstrated "deliberate indifference" to the "fact" that some of the funds raised through its fiscal sponsorship of the BNC would be used to support acts of international terrorism by Hamas or any other actor, are without factual or legal support. Opp'n at 22, 23.

First, as noted above, Plaintiffs fail to allege that any funds raised for the BNC were transferred to or used by Hamas or any other FTO, so the US Campaign could not have had any kind of awareness, whether actual or constructive, of any role that it—or the BNC—played in those acts. They also don't allege that the BNC itself had any role in acts of international terrorism, so, again, the US Campaign could not have had a "general awareness" that its fiscal sponsorship of the BNC played a "role" in such acts. Opp'n at 20. Conclusory assertions that the BNC funds were used to support international terrorism are not supported by factual allegations in the Complaint and should be ignored. *Iqbal*, 556 U.S. at 682. Here, the Complaint's factual allegations are that the US Campaign provided fiscal sponsorship and other support to the BNC, which is not an FTO and which is not alleged to have played any role in launching kites, balloons and rockets. There are no factual allegations supporting that the US Campaign was "generally aware" that, through its fiscal sponsorship or its statements, it assisted violent terrorist activities. Mot. at 22.

Second, *Halberstam* stated clearly that the aider and abettor must be "generally aware" that it played a "role" in the wrongful conduct by providing support to the tortfeasor. *Halberstam,* 705 F.2d at 477; *see also* Mot. at 22 and cases cited.[7] Plaintiffs are simply wrong in stating that liability "does not rest on whether the Defendant knew or did not know how the funds it was supplying to the BNC were going to be used." Opp'n at 22. Plaintiffs attempt to support this misstatement of the law through a distorted portrayal of the factual findings of *Halberstam*, stating that the court found that Linda Hamilton "was 'neutral' and non-violent, and not even aware of any role she had in her boyfriend's burglaries, let alone Dr. Halberstam's murder." Opp'n at 21. To the contrary, the D.C. Circuit cited a series of facts showing that Linda Hamilton "knew full well" the purpose

---

[7] Plaintiffs inexplicably state that *Halberstam* does not require that the US Campaign "be 'generally aware' of its role in the 'violent acts' of Hamas and the other perpetrators of the incendiary terror attacks." Opp'n at 20. To the contrary, this is *exactly* what *Halberstam* requires.

of her live-in companion's evening forays. *Halberstam,* 705 F.2d at 486. Her "knowing" assistance was bolstered by her "invaluable service to the enterprise as banker, bookkeeper, recordkeeper, and secretary." *Id.* at 487. Thus, the court found that "Hamilton had a general awareness of her role in a continuing criminal enterprise," *id.* at 488, knew that she was involved in "personal property crime at night," and knew that the killing was, therefore, a foreseeable consequence of her activity. *Id.*[8] Plaintiffs here allege no facts that are remotely comparable.

Plaintiffs' reliance on *Miller v. Arab Bank, PLC* to support a finding of secondary liability based on deliberate indifference, Opp'n at 20, misapplies the law: *Miller* addressed primary liability when it discussed the deliberate indifference standard. 372 F. Supp. 3d 33, 45 (E.D.N.Y. 2019). Moreover, the facts in *Miller* illustrate the insufficiency of Plaintiffs' allegations for an aiding and abetting claim. In *Miller*, victims of Hamas terrorism alleged detailed evidence showing the Arab Bank's knowing involvement in an "insurance scheme" designed to provide funding to individuals involved in terrorist attacks, including a U.S. government investigation concluding that the bank had notice about the scheme, and that it had cleared transfers to entities that the US government later designated as terrorist organizations, and had failed to investigate after learning these details. *Id.* at 40-47. The bank had notice of names of accounts, individuals, and specific financial transactions related to some of the attacks that injured plaintiffs, and was provided with lists for its insurance scheme that identified violent causes of death, including "Martyr Operation." The court cited these extensive allegations showing the Arab Bank's "culpable state of mind," and finding it was "generally aware of its role in violent activities," even if it did not know about

---

[8] Plaintiffs' perplexing citation to *DT Boring, Inc. v. Chicago Public Building Commission*, No. 15 C 11222, 2016 WL 3580756, at *13 (N.D. Ill. June 28, 2016), a Northern District of Illinois case involving RICO claims, does nothing to remedy their misapplication of the standard. Opp'n at 21.

*specific attacks. Id.* at 47. There is no comparison between the detailed allegations in *Miller* and the conclusory and contradictory accusations that Plaintiffs level against the US Campaign.[9]

To the extent that Plaintiffs suggest that there is no need to allege facts showing a link between the assistance allegedly provided by the US Campaign and the act of international terrorism that allegedly harmed Plaintiffs, they are wrong. *See* 18 U.S.C. § 2333(d); *see also* Mot. at 20-22 (and cases cited therein); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 110 (D.D.C. 2010) ("Simply stating that the CropLife Defendants generally provided aid to a third party, who in turn purportedly engaged in tortious activity, is not enough; rather, the plaintiffs are required to plead a link between the aid rendered and the principal violation"). Here, too, Plaintiffs have failed to address the US Campaign's arguments and cited cases. *See* Mot. at 20-22.

Finally, as explained in the US Campaign's Motion to Dismiss, even if generalized support for Hamas were sufficient to hold an aider and abettor liable for particular attacks, Plaintiffs have alleged no facts that show that *any* funding raised through the US Campaign's fiscal sponsorship of the BNC was transferred to Hamas, or even outside the U.S. Mot. at 11; Facts, *supra* pp. 2-5. The Complaint contains no factual allegations to support the claim that the BNC is a cover or front for Hamas, Opp'n at 21, Compl. ¶ 203, much less that the US Campaign knew that it was.

## III.   PLAINTIFFS' STATE LAW CLAIMS FAIL.

### A.   Plaintiffs Rely on Mischaracterizations of Their Allegations Related to the Tort Conspiracy Claims, Which Are Based Entirely on First Amendment Protected Activity.

To reiterate the US Campaign's First Amendment argument, which Plaintiffs fail to

---

[9] Subsection III(B)(2) of Plaintiffs' Opposition, confusingly labeled a discussion of "but-for causation," Opp'n at 22, does not raise any new arguments, and only continues Plaintiffs' wrongheaded analysis of the required scienter, once again denying that "general awareness" of a defendant's role in "violent acts" is required for aiding and abetting liability, and misapplying *Halberstam*. *See supra* pp. 15-16.

meaningfully address: each factual allegation about the US Campaign's conduct related to Plaintiffs' tortious conspiracy claims is First Amendment protected activity on a matter of public concern. Mot. at 26–28, 31.[10] Plaintiffs allege that the US Campaign has issued statements in support of the GRM protestors, Compl. ¶¶ 132–134; that the US Campaign has promoted and participated in the Stop the JNF Campaign, Compl. ¶ 139, which was initiated nine years before the GRM and is educational in nature, Mot. at 37; and that the US Campaign has accepted donations on behalf of the BNC (which is not an FTO) by acting as its fiscal sponsor, Compl. ¶¶ 123–126. Each of these allegations is First Amendment protected activity. Mot. at 26–28, 31. Plaintiffs do not dispute that these particular allegations are protected activity; they do not identify additional non-conclusory allegations of conduct that falls outside First Amendment protection and supports their tort claims; and they fail to distinguish their allegations from activity the Supreme Court has held is protected. *See* Mot. at 37 (citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), *Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971), *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961)).

Instead, Plaintiffs argue that the First Amendment does not "protect violence," and that "there is no federal law (or state law) that restricts a court from imposing tort liability for business losses that are caused by violence and threats of violence," Opp'n at 25. But this is beside the point: there is no nonconclusory allegation that connects the US Campaign to any act or threat of violence. *See* Mot. at 26–28, 31.[11]

---

[10] Plaintiffs do not dispute that if this Court dismisses their federal claims, it should also dismiss their state law claims with prejudice, as they depend on the same allegations. *See* Mot. at 29-30.

[11] It is also beside the point and a misunderstanding of basic constitutional law to say, as Plaintiffs do, that as a general matter the First Amendment does not protect advocating violence. Opp'n at 25. There are very narrow circumstances under which speech falls outside of the protection of the First Amendment, whether or not it is speech that advocates violence. These circumstances are set

To support the argument that the US Campaign engaged in conduct beyond the protections of the First Amendment, Plaintiffs mischaracterize their own Complaint, arguing that they have "set forth *prima facie* allegations of direct conspiratorial conduct of the Defendant with the BNC and Hamas." Opp'n at 26. However, they have not alleged any facts to support the assertion that the US Campaign ever entered into an agreement with Hamas, instead relying exclusively on conclusory allegations. "In pleading that a defendant entered into an agreement the plaintiff must set forth more than just conclusory allegations of [the] agreement to sustain a claim of conspiracy against a motion to dismiss." *Mattiaccio v. DHA Grp., Inc.*, 20 F. Supp. 3d 220, 230 (D.D.C. 2014) (internal quotation marks and citation omitted). *See also Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 278 (D.D.C. 2011) (requiring "factual allegations . . . indicating the existence of an agreement"). Plaintiffs' repeated assertions of a conspiracy, in the absence of any factual allegations concerning an agreement between the US Campaign and others to engage in violent terrorist activity, is insufficient to plead the conspiracy. Plaintiffs' conspiracy claims also fail because they have failed to plead the requisite *mens rea* for conspiracy. *Beins, Axelrod, PC v. Analytics, LLC,* No. 19-3794 (JEB), 2020 WL 1952799, at *2-4 (D.D.C. Apr. 23, 2020). *See also, White v. Wash. Intern Student Hous.*, No. 18-2021 (CKK), 2019 WL 3413412, at *2 (D.D.C. July 29, 2019) ("conclusory allegation alone is insufficient to create a plausible claim for relief as Plaintiff has alleged no facts explaining how Defendant [ ] 'knew or should have known'" that the alleged coconspirators intended to use violence).

Plaintiffs also do not identify any non-conclusory allegations to indicate "direct conspiratorial conduct" with the BNC. Opp'n at 26. They factually allege an agreement to be the

---

out in the US Campaign's Motion (Mot. at 28 n.3) and in the case law cited by Plaintiffs themselves (Opp'n at 25). None of those circumstances apply to the allegations against the US Campaign.

BNC's fiscal sponsor, which is a lawful and protected act. The BNC is not an FTO. Plaintiffs also state that "Defendant actively rais[ed] funds in the US for an entity consisting of designated FTOs," *id*., which is purposely misleading. The entity Plaintiffs reference – the BNC – is not an FTO, and the Complaint does not factually allege that the BNC "consists" of FTOs. *See* Facts, *supra* pp. 2-5. Finally, Plaintiffs argue that they have alleged that the US Campaign's "conduct was intended to 'accomplish [the aims of the organization] by resorting to violence,'" Opp'n at 25 (quoting *Scales v. United States,* 367 U.S. 203, 229 (1961), and citing Compl. ¶ 135). To support this, they only cite a convoluted and circular sentence in their Complaint that does not allege any intent by the US Campaign to accomplish the aims of any terrorist organization. *See* Mot. at 5; *Claiborne*, 458 U.S. at 920 ("Civil liability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence. For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims.").

Finally, in arguing that the US Campaign should be held liable for conspiracy to commit torts, Plaintiffs cite the standard for aiding and abetting liability – which is, needless to say, the wrong standard. *Compare* Opp'n at 26-27 (citing cases that describe the standard for aiding and abetting liability) *with* Mot. at 26-27, 31 (laying out the standard for conspiracy liability). Plaintiffs have not included a count against the US Campaign for aiding or abetting any state law tort, as those claims would fail for the same reason Plaintiffs' claims for secondary liability under the ATA fail. *See supra* Sec. II(B), pp. 13-17.

**B.  Plaintiffs Fail to Plausibly Allege That the US Campaign Is Liable for Trespass.**

Plaintiffs fail to address three of the four deficiencies in their trespass claim raised in the US Campaign's Motion to Dismiss. First, the Complaint's identification of the trespasser is vague

and untraceable to any particular party, requiring the dismissal of all trespass claims. Mot. at 32. Plaintiffs allege that incendiary kites and balloons were launched not only by Hamas, but also by the Sons of al-Zawari, unnamed terrorist organizations, and Palestinian youth. Compl. ¶¶ 52, 99, 100, 157. Nothing in the Complaint connects the US Campaign to the conduct of these various groups acting at some unspecified time. Second, the Vaknins' failure to allege any physical intrusions by rockets, kites, or balloons on their own property or the air above it requires dismissal of their trespass claim. Mot. at 32–33. Third, the Complaint fails to specify the land in which the KKL-JNF has a possessory interest or identify what land was affected, which falls short of the *Iqbal-Twombly* plausibility standard and requires dismissal of the KKL-JNF's claim. *Id.* at 34.

Fourth, the US Campaign argued that the Complaint failed to allege that it committed any act that led to an intrusion by a third party or that the intrusion was the immediate or inevitable result of any such act. *Id.* at 32–33. Plaintiffs' response confuses the liability standard for the actual trespasser with that for intrusions by a third party. Opp'n at 27–29. To be held liable for intrusions by third parties, Plaintiffs need to show that the US Campaign "*intend[ed]* the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the *immediate or inevitable consequence* of what [the defendant] willfully d[id]," *Acosta Orellana*, 711 F. Supp. 2d at 93 (citation omitted), or that "the actor intentionally cause[d] a third person to enter land," for example by commanding, requesting, or imposing through physical duress. RESTATEMENT (SECOND) OF TORTS § 158(j) (1965). But Plaintiffs have not alleged a single act by the US Campaign that suggests that intent or demonstrates that the alleged intrusions were the "immediate or inevitable" consequence of its actions. Plaintiffs simply ignore *Acosta Orellana* and the US Campaign's other authorities. *See* Mot. at 32–33. Instead, Plaintiffs cite *National Telephone Cooperative Ass'n v. Exxon Corp.*, which, as Plaintiffs note (Opp'n at 28), dealt with the intent of the trespasser itself.

38 F. Supp. 2d 1, 12 (D.D.C. 1998). In any case, the court there ultimately granted judgment as a matter of law to the defendant because plaintiffs had failed to sufficiently demonstrate intent.

Plaintiffs also misplace reliance on *Estate of Klieman v. Palestinian Authority*, 424 F. Supp. 2d 153, 167 (D.D.C. 2006), an ATA case that considered evidence of intent but did not involve the sufficiency of the pleadings.[12] The *Klieman* defendants argued that shooters who opened fire on a public bus did not intend to intimidate or coerce civilians or the government, as required by the ATA, but rather to end a belligerent occupation; they supported that argument with an article that discussed the intent of attacks against settlers. *Id*. That is, the defendants did not argue that the complaint failed to plead facts to support the alleged intent, but rather introduced evidence to refute the allegations of the complaint. The court found that intent was a disputed question of fact that could not be decided on a motion to dismiss. *Id*. Here, the US Campaign asserts that Plaintiffs failed to allege that the US Campaign intended the intrusion of land by a third party, as required to plead a conspiracy to trespass. *Klieman* is irrelevant.

The paragraphs on which Plaintiffs rely to show the US Campaign's intent are conclusory and do not plead relevant facts. Opp'n at 28, citing Compl. ¶¶ 54, 136, 143, 247. Plaintiffs allege that the US Campaign supports the GRM "knowing" it is a gathering intended to launch balloons and kites (Compl. ¶ 136); that the US Campaign engaged in a "conspiracy to damage the Plaintiffs knowing" that "balloons and kites are launched during and from GRM" (Compl. ¶¶ 143, 143(b)); that the people doing the launching intended to inflict damage (Compl. ¶¶ 54, 143, 143(a)); and that Hamas "entered Plaintiffs' Property with the intent to interfere" in their possessory interest in their property. Compl. ¶ 247. Plaintiffs' Complaint does not allege factual allegations supporting

---

[12] Given that *Klieman* was decided in 2006, the pleading would have been evaluated based on the standard of review governing before the Supreme Court decided *Twombly* 550 U.S. 544, and *Iqbal*, 556 U.S. 662.

the US Campaign's intent or an agreement to cause a trespass, so their trespass claim fails.

### C.  Plaintiffs Fail to Plausibly Allege That the US Campaign Is Liable for Public Nuisance.

The US Campaign's Motion to Dismiss the claim for public nuisance is based on three arguments, none of which is addressed in Plaintiffs' Opposition. First, as detailed above pp. 7-17, the claim fails because Plaintiffs have not provided factual allegations to support the US Campaign's liability for the conduct attributed to Hamas or other identified and unidentified persons. Second, "[a]bsent statutory authorization, only governmental authorities or other representatives of the general public have standing to attack a public nuisance in court, unless a private party can allege and prove special damage, distinct from that common to the public.'" *Tucci v. Dist. of Columbia,* 956 A.2d 684, 696 n. 11 (D.C. 2008) (internal quotation marks and citations omitted). The KKL-JNF is not a governmental authority or a representative of the general public, and Plaintiffs have not alleged that they suffered a "special damage, distinct from that common to the public." *Id.*; Mot. at 35-36. Third, Plaintiffs' allegations of sporadic rocket fire and kites and balloons are not alleged to be permanent or continuous, and therefore do not rise to the level of a public nuisance. Mot. at 35.

Plaintiffs' only response is that "damage to property, damage to human health" can constitute a public nuisance, Opp'n at 30 (citing *National Telephone Cooperative Ass'n*, 38 F. Supp. 2d at 13), and reliance on another case that makes no mention of public nuisance. Opp'n at 30 (citing *Mullendore v. Sohio Petroleum Co.*, 438 F.2d 1099, 1102 (10th Cir. 1971)). The US Campaign does not deny that balloons, kites and rockets might constitute a public nuisance. However, there are no factual allegations in the Complaint supporting the assertion that the US Campaign is liable for their launching, *see supra* pp. 7-17; that Plaintiffs have standing to sue for it; or that these launchings were continuous or permanent, rather than sporadic. Mot. at 35-36. The

public nuisance claim should therefore be dismissed.

### D.  Plaintiffs Fail to Plausibly Allege That the US Campaign Is Liable for Tortious Interference.

In identifying the elements required to state a claim for tortious interference, Plaintiff KKL-JNF cherry picks the law. It acknowledges that it must allege the US Campaign's "intent to disrupt ongoing business relationship[s]," and "affirmative, intentional acts of interference," but omits several other necessary elements that are identified in cases that it cites. Opp'n at 31 (citing *Bell v. Ivory*, 966 F. Supp. 23, 31 (D.D.C. 1997), *aff'd*, 159 F.3d 635 (D.C. Cir. 1998); *Nanko Shipping, USA v. Alcoa, Inc.*, 107 F. Supp. 3d 174, 183 (D.D.C. 2015), *rev'd*, 850 F.3d 461 (D.C. Cir. 2017)). Plaintiffs cite *Bell*, which identifies the same four elements required to state a tortious interference claim identified by Defendant: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach of [sic] termination of the relationship or expectancy; and (4) resultant damage. *Bell*, 966 F. Supp. at 31. Crucially, the court in *Bell* goes on to clarify that a "general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability. Plaintiff cannot establish liability without a strong showing of intent to disrupt ongoing business relationships." *Id.* (internal quotations omitted).

Plaintiff KKL-JNF has failed to allege anything beyond the US Campaign's "general intent" to publicize KKL-JNF's activities, and has not remedied this failure in its brief, nor could it. It does not identify any specific business relationship or expectancy that was breached or terminated; it does not allege that the US Campaign, or anyone for that matter, knew of that relationship or expectancy; and it does not allege any specific resulting pecuniary damages. *See Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 2d 13, 32 (D.D.C. 2011), *aff'd*, 683 F.3d 397 (D.C. Cir. 2012) (pleading insufficient to state a claim for tortious interference where claimant

"alleged, in conclusory fashion, that it and its relationship with [third party] had suffered irreparable injury . . . but did not explain how, or identify any resulting pecuniary harm."). KKL-JNF also fails to distinguish the Stop the JNF Campaign from the boycott campaign at issue in *Claiborne*, 458 U.S. 886.

Entirely unrelated to the Stop the JNF Campaign, KKL-JNF now also argues that the US Campaign's fiscal sponsorship of the BNC and support for the rights of Palestinian demonstrators during the GRM, "from which there occurred the launching of the incendiary terror devices, which caused damage to the KKL-JNF land and business operations and interest, clearly interfered with the business activities of Plaintiff . . . ." Opp'n at 32. Again, Plaintiffs fail to identify any relevant facts to meet the four elements in relation to the launchings.[13] Although Plaintiffs brazenly assert that "[m]ore need not be said at this stage of the proceedings," Opp'n at 32, they cannot file a convoluted Complaint that fails to plead facts to support the elements of their claims and expect to be permitted to exact costly and time-consuming discovery.

## CONCLUSION

Plaintiffs' Complaint should be dismissed with prejudice in its entirety.

Dated: June 9, 2020

Respectfully submitted,

/s/ Diala Shamas
/s/ Shayana D. Kadidal
Maria C. LaHood (admitted *pro hac vice*)
Diala Shamas (admitted *pro hac vice*)
Astha Sharma Pokharel (admitted *pro hac vice*)
Shayana D. Kadidal (D.C. Bar No. 454248)
Judith Brown Chomsky (admitted *pro hac vice*)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, New York, 10012
Tel.: (212) 614-6426
Fax: (212) 614-6426

---

[13] Plaintiffs continue to fail to identify a source for such a cause of action for "interference in business operations" in the District of Columbia or in any other jurisdiction. Compl. ¶ 270, p. 62.

dshamas@ccrjustice.org

/s/ Dawn C. Doherty
Dawn C. Doherty (D.C. Bar No. 414534)
300 Delaware Avenue, #900
Wilmington, DE  19801
(302) 658-6538
DDoherty@moodklaw.com

David P. Helwig (admitted *pro hac vice*)
707 Grant Street
Suite 2600, Gulf Tower
Pittsburgh, PA 15219

MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.

*Attorneys for Defendant US Campaign for
Palestinian Rights*