# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KEREN KAYEMETH LEISRAEL-  )
JEWISH NATIONAL FUND *et al.*,  )
                             )
   Plaintiffs,               )
                             )
   v.                        )            Civil Case No. 19-3425 (RJL)
                             )
EDUCATION FOR A JUST PEACE   )
IN THE MIDDLE EAST d/b/a US  )
CAMPAIGN FOR PALESTINIAN     )
RIGHTS                       )
                             )
   Defendant.                )

## <u>MEMORANDUM OPINION</u>

March 29, 2021 [Dkt. # 19]

Plaintiffs in this suit are an Israeli company and American citizens and their families living in Israel, who have allegedly suffered harm from acts of international terrorism in Israel. They bring this suit against Education for a Just Peace in the Middle East, d/b/a/ US Campaign for Palestinian Rights (hereinafter "defendant" or "US Campaign"), a U.S. non-profit organization. They allege that defendant engaged in acts of terrorism, or aided and abetted such acts, and is therefore liable under the Anti-Terrorism Act ("ATA") and various state laws. Defendant moves to dismiss plaintiffs' claims, arguing that plaintiffs' complaint fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mot. to Dismiss ("Defs.' Mot.") [Dkt. # 19].

While I sympathize with plaintiffs for the mental anguish, emotional pain, and other suffering they have endured, I cannot conclude that the law provides the relief plaintiffs seek in this case. Accordingly, and after due consideration of the briefing, the relevant law, the entire record, and for the reasons stated below, defendant's Motion to Dismiss is **GRANTED**.

## BACKGROUND

Hamas was designated as a Foreign Terrorist Organization ("FTO") on October 8, 1997, along with certain other relevant groups including the Palestine Liberation Front ("PLF"), Palestine Islamic Jihad ("PIJ"), and the Popular Front for the Liberation of Palestine ("PFLP"), and has maintained that designation ever since. *See* Compl. ¶¶ 29, 62. Hamas has been held responsible in U.S. courts, including this one, for terrorist attacks in which American and Israeli citizens have been killed or injured. *Id.* ¶ 39. Hamas has exercised some degree of control over Gaza since 2007. *Id.* ¶¶ 42-43. Rockets and other incendiary devices, including kites and balloons equipped with flammable materials and/or incendiary or other explosive devices, have been launched from Gaza by Hamas and other groups. *Id.* ¶¶ 49-52. According to plaintiffs, similar devices have also been launched at the Great Return March ("GRM"), an ongoing Palestinian protest in Gaza. *Id.* ¶¶ 86-88. The individual and family plaintiffs allege that they live "in constant fear" of rocket attacks and incendiary devices, and have allegedly suffered damage to property, emotional suffering, loss of the use of public spaces and roads, and other distress due to these attacks. *See generally id.*

2

Defendant is a U.S.-based 501(c)(3) non-profit organization founded in 2004. *Id.* ¶ 22. Among other things, defendant provides financial and other support to the BDS National Committee ("BNC"), and has supported or encouraged the GRM. *See* Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Pls. Opp.") at 2-3. According to plaintiffs, the BNC is comprised of Hamas and other U.S. designated FTO's, and the GRM is led and directed by Hamas. *Id.*; Compl. ¶¶ 24-25, 88-107, 120-131. Plaintiffs claim that defendant's financial and other support of the BNC and GRM render it liable, both directly and indirectly, under the ATA and several state laws for the injuries plaintiffs have suffered. Compl. ¶¶ 197-271.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Again, I must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs, but I need not "accept inferences unsupported by facts or legal conclusions cast in the form of factual allegations." *See City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009).

## ANALYSIS

Plaintiffs contend that defendant is both directly and secondarily liable under the ATA. The ATA creates a private cause of action for those harmed by international

terrorism, providing that "[a]ny national of the United States injured in his or her person . . . by reason of an act of international terrorism . . . may sue therefor . . . and shall recover threefold . . . damages." 18 U.S.C. § 2333(a). Thus, to prevail on an ATA claim, a plaintiff must show that (1) a U.S. national suffered an injury; (2) an act of international terrorism occurred; and (3) the U.S. national's injury occurred "by reason of" the act of international terrorism.

In 2016, Congress amended the ATA to permit aiding-and-abetting liability claims. *See* 18 U.S.C. § 2333(d). Aiding-and-abetting liability requires that "an act of international terrorism" was "committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. 1189), as of the date on which such act of international terrorism was committed, planned, or authorized." *Id.* Such secondary liability extends to "any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." *Id.*

## I.   *Direct Liability*

Plaintiffs allege that defendant is directly liable under the ATA for its alleged financial and other support of Hamas, through its financial and other support of the BNC, support for the GRM, and participation in the "Stop the JNF Campaign." Those claims fail, however, because plaintiffs do not plausibly allege that defendants caused their injuries.

"[T]he ATA's 'by reason of' language demands a showing of proximate causation." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018); *see also* 18 U.S.C.

§ 2333(a). "[P]roximate cause prevents liability where there is not a sufficient link between the defendant's conduct and the plaintiff's injuries." *Crosby v. Twitter, Inc.*, 921 F.3d 617, 623 (6th Cir. 2019) ("[A] butterfly in China is not the proximate cause of New York storms."). "To survive a motion to dismiss for failure to state a claim, [p]laintiffs must therefore plausibly allege (1) that [defendant's] acts were 'a "substantial factor" in the sequence of events' that led to their injuries and (2) that those injuries 'must have been "reasonably foreseeable or anticipated as a natural consequence" of' [defendant's] conduct." *Owens*, 897 F.3d at 273 (quoting *Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017)).

Plaintiffs cannot satisfy this first requirement. To establish that defendant's conduct was a "substantial factor," plaintiffs must show "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 273 n.8. In other words, defendant's alleged wrongful conduct must have "led directly" to the plaintiffs' injuries. *Id.* And, as our Circuit Court and others have recognized, because "the presence of an independent intermediary" makes a defendant "more than one step removed from a terrorist act or organization," it "create[s] a more attenuated chain of causation . . . than one in which a supporter of terrorism provides funds directly to a terrorist organization." *Id.* at 275; *see Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013).

Plaintiffs fail to allege any facts to support their contention that the US Campaign provided direct support to Hamas. Instead, any specific allegations of support involve the US Campaign's support of the BNC or other intermediate groups or causes. Compl. ¶¶ 122-123, 127-143. And, although plaintiffs allege that the BNC "consist[s] of US

5

designated Foreign Terror Organizations," Compl. ¶ 123, the Complaint itself acknowledges that the BNC is a broad coalition leading a global movement for Palestinian rights, whose activities include supporting boycotts and engaging university campuses, academic associations, and other communities to "engage in mass popular resistance for dignity and liberation." *Id.* at ¶¶ 123, 131. According to plaintiffs' allegations, the US Campaign gives financial and other support to the BNC, and BNC members have attended the GRM, at which Hamas and other terrorist organizations have planted explosive charges and launched incendiary balloons. *Id.* ¶¶ 1, 112-118. Those allegations, however, do not establish the substantial connection between the defendant and the alleged terrorist acts or organizations necessary for proximate causation. *Owens*, 897 F.3d at 276. And while plaintiffs make broad allegations that the US Campaign provided financial assistance to Hamas, *see* Compl. ¶ 205, they fail to plead factual allegations sufficient to support these claims. The more specific factual allegations involving the US Campaign's financial and other support of the BNC and other groups are simply too removed from a terrorist act or organization to state a claim under the ATA. *See Owens*, 897 F.3d at 275.

Plaintiffs' arguments to the contrary are, to say the least, not persuasive. Plaintiffs focus on the difference between a "but for" and "substantial factor" standard for causation, but under either standard, plaintiffs fall short of alleging facts to tie the US Campaign to the alleged terrorist acts that injured plaintiffs. Even accepting plaintiffs' allegations that BNC and Hamas are somehow interchangeable, the law does *not* require independence from terrorist groups. In *Owens* and *Rothstein*, the intermediaries at issue—Sudan and Iran, respectively—were *designated state sponsors of terrorism. See Owens*, 897 F.3d at

269 (acknowledging Sudan provided al Qaeda with "critical financial, military, and intelligence services."); *Rothstein*, 708 F.3d at 85, 97 (rejecting plaintiffs' causation theory despite their allegations that Iran "controlled, funded, and operated" Hezbollah).  And yet, those intermediaries' intervening role defeated causation.  So too here.

Plaintiffs' conclusory assertions that the US Campaign directly financed or supported Hamas, lacking in any specific factual basis, cannot save plaintiffs' direct-liability claims.  *See Owens*, 897 F.3d at 276 ("[T]hese are conclusory allegations that do not meet *Twombly*'s plausibility standard with respect to the need for a proximate causal relationship . . . ." (quoting *Rothstein*, 708 F.3d at 97)).

## II.   *Aiding-and-Abetting Liability*

Plaintiffs also claim that defendants aided and abetted Hamas's acts of terrorism.  Compl. ¶¶ 197-210; *see* 18 U.S.C. § 2333(d)(2).  Under the 2016 amendments to the ATA, a defendant is indirectly liable for "an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization" if the defendant "knowingly provid[ed] substantial assistance, or . . . conspire[d] with the person who committed such an act of international terrorism." § 2333(d)(2).

Plaintiffs fail to satisfy the statutory requirements for aiding-and-abetting liability.  First, plaintiffs' complaint does not allege that Hamas planned or authorized any, much less all, of the attacks at issue.  The best plaintiffs can muster is that the rockets, incendiary terror balloons, and kites that allegedly caused fear and terror to plaintiffs were launched "by HAMAS *and/or others*."  *See* Compl. ¶ 10 (emphasis added).  Plaintiffs offer no

7

concrete factual allegations that Hamas "planned" or "authorized" any specific attack, much less the specific incidents that injured plaintiffs. *See id.* That "[t]hreadbare recital[]" is not enough. *Iqbal*, 556 U.S. at 678.

Second, to the extent plaintiffs allege that the BNC has ties to and has provided general support to Hamas and other terrorist groups, *see* Compl. ¶¶ 70-80, those allegations do not establish that the BNC "planned" or "authorized" the attacks at issue, 18 U.S.C. § 2333(d)(2). General support or encouragement is not enough. *See Crosby*, 921 F.3d at 626 (concluding plaintiffs' allegations that ISIS "virtually recruited" the perpetrator were insufficient to establish that it "authorized" the attack at issue).

Moreover, as numerous courts have held, plaintiffs' "fail[ure] to allege a direct link between the defendants and the individual perpetrator" warrants dismissal of their aiding-and-abetting liability claims. *Crosby v. Twitter, Inc.*, 921 F.3d 617, 627 n.6 (6th Cir. 2019) (collecting cases and noting that courts "routinely dismiss" aiding-and-abetting ATA claims on that basis).

Even assuming defendants were sufficiently connected to Hamas, plaintiffs' allegations fail to establish that any assistance was "substantial." For the assistance to be "substantial," the ATA "requires more than the provision of material support to a designated terrorist organization." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018). Rather, "the secondary actor [must] be 'aware' that, by assisting the principal, it is itself assuming a 'role' in terrorist activities." *Id.* (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)); *accord Crosby v. Twitter, Inc.*, 303 F. Supp. 3d 564, 574 (E.D. Mich. 2018), *aff'd*, 921 F.3d 617 (6th Cir. 2019). And, in enacting JASTA, Congress noted

that the six factors identified in our Circuit Court's decision in *Halberstam v. Welch* were useful in determining "how much encouragement or assistance is substantial enough." 705 F.2d at 478; 18 U.S.C. § 2333 Statutory Note (Findings and Purpose (a)(5)). Those factors are: (1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the duration of defendant's assistance. 705 F.2d at 483-84. When applied to plaintiffs' allegations, however, the *Halberstam* factors demonstrate defendant's purported aid was *not* substantial.

In evaluating the first and second factors, *Halberstam* asks whether the act was "heavily dependent" on the assistance provided, or whether the assistance was "indisputably important" to, or an "essential part of" the act. 705 F.2d at 488. Plaintiffs allege that defendant provided unspecified amounts of financial and other support to the BNC, and that through its sponsorship of the BNC and otherwise, facilitated the ability of Hamas to carry out terrorist attacks. *See* Compl. ¶¶ 205-208. They do not allege that defendants directly assisted Hamas itself, or even that certain financial or other support provided by defendant was useful to or used by Hamas in carrying out the alleged attacks. Instead, plaintiffs make threadbare assertions that defendant provided substantial assistance and played an integral role in Hamas and other foreign terror organizations' terrorist activities, without specifying what support played such a role, or how. Those allegations do not plausibly suggest that the alleged terrorist acts carried out by Hamas and/or other terrorist organizations were "heavily dependent" on defendant's purported assistance. *Halberstam*, 705 F.2d at 488. At most, they suggest defendants provided

general support to the BNC, which may have itself provided support to Hamas or other groups. But absent a link between that support and the principal violation, defendant's purported assistance is not substantial. With respect to the third factor, plaintiffs do not allege that defendants were present at any of the attacks.

In evaluating the fourth factor, *Halbertstrom* asks whether the defendant has a special relation to the principal. Although plaintiffs argue that the defendant had a "direct" and "close" relationship with Hamas, Pls. Opp. at 24, they fail to plead factual allegations to demonstrate such a direct relationship. Instead, plaintiffs' factual allegations point to defendant's relationship with BNC, which they then allege has direct ties to Hamas and other terrorist organizations. *See* Compl. ¶¶ 70-80.

The fifth factor—state of mind—also weighs against finding that defendants' alleged assistance was substantial. In *Halberstam*, our Circuit Court considered whether the defendant was "one in spirit" with the tortfeasor or "desire[d] to make the venture succeed." 705 F.2d at 484, 488. Here, plaintiffs allege defendant knowingly provided financial and other support and were aware those resource would be used by Hamas and other groups to support terrorist attacks. Compl. ¶ 205; Pls.' Opp. at 23-24. Those allegations do not even suggest defendants were "one in spirit" with Hamas or that defendants intended to help Hamas or other groups succeed in perpetuating violent attacks. *Crosby*, 303 F. Supp. 3d at 574 (noting defendants were not "of a mind to see [the act of terrorism] take place" and concluding aiding and abetting liability "cannot be premised merely on a finding that the defendant knowingly provided support to a designated terrorist organization"); *Taamneh*, 343 F. Supp. 3d at 917 (concluding defendants not "one in spirit"

with ISIS where plaintiffs did not allege defendants had "any intent to further ISIS's terrorism").

The parties make no argument regarding the sixth factor—duration of the aid provided. Plaintiffs allege that defendant became a major partner with the BNC as early as 2008. This factor *alone*, however, is not enough to establish that aid was substantial, given the other factors.

Thus, having evaluated all of the factors identified in *Halberstam*, I cannot possibly conclude that defendants "assum[ed] a role" in Hamas or other organizations' terrorist activities such that any assistance was "substantial." *Linde*, 882 F.3d at 329. As such, plaintiffs have failed to state a claim for aiding-and-abetting liability under the ATA. Those claims, accordingly, must be dismissed.

### III.   *State Law Claims*

Finally, because I have found that plaintiffs have failed to allege a substantial federal cause of action, I will dismiss plaintiffs' D.C. law claims for lack of pendent jurisdiction. 28 U.S.C. § 1367(a). After all, in exercising this discretion, I must balance the traditional "values of judicial economy, convenience, fairness, and comity," and the plaintiffs here, like the plaintiffs in so many other cases, can't survive that juggling exercise. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). "[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of [these] factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7; *see also United Mine Workers v. Gibbs*, 383

U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

## CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss is **GRANTED**. A separate order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge