UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                )
Keren Kayemeth LeIsrael-           )
Jewish National Fund, et al.        )
                                                )
            Plaintiffs,               )
                                                )
      v.                               )     Civil Action No. 1:19-cv-03425
                                                )
Education for a Just Peace in the Middle East )
d/b/a US Campaign for Palestinian Rights    )
                                                )
            Defendant.              )
_____)


**PLAINTIFFS' MEMORANDUM OF LAW WITH POINTS AND
AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
<u>RECONSIDERATION PURSUANT TO F.R.C.P. 59(e)</u>**

Plaintiffs respectfully request that this Court reconsider its decision of March 29, 2021 [D.E. 26] ("Memorandum Opinion") dismissing Plaintiffs' Complaint pursuant to Fed. Rule of Civ. Proc. 12(b)(6). The Court erred in ruling:

(1) that there could be no "Direct Liability" because Plaintiffs' Complaint did not show proximate cause, did not allege a "direct relation" between the Plaintiffs' injury and Defendant's injurious conduct, and did not allege facts to support Plaintiffs' contention that the Defendant "provided direct support" to HAMAS; and

1

(2) that there could be no "Aiding-and-Abetting Liability" under JASTA because the *Welch v. Halberstam* factors could not be met by Plaintiffs' allegations that the Defendant had knowingly provided substantial assistance to HAMAS.

I.

**UNLIKE DEFENDANTS IN RECENT CASES CITED BY THE COURT SEEKING DAMAGES FOR INJURIES CAUSED BY FOREIGN TERRORIST ACTS, USCPR IS A SINGLE-PURPOSE ENTITY PROMOTING PALESTINIAN OPPOSITION TO ISRAEL**

The Court's Memorandum Opinion cited and relied on four reported decisions in ruling that the Plaintiffs' Complaint is insufficient to allege that Defendant USCPR is directly liable under pre-2016 anti-terrorism legislation for injuries to American nationals. *Owens v. BNP Paribas, S.A.*, 897 F.3d 266 (D.C. Cir. 2018); *Crosby v. Twitter, Inc.*, 921 F.3d 617 (6th Cir. 2019); *Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017); *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013). The defendants in all four cited cases were entities that have multifarious functions, missions, and objectives. The plaintiffs in each of the cited cases claimed that one of these many activities performed by the multi-purpose entities contributed to terrorist acts that injured the plaintiffs.

(1) **BNP Paribas S.A.** is the world's 8th largest bank by total assets and currently operates with a presence in 72 countries. *Wikipedia*.

(2) **Twitter, Inc.** has more than 25 offices around the world and had more than 330 million monthly active users around the world in 2019. *Wikipedia.*

(3) **Republic of Sudan** is Africa's third largest country by area and has a population of 44.91 million people as of 2021. *Wikipedia.*

(4) **UBS AG** is a Swiss multinational investment bank and financial services company that maintains a presence in all major financial centers as the largest Swiss banking institution in the world. *Wikipedia.*

By contrast, the Complaint alleges – and we do not think that the Defendant contests – that USCPR is not an international multi-purpose behemoth but is an ordinary American non-profit corporation that has a single purpose – to promote "Palestinian Rights." There is obviously an enormous difference between (a) claiming that a huge international bank or an international social-media platform or a foreign country (even one that, by reason of some of its activities, has been designated a "state sponsor of terrorism") should be held legally liable to pay for all terrorist acts that it may have incidentally facilitated and (b) holding an American entity that endorses the goals of foreign terrorists and has materially assisted the terrorists responsible for injury abroad to American nationals.

The Court of Appeals for the Second Circuit noted this difference in *Linde v. Arab Bank, PLC*, 882 F.3d 314, 327 (2d Cir. 2018), when it said: "We conclude

only that providing routine financial services to members and associates of terrorist organizations is not so akin to providing a loaded gun to a child . . . ."

The assistance USCPR provided to HAMAS' dispatch of terror balloons and kites that injured US citizens is like providing a loaded gun to a child. The precedent that most closely parallels the facts alleged in Plaintiffs' Complaint and should control the Court's decision on a Rule 12(b)(6) motion was cited and discussed at pages 10-11, 15-16, and 20 of the Plaintiffs' Memorandum of Law. *Boim v. Holy Land Foundation for Relief & Development,* 549 F.3d 685 (7th Cir. 2008) (en banc). The *Boim* case concerned the liability of American domestic entities for terrorist acts committed by foreign affiliates that the American entities supported financially. The Seventh Circuit's en banc *Boim* decision, authored by Chief Judge Richard Posner, was totally ignored in USCPR's initial Memorandum in Support of its Motion to Dismiss and was inaccurately belittled at page 9 of USCPR's Reply Brief.

## II.

**THE COMPLAINT MORE THAN ADEQUATELY ALLEGED USCPR'S SUPPORT OF HAMAS' TERRORISM RESULTING IN DIRECT LIABILITY UNDER SECTIONS 2339A AND 2332**

**A. The Legal Theory Presented in Paragraphs 24 and 25**

Paragraph 24 of the Complaint alleges sufficient plausible facts to meet the "chain of incorporations" that Judge Posner invoked in affirming the *Boim*

4

judgment. USCPR collects funds in the United States that are treated as charitable contributions to support a committee that includes five terror organizations including HAMAS. Since Section 2332(c) criminalizes "physical violence" that causes "serious bodily injury," and Section 2339A(a) also criminalizes those who, with guilty knowledge, provide "material support or resources" for such a violation, the complaint's allegations suffice to pass the Rule 12(b)(6) standard for direct liability under *Boim*. Paragraph 25 buttresses the more general allegations of the preceding paragraph by specifying USCPR's active promotion and sponsorship of the "Great Return March" which, according to the plausible allegations of the complaint, generate the "launchings of incendiary terror balloons, kites and other terror devices" that have injured the American citizen plaintiffs. On these allegations, the Defendant has potential liability under the federal anti-terrorism provisions even before the enactment of the Justice Against Sponsors of Terrorism Act ("JASTA") in 2016.

### B. The Factual Support in Paragraphs 30-58 and 86-111

In 2007 HAMAS carried out a violent military coup and took over Gaza. The violent takeover gave HAMAS complete control over the Gaza territory and over every aspect of life in Gaza. The Complaint plausibly alleges in Paragraph 48 (and the Plaintiffs will prove) that "[t]here is little to nothing that happens in Gaza that HAMAS does not know about, approve and support." This includes

directing, supporting, and acting in concert with other Foreign Terrorist Organizations that comprise the Boycott National Committee ("BNC") and the Palestinian National and Islamic Forces ("PNIF"), and which operate in Gaza with the approval of HAMAS which has full control of all governance and operational issues in Gaza.

The Complaint further alleges that HAMAS plans and authorizes terror attacks as the terms "plan" and "authorize" are defined in this Court's opinion in *Atchley v. AstraZeneca UK Ltd.,* 474 F. Supp. 3d 194, 211 (D.D.C. 2020). Paragraph 87 alleges plausibly that Great Return Marches are "sponsored and supported by HAMAS and include organized efforts to terrorize Israel and those that reside in Israel." Paragraph 107 alleges that incendiary terror balloons and kites during the Great Return Marches cannot be launched without the "express support, permission, consent and control of HAMAS."

Paragraphs 100-104 detail activities of the "Sons of al-Zawari," a HAMAS-inspired group that takes credit "for launching incendiary terror balloons . . . and declaring their intention to burn Israeli land." Social media postings show members of the "Sons of al-Zawari" wearing HAMAS regalia and report that the Al-Qassam Brigades (the military wing of HAMAS) held a memorial service for "Sons of al-Zawari" members at which "Sons of al-Zawari" members held terror balloons and kites.

Such evidence is used by terrorism experts to establish the source of terror attacks. *See*, *e.g.*, *Lelchook v. Syrian Arab Republic*, 2019 WL 2191323, at *4 (D.D.C. Jan. 31, 2019), *report and recommendation adopted*, 2019 WL 2191177 (D.D.C. Mar. 25, 2019). In terrorism cases in particular, expert testimony may be relied on to establish liability or the factual basis of plaintiff's claims. Given the "dearth of firsthand evidence, reliance upon secondary materials and the opinions of experts is often critical in order to establish the factual basis of a claim under the FSIA terrorism exception." *Owens v. Republic of Sudan,* 864 F.3d 751, 787 (D.C. Cir. 2017), *certified question answered*, 194 A.3d 38 (D.C. 2018), and *vacated and remanded sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020). Indeed, "cases in this Circuit and in others have repeatedly sustained jurisdiction or liability or both under the terrorism exception to the FSIA and in other terrorism cases based solely upon expert testimony." 864 F.3d at 788.

## C. Proximate Cause

Paragraph 123 of the Complaint plausibly alleges that the Defendant is "the US-based fiscal sponsor" for a foreign entity ("BNC") that consists of "US designated Foreign Terrorist Organizations, each of whom are barred from receiving funds in or from the United States." Contributions to this network of terrorist groups – which the Court at page 6 of its Memorandum Opinion mistakenly calls "a broad coalition leading a global movement for Palestinian

rights" – are encouraged as tax-deductible because the Defendant cloaks them with its Section 501(c)(3) status. The terrorist acts committed by HAMAS from Gaza are effectively subsidized by tax-deductible contributions made to USCPR. Could there be a more "substantial connection" between the Defendant and HAMAS' terrorist acts that injure American citizens than the cover given to the financing of HAMAS by the exploitation of USCPR's tax-exempt status?

In deciding whether to dismiss a complaint under Rule 12(b)(6), the Court may not consider the ultimate likelihood of success on the merits, but only whether the plaintiff has a properly stated claim. *Greggs v. Autism Speaks, Inc.*, 987 F. Supp.2d 51, 55 (D.D.C. 2014). The Court erred when it found that the Plaintiffs had not presented facts establishing HAMAS' culpability for the rocket and incendiary balloon and kite attacks. (Mem. Op. 7).

The allegations in Plaintiffs' Complaint plausibly charge HAMAS with being the Foreign Terrorist Organization responsible for launchings from Gaza of rockets, and incendiary balloon and kite attacks.  These allegations must be construed liberally in the Plaintiffs' favor. *Campbell v. District of Columbia,* 972 F. Supp. 2d 38, 44 (D.D.C. 2013). It is well-established that a plaintiff need not plead "all elements of his prima facie case in the complaint." *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 84 (D.D.C. 2014).  See *Swierkiewicz v. Sorema* N. A., 534 U.S. 506, 511-14, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

By dismissing the case at this early juncture, the Court denies the Plaintiffs any avenue to discover additional facts supporting the Complaint's plausible allegation that HAMAS, exploiting the financial and other support provided by the Defendant, committed, planned, and authorized the attacks which caused the Plaintiffs' injuries. The Court's finding that USPCR is not directly liable under the legal standard of the *Boim* case was clearly erroneous and should be reconsidered.

## III.

### THE COMPLAINT'S PLAUSIBLE ALLEGATIONS OF AIDING AND ABETTING EXCEED THE PROOF OF AIDING AND ABETTING IN *HALBERSTAM v. WELCH*

**A. Compare the Complaint's Allegations with the *Halberstam* Facts**

Pub. L. 114-222, enacted in 2016 ("JASTA"), specified as a "Finding" in Section 2(a)(5) that "[t]he decision of the United States Court of Appeals for the District of Columbia in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) . . . provides the proper legal framework for how such liability should function in the context of" Section 2333(d)(2). On page 9 of its Memorandum Opinion this Court identified six "factors" that are commonly utilized in evaluating a claim that a secondary party aided and abetted a criminal offense. Before turning to those "factors," we compare the facts that sufficed to establish that Linda Hamilton aided and abetted Bernard C. Welch, the murderer of Michael Halberstam, with the plausible allegations of Plaintiffs' Complaint.

Ms. Hamilton was held to be "a willing partner in [Welch's] criminal activities" despite her sworn testimony that she knew "nothing" of his unlawful conduct and no proof that she ever encouraged or participated in any burglary or murder. She was held civilly liable for aiding and abetting murder because she must have known that "something illegal was afoot" and because she lived with Welch, benefited from ill-gotten riches, and acted as "secretary and recordkeeper" of transactions in which purloined goods were sold.

Comparing the Defendant's role in the launching of rockets, incendiary balloon and kite attacks from Gaza to Israel with Linda Hamilton's role in the murder of Michael Halberstam is like comparing Goliath with Tom Thumb. The Complaint plausibly alleges that USCPR not only knew of the terrorist attacks that injured American plaintiffs, but that it facilitated them *in advance* by providing, through an intermediary, funds to HAMAS that the Defendant collected as purported tax-advantageous charitable contributions. This is much more knowing and deliberate participation in a criminal deed than the evidence that tied Ms. Hamilton to the murder of Michael Halberstam.

### B. The Six *Halberstam* "Factors"

The *Halberstam* court set forth six "factors" for determining aiding-and-abetting liability. 705 F.2d. at 483-484. This Court listed the six "factors" at page 9 of its Memorandum Opinion.

On the first and second factors, the Court erroneously held, at this initial stage of the lawsuit, that the Defendant's assistance was not "indisputably important" or an "essential part" of HAMAS' terrorist acts and that HAMAS was not "heavily dependent" on USCPR's support. Paragraphs 202-210 and paragraphs 214-222 of the Complaint were plausible allegations to the contrary that the Court may not ignore.

Financing like that provided by the Defendant matters greatly to terrorists. *See, e.g., Boim*, 549 F.3d at 690-691 (explaining the importance of "financial angels" to terrorist operations).   Courts have held that providing funds to a terrorist group aids and abets that group's criminal activity.  *See, e.g., Bartlett v. Societe Generale de Banque un Liban SAL*, 2020 WL 7089448, at *12-16 (E.D.N.Y. Nov 25, 2020); *Miller v. Arab Bank, PLC*, 372 F.Supp.3d 33, 47-48 (E.D.N.Y. 2019).

Paragraphs 123-125 of the Complaint plausibly alleged that USCPR served as the American-based fiscal sponsor for BNC.  USCPR raised money through its public website "donate" page and provided receipts for tax purposes that confirmed that USCPR was BNC's fiscal sponsor.  These funds materially supported BNC and, through BNC, enabled HAMAS to organize terrorist attacks launched from Gaza.

The Court erroneously believed it important that there was no ***direct link*** between the assistance the Defendant's provided and HAMAS. (Mem. Op. 9) ("They do not allege that defendants directly assisted Hamas itself . . . ."). But the word "direct" does not appear in Section 2333(d)(2). *See Siegel v. HCBC N. Am. Holdings, Inc.*, 933 F.3d 217, 233 n.5 (2d Cir. 2019) (JASTA "does not, by its terms, limit aiding-and-abetting liability to those who provide direct support to terrorist organizations.")

The third factor – presence when the tort is committed -- is irrelevant in "material aid" cases such as this. See *Bartlett*, 2020 WL 7089448 at *13 (presence irrelevant to "funding activities"). The fourth factor -- "relation to the tortious actor" – was plausibly alleged. USCPR was BNC's fiscal sponsor and confirmed with receipts that donations were for BNC. Paragraphs 76 and 99-103 alleged that BNC was supporting HAMAS' incendiary terror attacks. HAMAS needed funding from BNC, and USCPR's fundraising established the substantiality of USCPR's relation to HAMAS and its operations in Gaza.

The fifth factor appraises the Defendant's state of mind. USCPR was 'one in spirit' with HAMAS and the Complaint plausibly alleged that it desired to make the venture succeed. Paragraphs 132-137 of the Complaint allege that USCPR was actively promoting and sponsoring the Great Return March on its Facebook,

Twitter and emails. Active promotion of the Great Return March presumptively endorsed the incendiary attacks that the March launched.

The sixth factor – duration – cannot be minimized as the Court apparently does. (Mem. Op. 11). Paragraphs 86, 106, and 132 of the Complaint allege that USCPR has been actively promoting and sponsoring the Great Return March since March 2018. Paragraphs 122 and 123 allege that as early as 2008, USCPR began to partner and serve in the United States as the fiscal sponsor of BNC. In *Halberstam* the Court of Appeals, per Circuit Judge Wald, held that the multiyear duration of the relationship between Linda Hamilton and Bernard Welch "***strongly*** influenced [the Court's] weighing of Hamilton's assistance." 705 F.2d at 488 (emphasis added). In this case, the duration of the relationship between the Defendant and the terrorist entities responsible for injuries to American citizens is significant.

### IV.

### COURTS IN ANOTHER FEDERAL DISTRICT DISAGREE WITH THIS COURT'S RATIONALE

Recent rulings of three District Judges in the United States District Court for the Eastern District of New York conflict in principle with the ruling that was issued by this Court in this case. In *Bartlett v. Societe Generale de Banque Au Liban Sal,* 2020 WL 7089448 (E.D. N.Y. Nov. 25, 2020), District Judge Amon permitted the plaintiffs to pursue a claim under Section 2333(d) based on attacks perpetrated by Hezbollah in Lebanon. In *Estate of Henkin v. Kuveyt Turk Katilim*

*Bankasi, A.S.*, 2020 WL 6143654 (E.D.N.Y. Oct. 20, 2020), District Judge Cogan denied defendant's motion to dismiss a claim under Section 2333(d) generated by HAMAS' murder in the West Bank of an American citizen couple. In *Freeman v. HSBC Holdings PLC*, 2021 WL 76925 (E.D.N.Y. Jan. 7, 2021), District Judge Pamela K. Chen denied a motion to dismiss amended complaints under Section 2333(d) alleging that Bank Saderat aided and abetted terrorist attacks in Iraq. We respectfully ask this Court to reconsider its decision in this case in light of the rulings in comparable lawsuits brought under Section 2333(d) against other perpetrators of terrorism that injures American citizens.

V.

## A DISTRICT COURT ABUSES ITS DISCRETION IF IT FAILS TO VACATE A DISMISSAL TO CORRECT A CLEAR ERROR OF LAW

Reconsideration under Rule 59(e) is prescribed if a party demonstrates that an initial decision rests on a clear error of law. Failure to do so is an abuse of discretion. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996); *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997). See *Norman v. Arkansas*, 79 F.3d 748, 750 (8th Cir. 1996); *Anyanwutaku v. Moore*, 151 F.3d 1053, 1058-59 (D.C. Cir. 1998).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court reconsider its Memorandum Opinion of March 29, 2021.

Dated:  April 26, 2021        Respectfully Submitted,

HEIDEMAN NUDELMAN & KALIK P.C.
5335 Wisconsin Avenue, NW,  Suite 440
Washington, DC  20015
Telephone:  202-463-1818
Telefax:  202-463-2999

By:___/s/Tracy Reichman Kalik_____
   Richard D. Heideman (D.C. Bar No. 377462)
   Noel J. Nudelman (D.C. Bar No. 449969)
   Tracy Reichman Kalik (D.C. Bar No. 462055)

*Attorneys for Plaintiffs*


Nathan Lewin
Alyza D. Lewin
LEWIN & LEWIN, LLP
888 17th Street, N.W., 4th Floor
Washington, DC 20006

*Of Counsel*